SULLIVAN, HILL, LEWIN, REZ & ENGEL
A Professional Law Corporation
  James P. Hill, CA SBN 90478 (Pro Hac Vice)
  Christine A. Roberts, NV SBN 6472
  Elizabeth E. Stephens, NV SBN 5788
228 South Fourth Street, First Floor
Las Vegas, NV 89101
Telephone: (702) 382-6440
Fax Number: (702) 384-9102

Attorneys for Chapter 7 Trustee,
William A. Leonard, Jr.

**Electronically Filed: March 19, 2010**

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>ASSET RESOLUTION, LLC,<br><br>       Debtor.<br><br>―――――――――――――――<br>Affects:<br>☐ All Debtors<br>☐ Asset Resolution, LLC, 09-32824<br>☐ Bundy 2.5 Million SPE, LLC, 09-32831<br>☐ Bundy Five Million SPE, LLC, 09-32839<br>☐ CFP Anchor B SPE, LLC, 09-32843<br>☐ CFP Cornman Toltec SPE, LLC, 09-32844<br>☐ CFP Gess SPE LLC, 09-32846<br>☐ CFP Gramercy SPE, LLC, 09-32849<br>☐ Fiesta Stoneridge, LLC, 09-32851<br>☐ Fox Hills SPE, LLC, 09-32853<br>☐ HFAH Monaco SPE LLC, 09-32868<br>☒ Huntsville SPE LLC, 09-32873<br>☐ Lake Helen Partners SPE LLC, 09-32875<br>☐ Ocean Atlantic SPE LLC, 09-32878<br>☐ Shamrock SPE LLC, 09-32880<br>☐ 10-90 SPE, LLC, 09-32882 | CASE NO. BK-S-09-32824-RCJ (Lead Case)<br><br>Jointly Administered with Case Nos.:<br>BK-S-09-32831-RCJ; BK-S-09-32839-RCJ;<br>BK-S-09-32843-RCJ; BK-S-09-32844-RCJ;<br>BK-S-09-32846-RCJ; BK-S-09-32849-RCJ;<br>BK-S-09-32851-RCJ; BK-S-09-32853-RCJ;<br>BK-S-09-32868-RCJ; BK-S-09-32873-RCJ;<br>BK-S-09-32875-RCJ; BK-S-09-32878-RCJ;<br>BK-S-09-32880-RCJ; BK-S-09-32882-RCJ<br><br>Chapter 7<br><br>**MOTION TO SELL REAL PROPERTY (HUNTSVILLE); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  OST Pending<br>Time:  OST Pending<br>Ctrm:  RCJ - Courtroom 7D<br>        Lloyd D. George Courthouse<br>        333 Las Vegas Blvd. South<br>        Las Vegas, NV 89101<br>Judge: Hon. Robert C. Jones |

::ODMA\PCDOCS\PCDOCS\307996\2

William A. Leonard, Jr. ("Trustee"), the Chapter 7 trustee in the above-captioned jointly-administered bankruptcy cases, hereby files this Motion to Sell Real Property (Huntsville) ("Sale Motion").

With the Sale Motion, the Trustee respectfully requests that the Court enter an order approving the redemption of certain real property (more fully described below) followed by its immediate sale for Nine Hundred Thousand Dollars ($900,000.00) or more, subject to overbid.

This Sale Motion is made pursuant to section 363 of title 11 of the United States Code ("bankruptcy code"), on the grounds that the asset has been thoroughly marketed, and the proposed sale has been adequately noticed, will realize fair market value for the asset, and is in the best interests of creditors and the bankruptcy estates.

