JANET L. CHUBB, ESQ.
Nevada State Bar No. 176
JASON A. ROSE, ESQ.
Nevada State Bar No. 9671
JONES VARGAS
100 W. Liberty St, 12th Floor
P.O. Box 281
Reno, NV 89504-0281
Telephone:  775-786-5000
Fax:  775-786-1177
Email:  jlc@jonesvargas.com
    and    tbw@jonesvargas.com
    and    jrose@jonesvargas.com

Attorneys for Certain Direct Lenders

WILLIAM A. BREWER III, ESQ.
Texas State Bar No. 02967035
*Pro Hac Vice to be filed*
MICHAEL J. COLLINS, ESQ.
Texas State Bar No. 00785495
*Pro Hac Vice filed*
ROBERT M. MILLIMET, ESQ.
Texas State Bar No. 24025538
*Admitted Pro Hac Vice*
BICKEL & BREWER
1717 Main Street, Suite 4800
Dallas, Texas  75201
Telephone:  (214) 653-4000
Facsimile:   (214) 653-1015
Email:  wab@bickelbrewer.com
        mjc@bickelbrewer.com
        rrm@bickelbrewer.com

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Chapter 7 |
| | (Jointly Administered under) |
| ASSET RESOLUTION LLC, | Case No. BK-S-09-32824-RCJ |
| BUNDY 2.5 MILLION SPE, LLC, | BK-S-09-32831-RCJ |
| BUNDY FIVE MILLION SPE, LLC | BK-S-09-32839-RCJ |
| CFP ANCHOR B SPE, LLC | BK-S-09-32843-RCJ |
| CFP CORNMAN TOLTEC SPE, LLC | BK-S-09-32844-RCJ |
| CFP GESS SPE LLC | BK-S-09-32846-RCJ |
| CFP GRAMERCY SPE, LLC | BK-S-09-32849-RCJ |
| FIESTA STONERIDGE, LLC | BK-S-09-32851-RCJ |
| FOX HILLS SPE, LLC | BK-S-09-32853-RCJ |
| HFAH MONACO SPE, LLC | BK-S-09-32868-RCJ |
| HUNTSVILLE SPE LLC | BK-S-09-32873-RCJ |
| LAKE HELEN PARTNERS SPE LLC | BK-S-09-32875-RCJ |
| OCEAN ATLANTIC SPE LLC | BK-S-09-32878-RCJ |
| SHAMROCK SPE LLC | BK-S-09-32880-RCJ |
| 10-90 SPE, LLC | BK-S-09-32882-RCJ |

Debtors.

☐    Affects All Debtors
☐    Affects Only _____

**CERTAIN DIRECT LENDERS' MOTION TO ENFORCE NUNC PRO TUNC ORDER CONVERTING CHAPTER 11 CASES TO CHAPTER 7 CASES REGARDING THE DISBURSEMENT OF CERTAIN FUNDS HELD IN TRUST**

Hearing Date:    OST Pending
Hearing Time:    OST Pending

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV  89504-0281
Tel:  (775) 786-5000    Fax:  (775) 786-1177

Certain Direct Lenders ("Movants") file this Motion to Enforce Nunc Pro Tunc Order Converting Chapter 11 Cases to Chapter 7 Cases Regarding the Disbursement of Certain Funds Held in Trust, as follows:

**I.**

**PRELIMINARY STATEMENT**

The Chapter 7 Trustee has control of approximately $10.7 million that the Court has previously ordered must be disbursed to the direct lenders. In the action styled *3685 San Fernando Lenders, LLC, et al. v. Compass USA SPE, LLC, et al.*, Case No. 2:07-cv-00892-RCJ-GWF ("892 Case"), the Court entered a Preliminary Injunction that permitted Compass USA SPE LLC ("Compass") to collect loan payments and settlement payoffs from borrowers, but then required it to deposit certain portions of those funds in a direct lenders' remittance account. Those funds are now held in trust by the Chapter 7 Trustee for the benefit of the direct lenders (the "Trust Funds"). The Trust Funds were not previously paid to the direct lenders because Compass wrongly claimed to be entitled to them as compensation under the parties' Loan Servicing Agreements ("LSAs").