The Sale Motion is based on the instant pleading, the attached memorandum of points and authorities; the declaration of William A. Leonard, Jr. filed concurrently herewith ("Leonard Declaration"); the pleadings, papers and records on file in this action; and any evidence and argument to be presented at the time of the hearing on this Sale Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**FACTUAL BACKGROUND**

Based on the information available to the Trustee from the debtors-in-possession, it understood these jointly administered cases arise out of the separate bankruptcy proceedings of USA Commercial Mortgage Company (USACM) and its related entities. USACM solicited investments from individuals (direct lenders) which were packaged into secured loans, with each direct lender holding a fractionalized interest. USACM retained fractionalized interests in many of the loans it placed. USACM executed with each direct lender a loan servicing agreement authorizing it to collect a monthly base servicing fee and other expenses and charges. On or about April 13, 2006, USACM filed a chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Nevada. The USACM bankruptcy court authorized a sale of USACM's rights under the loan servicing agreements, including the right to collect fees, as well as the sale of the fractionalized interests USACM held. Those assets were sold at auction and the successful bidder was Compass

- 2 -

::ODMA\PCDOCS\PCDOCS\307996\2

1  Financial Partners, LLC (Compass).  Compass' acquisition was financed by Silar Advisors, LP
2  (Silar) and Compass pledged the purchased assets to Silar as collateral.  Compass ultimately
3  defaulted on its obligations to Silar and on or about September 26, 2008, Silar foreclosed on its
4  collateral (*i.e.*, all of the assets Compass purchased out of the USACM bankruptcy).  Silar formed
5  Asset Resolution to acquire these assets and to serve as loan servicer.  Asset Resolution was equally
6  unsuccessful and on or about October 14, 2009, it and 14 related entities filed chapter 11 bankruptcy
7  proceedings in the Untied States Bankruptcy Court for the Southern District of New York.  Those
8  proceedings were subsequently transferred to the United States Bankruptcy Court for the District of
9  Nevada, where they are now pending.

10  One of the properties owned by Compass was an 8 parcel property located in Huntsville,
11  Texas.  It is this property which is the subject of this Motion.  Although the property was included in
12  the assets foreclosed upon by Silar/Asset Resolution, it appears record title remained in the name of
13  Compass, although title should have been transferred to the special purpose entity formed to hold the
14  property, Huntsville SPE, LLC, a Delaware limited liability company, one of the debtors in these
15  jointly administered estates.

16  On or about October 6, 2009, while record title was held by Compass, the properties were
17  sold at a tax foreclosure sale for approximately $447,278.75.  Under Texas law, a party which loses
18  title to property at a tax foreclosure sale has a 180 day period during which it may redeem the
19  properties.  It is uncertain when the 180 day period begins to run and it may run from the date of
20  sale, meaning the redemption period could expire as early as April 4, 2010.  The Trustee has
21  received an offer to purchase the properties from HCL Land, LP, and a copy of the offer is attached
22  as Exhibit "1" to Mr. Leonard's declaration.  Exhibit "1" also includes the legal description of the
23  real estate parcels which are the subject of this Motion, and that description is also included as a
24  separate exhibit, Exhibit "2", to Mr. Leonard's declaration.  Under the terms of the offer, which
25  requires escrow to close on or about April 1, 2010, the Trustee is to redeem the property and
26  immediately sell it to the buyer or the buyer's assignee.

27  / / /

28  / / /

- 3 -

::ODMA\PCDOCS\PCDOCS\307996\2

1    Because record title at the time of the tax foreclosure was held by Compass, by this Motion
2  the Trustee seeks authorization to redeem the property under either the name of Compass, Huntsville
3  SPE, LLC, or Asset Resolution, LLC, depending upon which procedure is required or is best under
4  Texas law. If the redemption is effected in the name of Compass, Asset Resolution holds a power of
5  attorney authorizing it to act on behalf of Compass, to transfer title from Compass to Asset
6  Resolution, LLC and/or Huntsville SPE, LLC.