However, on September 18, 2009, this Court issued its summary judgment order in the 892 Case (the "892 Order"), ruling that Compass (and thereafter Debtor Asset Resolution, LLC ("Asset Resolution")) were: (i) not entitled to default interest or late fees under the LSAs for any loan on which the direct lenders did not first recover all their principal and accrued interest; and (ii) entitled to only one accrued annual servicing fee, which was to be calculated based on the ultimate collection amount of each loan. As a result, on January 29, 2010, in converting the above-captioned cases to cases under Chapter 7 of the Bankruptcy Code (the "Conversion Order"), this Court ordered the Chapter 7 Trustee to disburse the Trust Funds to the direct lenders in accordance with the 892 Order. Specifically, the Court stated that "the Chapter 7 Trustee shall disburse those funds that were previously being held by Asset Resolution in trust for the direct lenders in accordance with the summary judgment Order entered by the undersigned United States District Judge in the 892 Case on September 18, 2009."[1] Unfortunately, the Chapter 7 Trustee has failed to disburse the Trust

---

[1] *See* Declaration of Rodger W. Stubbs in Support of Motion to Enforce Nunc Pro Tunc Order Converting Chapter 11 Cases to Chapter 7 Cases Regarding the Disbursement of Certain Funds Held in Trust ("Stubbs Decl."), dated March 25, 2010, Ex. A at 4.

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV  89504-0281
Tel: (775) 786-5000    Fax: (775) 786-1177

1    Funds to the direct lenders.  Accordingly, the Court should enforce the Conversion Order and again

2    order the Chapter 7 Trustee to immediately disburse the Trust Funds to the direct lenders.[2]

3                                          **II.**

4                          **ARGUMENT AND AUTHORITIES**

5    **A.    The Court's Preliminary Injunction Established The Framework For Escrowing And
       Disbursing The Trust Funds.**

6

7         The Preliminary Injunction, which this Court entered in the 892 Case on November 6, 2007,

8    established the framework for Compass to collect, retain, escrow, and disburse any monies that it

9    collected from borrowers on outstanding loans.  *See id.*, Ex. C, ¶¶ 4-6.  In particular, for any loan in

10   which the sums that Compass collected were less than the loan's outstanding principal balance and

11   accrued interest, and pending this Court's subsequent resolution of the parties' entitlement thereto,

12   the Trust Funds were to be deposited and held in trust for the direct lenders in a remittance account.

13   *See id.*, ¶ 6.  Incredibly, the direct lenders have been deprived of the Trust Funds since at least

14   September 2007.  *See* Addendum A.

15

16        The Preliminary Injunction expressly allowed Compass to first deduct and retain its claimed

17   servicing fees and advances.  *See id.*  It then required Compass to deposit the remaining Trust Funds

18   in the direct lenders' remittance account.  *See id.*  Compass did, in fact, deduct and retain its claimed

19

20   ────────────────────────────────

21   [2] In doing so, the Court should also specifically order the Chapter 7 Trustee to disburse to Bickel &
      Brewer those amounts identified on the spreadsheets attached as Exhibit B to the Stubbs Decl. for

22   further disbursement by Bickel & Brewer to Movants.  Specifically, Exhibit B identifies:  (i) all the
      current holders of the beneficial interests in the 3685 San Fernando Partners, Anchor B, Bar USA,
      Bay Pompano Beach, La Hacienda, and Shamrock Tower loans, which comprise the majority of the

23   Trust Funds; (ii) the ownership percentages of the beneficial interest holders in each of those six
      loans; (iii) the total monies in those six loans that are payable either to those direct lenders

24   represented by Bickel & Brewer, or to Debt Acquisition Company of America ("DACA"); (iv) the
      proposed amounts payable to the Receiver for his fees incurred in connection with the 892 Case; and

25   (v) the direct lenders, including those represented by Bickel & Brewer, who arguably owe prepaid
      interest to DACA.  As to those direct lenders who may owe prepaid interest to DACA, Bickel &

26   Brewer agrees that the following procedure, which will be requested by separate motion filed by
      DACA, should be employed:  the Chapter 7 Trustee should retain control over the Trust Funds

27   otherwise owing to Bickel & Brewer's clients and other direct lenders until (i) DACA, pursuant to
      Local Rule 9014.1, provides negative notice of its claim to be paid prepaid interest from those direct

28   lenders out of the Trust Funds, and (ii) the Court resolves any objections to DACA's claim.

servicing fees and advances prior to depositing the remaining Trust Funds into the direct lenders'

remittance account. *See id.*, Ex. D.[3]  Thus, the direct lenders' remittance account contained <u>only</u> the

Trust Funds.[4]

**B.      The 892 Order Resolved The Parties' Entitlement To The Trust Funds.**

In its 892 Order, the Court resolved the parties' entitlement to the Trust Funds.  *See id.*, Ex.