## II.

## THE PROPOSED SALE

**A.    The Sale of the Huntsville Property**

With this Sale Motion, the Trustee proposes to redeem the property and immediately sell it for $900,000.00, all cash, escrow to close on or before April 1, 2010. Because the property has already been lost to foreclosure, there is very limited time to effect the sale and/or for marketing. The Trustee believes that the proposed sale is in the best interests of the estate, as this is the only prospective purchaser and if the property is not sold by on or about April 4, 2010, the redemption rights will be lost and there will be nothing for the estate to sell. The proposed purchaser, HLC Land, LP, has no affiliation with the Trustee, Asset Resolution, LLC, USA Commercial Mortgage Company, or their related entities, to the best of the Trustee's knowledge, after inquiry. A redemption payment of $559,098.43 (this is the amount paid by the purchasers at the tax foreclosure sale, $447,278.75 plus a 25% premium) is required to effect the redemption and this will be paid out of the $900,000.00 purchase price. It is anticipated, however, that Asset Resolution will recoup from the taxing authorities approximately $200,000.00 to $250,000.00, the difference between the amount actually owed in taxes at the time of the foreclosure sale and the $447,278.75 paid by the purchasers. Accordingly, after the redemption payment and the anticipated tax refund, there will be between $540,000.00 to $590,000.00 in remaining sales proceeds. Additionally, the Trustee requests authorization to pay broker's commissions not to exceed 5% of the gross sales price, legal fees to the attorney acting as settlement agent not to exceed $10,000.00, and title and escrow fees not to exceed $7,500.00, leaving net sales proceeds of approximately $477,000.00 to $527,000.00.

/ / /

- 4 -

The Trustee proposes that this amount be held in trust, pending further court proceedings to determine Asset Resolution's request to be reimbursed for $142,865.18 in advances it made and pending determination of its allowable fees.

The Trustee has not taken a position on the fees which will be requested on behalf of Asset Resolution. He has, however, provided to the direct lenders a range of calculations, reflecting Asset Resolution's fee as he understands them to be proposed by Silar and using what he understands to be the formula used by the court in authorizing the Gess sale. These fees range from $54,000.00 to in excess of $600,000.00 or more.[1]

### B. The Solicitation of Direct Lenders' Consent

The Trustee has distributed to the direct lenders, at their last known address of record, a letter outlining the transaction and soliciting the direct lenders' consent. A true and correct copy of the letter is attached as Exhibit "3" to Mr. Leonard's declaration. At the hearing the Trustee will report to the court the results of the balloting. The Trustee reserves the right, however, to request court authorization to invoke the provisions of paragraph 2(e) of the Loan Servicing Agreement, which provides that a lender's failure to object, after three business days notice to a proposed action is deemed irrevocable consent. Additionally, because the beneficial interest in the property was, held by Huntsville SPE, LLC, at the time of the foreclosure the Trustee reserves the right to request, and hereby requests, court authorization to effect the sale under 11 U.S.C. § 363.

### C. Payment of Costs of Sale

The Trustee requests he be authorized to pay out of the sale proceeds the costs of sale.

On January 12, 2010, in the chapter 11 proceedings, the court entered its order approving the Trustee's retention of Situs, Inc. as the debtor's real estate broker. Situs has continued to market the property since the conversion of the case to chapter 7 and is the procuring cause for this transaction.

---

[1] The lower estimate of $54,000.00 is calculated at 1% per annum on the $900,000.00 sales price, for the six years since the loan's inception to the close of escrow, an intermediate amount of $608,000.00 is calculated as 1% per annum of the principal loan balance of $10,475,000.00, also for six years to a high of in excess of several million dollars calculated as Silar interprets the loan servicing agreements, including late fees, default interest, etc.

- 5 -

::ODMA\PCDOCS\PCDOCS\307996\2

Case 09-32824-rcj    Doc 610    Entered 03/19/10 18:34:04    Page 6 of 12

1  Accordingly, the Trustee requests authorization to pay a commission of up to 5% of the gross sales
2  price to Situs upon close of the sale.