F at 12.  The Court expressly determined that the loan servicer under the LSAs was not entitled to

default interest or late fees unless all principal was first repaid to the direct lenders:

> Section 5 of the LSAs provides for an authorization of a method of
> compensation for the loan servicer.  Defendants do not collect default
> interest or late charges from the borrower in the event that the amount
> ultimately collected is less than the principal amount of the loan under
> "b" and "c" of [section 5 of the LSAs'] language.  Defendants do have
> a right to retain the annual servicing fee under the "a" portion of
> [section 5 of the LSAs'] language.  A loan servicer is not entitled to
> recover default interest and late fees directly from the direct lender.

*See id.* at 12.[5]  Thus, because it is undisputed that the direct lenders have not recovered all of their

principal on any of the loans comprising the Trust Funds, the loan servicer under the LSAs is not

---

[3] The summary table set forth in the attached Addendum A reflects the servicing fees and advances previously taken by Compass in the five loans comprising the majority of the Trust Funds (as of mid-August 2009).  Moreover, Asset Resolution similarly deducted and retained its claimed servicing fees and advances in connection with the sale of the Anchor B Property.  *See id.*, Ex. E, ¶ 38 (Pfrommer: "Asset Resolution was, and is, entitled to distribute proceeds of any sale in accordance with the provisions of paragraph 6 of the Preliminary Injunction.  Among other things, Asset Resolution was entitled, under the Preliminary Injunction, to reimbursement of more than $207,000 in servicer advances that had been made for foreclosure and other expenses related to the maintenance and insurance of the property and the foreclosure.").  Of course, pursuant to the 892 Order, the direct lenders are entitled to, and reserve their right to seek, an offset for any servicing fees that Compass and Asset Resolution improperly deducted and retained as purported loan servicing compensation under the LSAs.

[4] The direct lenders also have a claim for, and reserve their right to seek, an offset based on any funds that Compass improperly deducted and retained as purported loan servicing compensation under the LSAs prior to the Court's entry of its Preliminary Injunction and 892 Order in the 892 Case.  The list of loans subject to that offset is set forth in the attached Addendum B.

[5] Similarly, the Court determined in connection with the Gess Property, which was sold under its supervision in late August 2009, that the loan servicer under the LSAs was not entitled to any default interest or late fees because the total collection amount on the loan was less than the original principal balance.  *See id.*, Ex. G at 78:6-79:22.

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000    Fax: (775) 786-1177

entitled to any default interest or late fees as loan servicing compensation under the LSAs. *See id.*

The Court also held that the loan servicer under the LSAs is a fiduciary of the direct lenders as to the handling of all funds collected by the servicer on behalf of the direct lenders. *See id.* at 6 ("The Motion is GRANTED in part to the extent that Asset Resolution is a fiduciary to the extent of its handling of funds received on account of loans from borrowers."); *see also id.*, Ex. H at 38:2-12 ("THE COURT: When they actually collect a dollar . . . they are a fiduciary of that dollar. . . . It's in an escrow. They must segregate it. They can't put it in their general fund. . . . They must account for it. If they're going to withhold from it their servicing fee, they must disclose and account.").

The Court's rulings at the summary judgment hearing held on July 6, 2009, also delineated the calculation of the servicing fee to which the loan servicer is entitled under the LSAs. Specifically, the Court stated:

> THE COURT: So I think I'm ready to find and I will so find that the meaning of this is that with respect to the example I have used and with respect to this particular LSA . . . [y]ou collected $1,000,000 without designation. You did collect $1,000,000, and I think under A you have a right to keep the one percent of the maximum principal amount of the loan. . . . I think you have the right to do that. I think under A it just simply says retain, and you got $1,000,000, and you have the right to retain out of it. And we don't care whether its designated interest or default interest or principal or anything else. You've got the right to twelve-twelves [sic] of your annual servicing fee. . . .
>
> MR. COLLINS: . . . Is the Court saying that they get one . . . percent of the twenty-six-five or one percent of eight and a half?
>
> THE COURT: Of the actual collection. I had another step in that finding, and that is that the property was part of the collection. The value I placed on it was not the value at the time of the foreclosure sale of a maximum possible (indiscernible). The value was the eight-and-a-half million dollars. Since the whole transaction now is collapsible, the whole thing has been completed, including the sale of the property or at least a proposed sale, that the one percent is of the eight-and-a-half million dollars. That was my ruling (indiscernible).
>
> MR. COLLINS: Right. And is that your ruling today, too, your Honor, just as far as the servicing fees?

> THE COURT: If we have a total, complete sale, and eight-and-a-half
> million dollars was realized off the REO, yeah. . . . That's the ruling .
> . . .