3  Additionally, the Trustee requires the assistance of counsel to complete the transaction. The
4  Trustee is informed it is customary in Texas transactions to use counsel for such purposes as
5  preparation of the deed, resolving title issues, and acting as the settlement agent in the transaction.
6  The Trustee requests authorization to use the services of Gary J. Greene of the Green Law Firm, PC,
7  for these purposes. The Trustee is informed Mr. Greene has assisted Situs in a number of sales of
8  properties owned by Asset Resolution and that Mr. Greene and his firm are experienced in closing
9  Texas transactions. Mr. Greene's hourly rate is $375.00 per hour and the Trustee requests he be
10 authorized to compensate Mr. Greene and his firm for his services in an amount not to exceed
11 $10,000.00.

12 Under the purchase agreement, the Trustee is required to pay title insurance and other
13 customary escrow and title fees. The Trustee requests authorization to pay not more than $7,500.00
14 for such costs.

15 Because of the limited time to compete the sale, the Trustee asks that he be authorized to
16 make the above itemized payments out of the sale proceeds and without further authorization of the
17 court.

18 **D.     <u>Authorization for Limited Notice</u>**

19 The Trustee has given notice of both this Motion and the preceding request for an order
20 shortening time for the hearing of this Motion to all direct lenders associated with this property, to
21 all persons on the court's ECF notice list, and to those persons who have requested special notice in
22 the cases and/or have been active in the case. The Trustee asks that the court's order include a ruling
23 that notice to those persons identified on the certificate of service filed concurrently with this Motion
24 is sufficient.

25 / / /
26 / / /
27 / / /
28 / / /

- 6 -

::ODMA\PCDOCS\PCDOCS\307996\2

## III.

## OVERBID PROCEDURE

With this Sale Motion, the Trustee respectfully requests that the Court approve the following overbid procedure for use in conducting the sale.

### A. Qualifying as an Overbidder

Any person may qualify as an overbidder. In order to become a "Qualified Overbidder," an interested bidder must do all of the following no later than 4:00 p.m. E.S.T. on March 30, 2010:

(1) Enter into a fully-executed agreement in form substantially similar to the Sale Agreement;

(2) Deliver to the Trustee, a check for $50,000.00 in readily available funds ("Earnest Money"), which check the Trustee shall deposit into his trust account;

(3) Deliver to the Trustee a loan commitment letter in form, on terms, and from a lender satisfactory to the Trustee, or other evidence satisfactory to the Trustee of ability to fund the purchase;

(4) Obtain from the Trustee written certification of having successfully qualified as an overbidder.

The buyer will be deemed to be a Qualified Overbidder for purposes of the Sale Hearing (as defined below), and will expressly be permitted to overbid at the Sale Hearing in the event that an overbid is received.

### B. Bidding at the Sale Hearing

A hearing ("Sale Hearing") will be conducted on _____, 2010 at _____ in Courtroom 7D of the Lloyd D. George Courthouse, 333 Las Vegas Blvd. South, Las Vegas, Nevada, 89101, the Honorable Robert C. Jones presiding.

In order to bid at the Sale Hearing, a party must have qualified as a Qualified Overbidder pursuant the terms set forth above. Additionally, prior to or at the Sale Hearing, any Qualified Overbidder must have delivered to the Trustee a cashier's check in the amount of $90,000.00 (10% of the purchase price) payable to William A. Leonard, Jr., Trustee ("Deposit"). The initial overbid

1  amount shall be $45,000.00, meaning that any initial overbid must be at least $945,000.00.
2  Subsequent overbids will be accepted in increments of $2,000.

3  **C.      Treatment of Earnest Money and Deposit**

4  In the event that a Qualified Overbidder is approved as the purchaser at the Sale Hearing, the
5  Earnest Money and the Deposit will be applied towards the purchase price upon closing of the
6  transaction. In the event that a Qualified Overbidder is approved as the purchaser at the Sale
7  Hearing but fails to close the transaction (other than as a result of a breach by the Trustee of his
8  obligations under the Sale Agreement), the Earnest Money and the Deposit will not be returned to
9  the party, but rather will become property of the bankruptcy estates, and the Qualified Overbidder
10 will have no claims against any of the bankruptcy estates or their assets. In the event that a Qualified
11 Overbidder is not approved as the purchaser at the Sale Hearing, the Earnest Money and the Deposit
12 will be returned to the party immediately upon the conclusion of the Sale Hearing.