*See id.*, Ex. H at 58:13-59:15, 105:2-106:18.  In other words, the loan servicer under the LSAs is entitled to receive one accrued annual servicing fee, which is calculated by multiplying the weighted average of the servicing fee percentages specified in the LSAs for one year by the total amount ultimately collected for that loan.  *See id.*[6]

## C.    The Court Has Recognized That Asset Resolution Does Not Hold Beneficial Title To The Trust Funds.

On January 29, 2010, when it entered the Conversion Order, the Court also recognized that the Trust Funds were not property of Asset Resolution's estate because those funds belonged to the direct lenders and, thus, the Chapter 7 Trustee needed to disburse those funds in accordance with the 892 Order:

> the Chapter 7 Trustee, as a fiduciary for the direct lenders, shall take
> legal, but not beneficial, title to the funds that were previously being
> held by Asset Resolution in trust for the direct lenders. . . . Pursuant to
> further order of the Court, the Chapter 7 Trustee shall disburse those
> funds that were previously being held by Asset Resolution in trust for
> the direct lenders in accordance with the summary judgment Order
> entered by the undersigned United States District Judge in the 892
> Case on September 18, 2009, and without prejudice to the rights of
> third parties to assert claims (such as for Prepaid Interest) at the time
> that an order for distribution is sought.

*See id.*, Ex. A at 4.

Indeed, the Court had previously flatly rejected the assertion by former counsel for Asset Resolution that it owned all the Trust Funds:

> MS. WINDLER: Your Honor, this is Katherine Windler.  I understand
> the Court's ruling.  I'd simply like to again point out that there is a
> dispute as to who is entitled to those funds.  And it seems to me that
> this Court cannot make such an allocation at this time, because if it is
> determined that those funds are solely and exclusively the property of

---

[6]  Similarly, the Court determined in connection with the Gess Property that the loan servicer under the LSAs was entitled to a servicing fee totaling only $94,000.  *See id.*, Ex. I at 3.

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1    Asset Resolution, as a debtor in possession, and that the direct
2    lender's claims to those funds are not appropriately asserted –

3    THE COURT:  You could only make that claim, Ms. Windler, if you
     allege – if you are making an allegation of fraud on your own behalf.
4    In other words, you could – you have already stood in this court, and
     many times, and the other parties have, too, and you have
5    acknowledged that you're holding the bulk of those funds in trust.  So,
     if you attempt to allege now, contrary to your representations to this
6    Court, that they're not held in trust, they're owned wholly by Asset
     Resolution, you would be committing fraud, ma'am.
7

8    *See id.*, Ex. J at 26:11-27:3.

9                                **III.**

10                        **REQUEST FOR RELIEF**

11         For all the foregoing reasons, Movants respectfully request that the Court enter an order

12

13   authorizing the disbursement of the Trust Funds to the direct lenders, including specifically the

14   disbursement to Bickel & Brewer of those amounts identified on Exhibit B to the Stubbs Decl. for

15   further disbursement by Bickel & Brewer to Movants in accordance with their engagement

16   agreement, and award Movants such other and further relief to which they are entitled.

17         DATED:  March 26, 2010
                                         BICKEL & BREWER
18
                                         JONES VARGAS
19

20

21                         By:  _____/s/ Janet L. Chubb_____
                                JANET L. CHUBB, ESQ.
22                              JASON A. ROSE, ESQ.

23

24

25

26

27

28

1

## ADDENDUM A

2

| Date | Loan Name | Compass Compensation | Escrow Amount |
|---|---|---|---|
| 9/14/2007 | La Hacienda | $    761,489 | $      81,846 |
| 12/3/2007 | San Fernando | $    232,195 | $ 1,852,935 |
| 2/1/2008 | BarUSA | $    385,974 | $ 3,095,174 |
| 2/12/2008 | Shamrock | $ 3,397,188 | $ 1,250,996 |
| 8/28/2008 | Bay Pompano | $    335,270 | $ 4,384,884 |
| | | **$  5,112,116** | **$ 10,665,835** |

8    *See* Stubbs Decl., Ex. D.

10

## ADDENDUM B

12

| Date | Loan Name | Compass Compensation | Escrow Amount |
|---|---|---|---|
| 2/28/2007 | Gateway Stone | $ 1,220,425 | - |
| 3/6/2007 | Interstate Commerce | $    129,753 | - |
| 3/8/2007 | Slade Development | $    223,845 | - |
| 3/20/2007 | Standard Properties | $    870,096 | - |
| 4/23/2007 | Wasco Investments | $    399,749 | - |
| 4/23/2007 | Wasco Investments | $ 1,000,000 | - |
| 7/11/2007 | Clear Lake | $    595,040 | - |
| | | **$ 4,454,772** | **$ 0** |

18    *See id.*

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000    Fax: (775) 786-1177

5211114.8
2064-02

JONES VARGAS
100 West Liberty Street, Twelfth Floor
P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