13 **D.  Closing the Transaction**

14 The successful overbidder shall have one (1) business day from the date of entry of an order
15 approving the sale to close the transaction, including paying the balance of the purchase price and
16 executing all necessary documents. Failure to close timely (other than as a result of a breach by the
17 Trustee of his obligations under the Sale Agreement) shall constitute a material breach of the Sale
18 Agreement, shall void any rights such overbidder may have had against the bankruptcy estates or
19 any of their assets, and shall permit the Trustee to retain all funds deposited as damages.

20 **E.      Back-Up Bid**

21 The Trustee may also seek approval at the Sale Hearing of a back-up bid from any otherwise
22 Qualifying Overbidders. Such back-up bid shall be in an amount and on terms and conditions at least
23 equal to and the same as the initial bid of HLC Land, LP as set forth in the Sale Contract, and the
24 back-up bid shall otherwise comply with the overbid procedures set forth above.

25 Collectively, the procedures outlined in this section may be referred to as the "Overbid
26 Procedures."

27 / / /

28 / / /

- 8 -

## IV.

## THE STANDARD FOR APPROVING ASSETS SALES

### A. The Standard for Asset Sales - Section 363(b)

Section 363(b) of the Bankruptcy Code provides that "[T]he Trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). The standard for approval of a sale of property of the estate under section 363 is whether there exists some articulated business justification for the proposed transaction, and whether the sale is in the best interests of the debtor, creditors and equity holders. *See Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19 (9th Cir. BAP 1988) (quoting *Institutional Creditors of Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986). In making such a determination, courts may look to the following factors:

(a) Whether the assets are increasing or decreasing in value;

(b) Whether the proposed sale will effectuate a de facto reorganization;

(c) Whether the assets have been given adequate marketing; and

(d) Whether adequate and reasonable notice of the sale was given.

*See In re Work Recovery*, 202 B.R. 301, 303-04 (Bankr. D. Ariz. 1996); and *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991).

### B. Procedural Requirements - Rules 6004(f) and 2002(c)(1)

Rule 6004(f) of the Federal Rules of Bankruptcy Procedure provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." F.R.B.P. 2002(c)(1). A trustee is entitled to broad discretion in determining the manner of a sale, including whether to sell property by public or private sale. *In re Frezzo*, 217 B.R. 985, 989 (Bankr. M.D. Pa. 1988) (citing *In re Canyon Partnership*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985)).

Rule 2002(c)(1) of the Federal Rules of Bankruptcy Procedure provides that:

> [N]otice of a proposed use, sale, or lease of property… shall include the time and place of any public sale, the terms and conditions of any private sale, and the time fixed for filing objections.

F.R.B.P. 2002(c)(1).

/ / /

**C. <u>Sales "Free and Clear" - Section 363(f)</u>**

Bankruptcy Code section 363(f) provides:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interests in such property of an entity other than the estate, only if --

(1)  applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)  such entity consents;

(3)  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)  such interest is in bona fide dispute; or

(5)  such entity could be compelled, in a legal or equitable proceeding, to accept a money judgment of such interest.

11 U.S.C. § 363(f). Section 365(f) is written in the disjunctive. Thus, satisfaction of any one of the five conditions is sufficient to sell property free and clear of interests.

**D. <u>"Good Faith" Finding</u>**

Bankruptcy Code Section 363(m) provides

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

**E. <u>Stay of Sale Orders - F.R.B.P. 6004(h)</u>**

Rule 6004(h) of the Federal Rules of Bankruptcy Procedure provides:

An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise.

F.R.B.P. 6004(h).