**CERTIFICATE OF SERVICE**

1.    On March 26, 2010, I served the following document(s):

**CERTAIN DIRECT LENDERS' MOTION TO ENFORCE NUNC PRO TUNC ORDER CONVERTING CHAPTER 11 CASES TO CHAPTER 7 CASES REGARDING THE DISBURSEMENT OF CERTAIN FUNDS HELD IN TRUST**

2.    I served the above-named document(s) by the following means to the persons as listed below:

■    a.      **ECF System** (attach the "Notice of Electronic Filing" or list all persons and addresses):

- KELLY J. BRINKMAN     kbrinkman@gooldpatterson.com
- LOUIS M. BUBALA     lbubala@jonesvargas.com, tbw@jonesvargas.com;bcopeland@jonesvargas.com
- ROB CHARLES     rcharles@lrlaw.com, cjordan@lrlaw.com
- JANET L. CHUBB     tbw@jonesvargas.com
- JOSEPH C. CORNEAU     jcorneau@klestadt.com
- NATALIE M. COX     ncox@klnevada.com, bankruptcy@klnevada.com;kgregos@klnevada.com
- MELANIE A. ELLS     mells@whiteandwetherall.com, ksmith@whiteandwetherall.com
- LARS EVENSEN     lkevensen@hollandhart.com, lmfinchio@hollandhart.com;ckelly@hollandhart.com;mburton@hollandhart.com;ecftevensen_bk@hollandhart.com
- REW R. GOODENOW     ecf@parsonsbehle.com
- JAMES D. GREENE     jgreene@rsrslaw.com, mkemple@rsrslaw.com;cjorvig@rsrslaw.com;fritchie@rsrslaw.com
- RANDOLPH L. HOWARD     rhoward@klnevada.com, ckishi@klnevada.com;bankruptcy@klnevada.com
- GAYLE A. KERN     gakltd@kernltd.com
- DEAN T. KIRBY     dkirby@kirbymac.com, gsparks@kirbymac.com,jrigg@kirbymac.com,jcastranova@kirbymac.com
- JOANNA S. KISHNER     joanna.kishner@dlapiper.com, darhyl.kerr@dlapiper.com;timothy.walsh@dlapiper.com;jason.karaffa@dlapiper.com;william.coleman@dlapiper.com;robert.ware@dlapiper.com
- TRACY L. KLESTADT     tklestadt@klestadt.com, tklestadt@gmail.com
- NILE LEATHAM     nleatham@klnevada.com, ckishi@klnevada.com;bankruptcy@klnevada.com
- WILLIAM A LEONARD     biff7tte@mindspring.com, ca46@ecfcbis.com
- FRANCIS B. MAJORIE     fbmajorie@themajoriefirm.com, vrunning@themajoriefirm.com;pperry@themajoriefirm.com
- ROBERT M MILLIMET     RRM@bickelbrewer.com
- CRAIG E. POWER     cpower@cbylaw.com, ahamilton@cbylaw.com
- LISA A. RASMUSSEN     lisa@lrasmussenlaw.com, secretary@lrasmussenlaw.com
- CHRISTINE A ROBERTS     roberts@sullivanhill.com, hill@sullivanhill.com;vidovich@sullivanhill.com;mcallister@sullivanhill.com;stephens@su

llivanhill.com;stein@sullivanhill.com;calderone@sullivanhill.com;manning@sullivanhill.com

- MARTHA E. ROMERO    robertg@mromerolawfirm.com
- SEAN C. SOUTHARD    ssouthard@klestadt.com
- ELIZABETH E. STEPHENS    STEPHENS@SULLIVANHILL.COM
- ERIC W. SWANIS    swanise@gtlaw.com,
  barberc@gtlaw.com;ayonl@gtlaw.com;chaoa@gtlaw.com;lvlitdock@gtlaw.com
- U.S. TRUSTEE - LV - 7    USTPRegion17.LV.ECF@usdoj.gov
- KATHERINE M. WINDLER    katherine.windler@bryancave.com

□  b.    **United States mail, postage fully prepaid** (list persons and addresses):

□  c.    **Personal Service** (list persons and addresses):
I personally delivered the document(s) to the persons at these addresses:

□  d.    **By direct email (as opposed to through the ECF System**) (list persons and email addresses):

□  e.    **By fax transmission** (list persons and fax numbers):

□  f.    **By messenger**:

I declare under penalty of perjury that the foregoing is true and correct**.**

DATED this 26th day of March, 2010.

Tawney Waldo                                    /s/ Tawney Waldo
Name                                            Signature