Adequate notice of the sale has under the particular circumstances of the case, been given. In addition to the marketing described by the Trustee, notice of the Trustee's proposed sale is being mailed to all lenders associated with these properties and to the more active participants in the bankruptcy proceedings. The Trustee believes that such notice is sufficient to allow any interested

- 10 -

1  overbidders the opportunity to participate in the Sale Hearing. As the redemption rights will soon
2  expire, further delay will cause the loss of the ability to sell the properties.
3  　　　Based on the foregoing, the Trustee respectfully submits that he has adequately articulated a
4  business justification for the proposed sale, and that the sale is in the best interests of the bankruptcy
5  estates and their creditors.

6  **F.  A "Good Faith" Finding Should Be Made**

7  　　　The buyer negotiated at arms' length and in good faith with the Trustee for the purchase of
8  the property. To the Trustee's knowledge, the buyer has no current or former relationship with any
9  of the debtors herein, (other than its previous efforts to purchase the properties), their creditors, or
10 any other persons or entities bidding on the property. It expects to have no relationship with the
11 debtors from and after the sale and is aware of no transfer of consideration contemplated in
12 connection with the sale other than as disclosed in the Sale Motion. It is aware of no fraud in the
13 transaction, nor is it aware of any attempt to take unfair advantage of other bidders. .
14 　　　Accordingly, the Trustee respectfully requests that the Court find the buyer to be a buyer "in
15 good faith" as described in Bankruptcy Code section 363(m), entitled to all the protections
16 encompassed therein.

17 **G.  The Order Should Take Effect Immediately**

18 　　　Rule 6004(h) of the Federal Rules of Bankruptcy Procedure provides:

19 　　　　　An order authorizing the use, sale, or lease of property other than cash
　　　　　collateral is stayed until the expiration of 14 days after entry of the order,
20 　　　　　unless the court orders otherwise.

21 F.R.B.P. 6004(h). The Trustee respectfully requests that the Court waive the provisions of this rule,
22 and provide that any order entered on the Sale Motion take effect immediately upon entry. Good
23 cause exists for doing so. The Trustee does not anticipate any opposition to the Sale Motion -- and
24 thus, does not anticipate any opposition to the requested wavier of Rule 6004(h). It is imperative the
25 transaction close prior to April 3, 2010. Doing so is in the best interests of creditors and the
26 bankruptcy estates, given the pending loss of the estate's redemption rights and the consequent loss
27 of the ability to sell the property.
28 / / /

- 11 -

# V.

# **CONCLUSION**

The property has been thoroughly marketed. The proposed sale has been adequately noticed, will realize a fair market value selling price for the asset, and is in the best interests of creditors and the bankruptcy estates. The Trustee does not believe that further marketing efforts -- and the resulting delay - will realize greater value for the property under the present circumstances.

Based on the foregoing, the Trustee respectfully requests that the Court enter an order:

(1)    approving the Sale Agreement and the Overbid Procedure outlined herein, and authorizing the Trustee's entry into such agreement;

(2)    authorizing the Trustee to close the sale to the buyer or any successful overbidder at the Sale Hearing without further order of the Court;

(3)    finding that the buyer is a buyer "in good faith" as described in Bankruptcy Code section 363(m), entitled to all the protections encompassed therein;

(4)    authorizing the Trustee to direct the escrow agent to pay directly from sale proceeds the costs of sale, including broker's commission, counsel fees, and escrow and title fees;

(5)    waiving the provisions Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, and providing that the order is effective immediately upon entry;

(6)    finding that adequate notice has been given; and

(7)    granting such other relief as the Court may find just and proper.

Dated:    March 19, 2010

SULLIVAN, HILL, LEWIN, REZ & ENGEL  
A Professional Law Corporation

By:    */s/ Elizabeth E. Stephens*  
James P. Hill  
Christine A. Roberts  
Elizabeth E. Stephens  
Attorneys for Chapter 7 Trustee,  
William A. Leonard, Jr.

- 12 -

::ODMA\PCDOCS\PCDOCS\307996\2