```
 1                    UNITED STATES DISTRICT COURT
                           DISTRICT OF NEVADA
 2          BEFORE THE HONORABLE ROBERT C. JONES, DISTRICT JUDGE
                              ---o0o---
 3

 4     In Re:  ASSET RESOLUTION          No. BK-S-09-32824

 5                                       March 25, 2010

 6                                       Reno, Nevada

 7

 8            TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE

 9

10     APPEARANCES:

11     James Hill                  Matt Duncan
       Attorney at Law             Attorney at Law
12
       Beth Stevens                Robert Millimet
13     Attorney at Law             Attorney at Law

14     J. Thomas Beckett           Janet Chubb
       Attorney at Law             Attorney at Law
15

16     Timothy Walsh
       Attorney at Law
17

18     Trustee Rusty Leonard

19

20

21     Reported by:                Margaret E. Griener, CCR #3, RDR
                                   Official Reporter
22                                 400 South Virginia Street
                                   Reno, Nevada 89501
23                                 (775)329-9980

24

25                 COMPUTER-ASSISTED TRANSCRIPTION
```

2

1          RENO, NEVADA, THURSDAY, MARCH 25, 2010, 11:00 A.M.

2                           ---o0o---

3

4               THE COURT:  Thank you.

5               Please be seated.  This is Judge Jones, we're on the

6     line in the bankruptcy matter of Asset Resolution.

7               Appearances on the telephone, please.

8               MR. HILL:  Yes, sir.  This is James Hill of the

9     Sullivan Hill law firm.  Beth Stevens is separately on the

10    line, as is Trustee Leonard.

11              THE COURT:  And if you would state your names,

12    please, so that we get a recording of your voice.

13              MS. STEVENS:  Beth Stevens.

14              MR. LEONARD:  Rusty Biff Leonard.

15              THE COURT:  Thank you.

16              This was an emergency hearing the Court granted for

17    consideration of the process and timing for a request for

18    sale.

19              This is the Asset Resolution case and related cases,

20    and this is Judge Jones acting as bankruptcy judge on a

21    withdrawn -- a referral that has been withdrawn to the

22    District Court.

23              You wanted to consider the timing for notice and

24    hearing if there's objection on sale of a particular piece of

25    property.

3

1          Would you tell me what your timing -- I've read all

2    the pleadings.  I understand that you're facing a redemption

3    period, and please bring me up to date what the urgency is,

4    and we can give you a date for hearing.

5                    MR. HILL:  Yes, your Honor.

6          This is Jim Hill, and I can give you some updates,

7    yes.

8          On the Huntsville SPE, LLC, case, the underlying

9    property is subject to a lapse of a redemption period.

10         Through quite a few consultations and conferences

11   with counsel for the direct lenders and others, we're informed

12   and now believe that the redemption date, that is, the lapse

13   of the redemption date, is April 14.

14         In our moving papers we conservatively said it is

15   maybe as early as April 5, but the date that we believe it now

16   to be is April 14th.

17                   THE COURT:  And if I could interrupt you just

18   for a little background on the record here, the title of this

19   property is in the name of Compass.

20         It was foreclosed on behalf of all of the direct

21   lenders by Compass, and since Asset Resolution -- it should

22   have been transferred over to Asset Resolution, or more

23   particularly, the Huntsville SPE, LLC, but because title was

24   not so transferred, therefore the automatic stay is not

25   applicable, and that's why the redemption period is running.

4

1      Is that a correct assessment?

2           MR. HILL:  I think -- I do know so much as to

3  the latter, but what we're informed is the actual tax sale to

4  individuals in Texas who hold now title to the underlying

5  property took place pre-bankruptcy, and the redemption period

6  runs six months from the date of recording of their titles.

7           And, yes, your Honor, you're correct that title was

8  in Compass.  We are told that there is a -- an unconditional

9  or absolute power of attorney from Compass that is exercisable

10  by ARC that in turn gives this SPE the right of redemption, if

11  you will.

12           THE COURT:  I think also this Court has the

13  authority to order it, that is, order the transfer of the

14  right of redemption, because Compass is a defaulted defendant

15  here, and the Court has jurisdiction over the assets and

16  property of Compass, therefore I think I have the authority

17  anyway to transfer in addition to the use of that absolute

18  power of attorney.

19           Go ahead.

20           MR. HILL:  Yes, sir, we believe so.

21           Now, the further update is that, given that there is

22  a slight bit of more time than what might have been as early

23  as April 5th, and it's pushed back just to April 14, we've had

24  ongoing discussions with others, including counsel for the

25  direct lenders, mostly the Bickle & Brewer clients, about

1  alternatives that are being explored as I speak to you this

2  morning.

3            THE COURT:  What was the amount of the deed of

4  trust that was foreclosed that allowed Compass --

5            MR. HILL:  Your Honor, I believe it was -- we

6  are dealing with a tax sale, but I think the judge's question

7  goes to what the original lien and deed of trust was, and it

8  was, I believe, in excess of $10 million, like 10 or $11

9  million.

10           THE COURT:  So we have 10 or $11 million worth

11  of direct lender interests.

12           MR. HILL:  Yes, sir, a very large amount of

13  direct lender interests, and the redemption price is more

14  about $511,000, your Honor.

15           THE COURT:  Right.  So we're talking about a

16  value over and above the redemption price of only half a

17  million to, at the very best, a million dollars.

18           MR. HILL:  It's definitely less than a million

19  dollars.  Yes, it's that delta between the redemption price,

20  plus there's also a small extra sum to be received back from

21  the taxing authorities to avoid the double payment of the tax

22  that's being paid.

23           THE COURT:  Okay.  So you don't have to tell me

24  what the negotiations are, but you're negotiating over the

25  best way to sell it, or are some parties proposing to coming

1  up with the funding to redeem?

2         MR. HILL:  The latter, your Honor.

3         Right now we only have one buyer, although our

4  motion asks for let's get it done as quickly as possible

5  subject to overbids, and so we're certainly always open to

6  overbidding on the sale.

7         But the alternative that we're exploring, and the

8  trustee certainly is interested in this as an alternative, if,

9  in fact, 51 percent or more of the direct lenders vote in

10  favor of this as an alternative, is exploring a loan to the

11  SPE that would redeem the property and allow all of the

12  holders, including the minority interests of ARC in this

13  property, some more time to market and sell it other than on

14  this very rushed basis.

15         THE COURT:  And do you have a source for such a

16  loan?

17         MR. HILL:  If I could have Matt Duncan speak to

18  that, I think he's taken the lead on--

19         THE COURT:  Not too much in detail because it's

20  not relevant here, but the only thing relevant here is that a

21  date for notice, to put in your notice for sale.  So just

22  briefly, please.

23         MR. DUNCAN:  Your Honor, it's a lot dependent on

24  your own availability.  We -- we were hoping to get finality

25  close enough to be able to get approval of a sale contingent

7

1    on there not being another alternative prior to final approval

2    of closing of the sale.

3                    THE COURT:  I'm available any time.  I'm

4    available 24 hours a day.  So when do you need the sale

5    hearing?

6                    MR. DUNCAN:  Your Honor, we understand that

7    we're going to be in front of you again on April 8, and that

8    date just happens to coincide with a lot of the deadlines.  So

9    that is the new date that we would be asking.

10                    THE COURT:  Okay.  Put it into your 102 notice,

11   it's a notice of potential sale.  Maybe you ought to expand

12   the notice and/or potential refinancing of the redemption, and

13   send out your notice with that date and time.

14                    Madam Clerk, that's in Las Vegas?  I'll be sitting

15   here by way of tele-video?  Is that in Las Vegas?

16                    THE CLERK:  That is correct, your Honor.  It

17   will be in Las Vegas via video, tele-video, in courtroom 7D,

18   as in dog.  We have it scheduled -- currently we have the

19   motions for sanctions scheduled at 9:00 a.m., but we can

20   change it if you would rather hear this first.

21                    THE COURT:  No, let's do this at the same time,

22   9:00 a.m., and parties may appear either -- you probably ought

23   to put in your notice you do have to file an objection,

24   hopefully before the date of the hearing, but you can appear

25   either in the Las Vegas courtroom just announced by Madam

8

1    Clerk or here in this courtroom.

2            This is courtroom number?

3                THE CLERK:  Six.

4                THE COURT:  Six in Reno, Nevada.  Okay?

5                MR. HILL:  Your Honor, in clarifying the time --

6                THE COURT:  Hold on just a minute.  State your

7    name?  Who is speaking, please?

8                MR. HILL:  I'm sorry, your Honor, it's Jim Hill

9    again.

10           In clarifying the time to get objections served and

11   on file, can we fill in a date that's at least one day prior

12   to the 8th if not --

13               THE COURT:  At least, why don't you make it two

14   days before.

15               MR. HILL:  Yeah, that would be a little more

16   manageable on our side, and if we were to do any reply, we

17   don't mind being in court that day, but if you want to --

18               THE COURT:  That would be the only time for it

19   is in court that day.

20               MR. HILL:  Okay.  That's what the notice will so

21   state.

22           This is real important and it will apply, I think,

23   to other matters, and if your Honor has a little bit of time,

24   we wanted to take some time to discuss kind of a -- scheduling

25   questions.

9

1          THE COURT:  Okay.

2          MR. HILL:  But one of the things that we did

3    want to address is notice on matters like this.

4          What we are proposing is that notice be given to all

5    interest holders, that would be parties who are lender

6    investors in particular loans or properties, plus anyone who

7    has requested special notice in the cases, and that latter,

8    that is, the special notice request can be given

9    electronically, either by ECF or by e-mail.

10         But there was a prior order in this case --

11         THE COURT:  All of that sounds reasonable to me.

12         MR. HILL:  Okay.  Well, there was a prior order

13   in this case that seems to require notice to everyone in all

14   cases if it's a sale of substantially all of the assets in any

15   one of these cases which seems burdensome and overbroad.  You

16   know, I -- you know, I don't think -- in other words, somebody

17   in a totally other SPE needs to be mailed notice of the sale

18   in Huntsville.

19         THE COURT:  I agree.

20         MR. HILL:  Okay.

21         Your Honor, I don't know if it's -- if we have

22   addressed all issues that anybody else may have with respect

23   to our emergency motion on Huntsville so --

24         THE COURT:  And you do have regular dates, of

25   course, Madam Clerk has given you for setting such notices and

1    hearings, 102 notices or regular hearings, I think it's one

2    Thursday a month, but other Thursdays are available, too.

3    Just you have to check with Madam Clerk beforehand.

4             And lest there is a trial, concurrent trial

5    occurring in court, my request would be that you always set

6    them at 9:00 a.m. so that we can handle them at 9:00 and then

7    continue with the trial.

8             MR. HILL:  Let me address one of the important

9    things I was hoping to get.

10            As the trustee works through what are right now the

11   large amount of emergency-type matters that are taking a large

12   part of time, and then we can shift to, you know, broader,

13   more regular administrative-type matters, but if it made sense

14   in this case, given the number of parties, to have a regular,

15   once-per-month omnibus hearing date to address status and

16   routine matters --

17            THE COURT:  You bet.  And I think Madam Clerk

18   has already assigned those dates and given them to you into

19   the future.  In fact, are they on the website, Madam Clerk?

20            THE CLERK:  Yes, they are posted on the

21   bankruptcy website.

22            THE COURT:  For this case.

23            THE CLERK:  Yes.

24            MR. HILL:  That's great.  Okay.  I apologize for

25   not having taken those down already.  So you're way ahead of

11

1    me on that one.

2                THE COURT:  So those are available, and, again,

3    as I said, you can request by prior request additional

4    Thursdays or additional dates as you may need them.

5                MR. HILL:  Okay.  That's great.

6         Now, just as a head's up to all parties on the

7    phone, and certainly to your Honor, in talking to multiple

8    parties, one of the things that we are going to be facing

9    seriatim here are requests to transfer servicing, requests to

10   do changes -- requests to approve loans against properties or

11   requests to sell properties.

12               THE COURT:  Right.

13               MR. HILL:  And we are going to be --

14   certainly on -- well, let me tell everyone this.

15        The trustee is going to need and require a comfort

16   order on each such request just because of certainty that, A,

17   he needs and, B, certainty we're hearing, for instance, title

18   companies might need or third parties might need, to make it

19   very clear on a case-by-case, loan-by-loan,

20   property-by-property basis that there has been a change.

21        It would also give numerous parties opportunity to

22   be heard if they assert an interest in a particular loan,

23   property or whatever.

24               THE COURT:  I agree in your suggestion of the

25   need for such an order, and were you anticipating just

12

1    presenting it or putting it on a 102 notice?

2                    MR. HILL:  Your Honor, it would be on a 102

3    notice.  I just wanted to alert you that that is something

4    that we and others seem to be in need of.

5                    THE COURT:  Right.  I agree.  That's absolutely

6    necessary.

7            You're also in need of compensation, of course, for

8    counsel, as well as the trustee.  So, in each of these cases,

9    you know, I'm very receptive, aside from whatever interest

10   Asset Resolution itself may have in prior accrued fees, which

11   is a disputed issue, I have no doubt that out of each such

12   funding or each such sale that there is a need to compensate

13   the trustee and receiver and -- I'm sorry, trustee and counsel

14   for trustee, separate and apart for current efforts.

15           So I'm just trying to assure you of the recognition

16   by the Court of the need for that compensation, and just make

17   sure you include it like you did in this one in any 102

18   notices.

19                   MR. HILL:  Yes, and, your Honor, we are -- our

20   current approach is to approach things on a case-by-case basis

21   as opposed to omnibus right now because we, frankly, have so

22   many issues out there that must ultimately be resolved that we

23   just simply have to do it on a case-by-case basis.

24                   THE COURT:  Right.

25                   MR. HILL:  That's our approach.

13

1          THE COURT:  Okay.

2          MR. HILL:  I do need to alert you to an

3 impending emergency that we may have worked out just minutes

4 before this call started.

5          There is another property that is suffering a tax --

6 that suffered a tax sale and redemption.  We may have

7 negotiated a settlement with the taxing authority.

8          It was a tax sale, your Honor, that related to --

9 not an SPE but a loan that's in the portfolio.  It's called

10 Harbor Georgetown property.  In other words, it's not a

11 debtor-owned property, it's a third-party-owned property in

12 which the debtor has a five percent interest.  It's in

13 Michigan.

14          We believe we are getting an agreed extension of

15 time with the taxing authority for the redemption period that

16 would resolve an emergency, but if we cannot get that

17 agreement, we may need to be in front of your Honor before a

18 redemption period lapse of March 31.

19          So, in other words, we may need to see your Honor,

20 if you have the time, March 29 or so to either get an

21 emergency section 105 order or to get an approval of the sale

22 or loan on that property to save it.

23          THE COURT:  I am available.  The only

24 conflicting schedule I have right now is hearings in Las Vegas

25 on this coming Monday.

1          MR. HILL:  Okay, your Honor.  We will know

2   hopefully before the end of today, certainly tomorrow.

3          If we've got it resolved, we may just be needing to

4   submit to your Honor a stipulation with the taxing authority,

5   and so that would be great news to the direct lenders that are

6   involved in that property, and certainly to the trustee, if we

7   get it resolved.  If not, it will be a little more difficult,

8   but we think we have some solutions that may be in play that

9   we would present to your Honor on an emergency basis.

10          THE COURT:  Okay.

11          MR. HILL:  Let's see.

12          Your Honor, there are some other matters that are

13   currently on your calendar that we can address at another

14   scheduling conference, we could address on the 8th or -- just

15   to alert you what they are, we bear some matters that are

16   coming up that we're not quite sure what the trustee's

17   position or role should be in them.  They range from the

18   pending sanctions motion to a trial date in the 892 case to

19   the declaratory relief action that was filed by the debtor

20   prior to the appointment of the trustee.

21          But all of those, as far as the trustee is

22   concerned, are matters that he, frankly, doesn't yet have

23   enough knowledge and information to take definitive, lasting

24   positions.

25          So we would like to address scheduling, certainly,

15

1   on the 892 case, on the trial, certainly the declaratory

2   relief adversary action that was filed in late December '09.

3           THE COURT:  Just make sure you have all of the

4   relevant parties in front of the Court either by telephone or

5   in person at the time you bring it up.

6           MR. HILL:  All right.  I think the next time

7   that we would have all parties in court sounds like would be

8   April 8th.  We would be asking, certainly, no setting of a

9   trial date in 892 and putting off any action.  I don't think

10  it's even been served yet, but the declaratory relief

11  action --

12          THE COURT:  Just make sure you have all the

13  relevant parties in front of the Court when you bring that

14  issue up, and, of course, discuss it with them beforehand.

15          But to the extent I have to resolve a dispute, just

16  make sure you have all of them there in front of the Court.

17          MR. HILL:  Yes, I think it's purely scheduling

18  trying to put it off as opposed to having any substantive

19  action taken.

20          THE COURT:  Right.

21          MR. HILL:  Your Honor, I have dominated the

22  discussion this morning, but those are the issues that we

23  wanted to at least alert you to, and we greatly appreciate the

24  help you've given regarding scheduling on the Huntsville

25  property, and hopefully we're going to get the extra time we

16

 1    need on Harbor to get past the emergency on that one.

 2              THE COURT:  Thank you.

 3              And I also strongly appreciate the efforts of

 4    Mr. Leonard and counsel for -- in this difficult case.

 5              MR. LEONARD:  Thank you, your Honor.

 6              THE COURT:  Anything else that we need to

 7    discuss today?

 8              Okay.  So the 8th is the next substantial scheduling

 9    as well as motion calendar in this case, and --

10              MS. CHUBB:  Your Honor?

11              THE COURT:  Go ahead.

12              MS. CHUBB:  Your Honor, this is Janet Chubb, and

13    I had had inquiries as to how much time is available --

14              THE COURT:  A little bit more, Ms. Chubb,

15    please, a little bit louder.

16              MS. CHUBB:  Sorry, yes, I'm going to put you

17    back on mute as soon as I get done asking this question.

18              But people had called me about how much time is

19    available for the sanctions hearing on the 8th of April and

20    whether you were taking evidence, and I didn't know --

21              THE COURT:  Let's see.  This is the sanctions

22    hearing against --

23              MS. CHUBB:  Yes, ma'am [sic], this is the

24    sanctions -- the motion for sanctions against the parties who

25    counseled the filing of the Chapter 11 cases.

17

1          THE COURT:  Oh, okay.  I haven't read those

2     pleadings yet, but you are seeking sanctions in that regard.

3          MS. CHUBB:  Well, you directed us to file a

4     motion, and we did, yes.

5          THE COURT:  Very good.  Okay.

6          So do you have evidence to present?  Do we have the

7     other side on the phone here today?

8          MS. CHUBB:  Yes, that's who's been asking, and I

9     wanted for their benefit to find out if you are going to take

10    evidence.  We are not presenting evidence, we've done

11    everything by declaration.

12         THE COURT:  Okay.  Let's see.  This is an

13    April 8 --

14         MS. CHUBB:  Eight, yes.

15         THE COURT:  That's a Thursday calendar.

16         As of right now, do I have any trials scheduled that

17    day?

18         THE CLERK:  No, your Honor.

19         THE COURT:  No, that's open, so I do have time

20    available for taking evidence.

21         If you've submitted all of your affirmative evidence

22    by way of declaration, the normal procedure on that kind of a

23    shortened procedure, as you're all aware, is declarations on

24    both sides with declarants being available immediately for

25    presentation in court for cross-examination by an opposing

18

1   side.

2          Are you suggesting that, or are you suggesting that

3   you do need in-court time for all of the declarants to present

4   their original testimony as opposed to declaration in court?

5              MS. CHUBB:  Your Honor, this is Janet Chubb.

6          We do not need that time.  I'm doing this for the

7   benefit of the opposing counsel.

8              THE COURT:  And are they here on the line?

9              MS. CHUBB:  Some of them are.

10             THE COURT:  Okay.  Do any of you have a position

11  on that?  Do you need time for original presentation, or are

12  you willing to present original testimony by declaration but,

13  at the request of opposing counsel, to have those declarants

14  available for cross-examination?

15             MR. WALSH:  Your Honor, it's Tim Walsh on behalf

16  of Klestadt & Winters.

17             THE COURT:  Uh-huh.

18             MR. WALSH:  We have not made the decision as of

19  yet whether or not we would want to put on live testimony, but

20  we would like to reserve some time in case we do believe it's

21  necessary.

22             THE COURT:  Okay.  I have all that day

23  available, and we'll keep it available.

24             MR. WALSH:  Thank you, your Honor.

25             MR. BECKETT:  Your Honor, this is Tom Beckett at

1    Parsons, Behle & Latimer in Salt Lake City.  How do you.

2                    THE COURT:  Thank you.

3                    MR. BECKETT:  I represent Silar, Terra Firma,

4    Robert Lee and Jay Grayson in connection with the sanctions

5    motion, and I would take the same position that Mr. Walsh did.

6    We appreciate the Court having time, but -- and may use it but

7    have not reached that conclusion yet.

8                    THE COURT:  All right.  Okay.

9             You know, it is an open question, frankly.  It

10   wasn't my instruction that they file the motion.

11            Of course, at the time the Court was quite concerned

12   because you had really slowed the process down by filing a

13   bankruptcy.  It may turn out that there are real benefits to

14   the bankruptcy as opposed to a class action which this Court

15   suggested over a year, year and a half ago.

16            The bankruptcy, of course, has a lot wider

17   jurisdiction, a lot greater ability to wrap up all of the

18   interests in these various properties, and it actually brings

19   the properties themselves directly within the jurisdiction of

20   the Court so it may be that there are benefits, too.

21            So it's an open question, simply as a matter of

22   argument on the law, let alone evidence presentation, as to

23   whether I should impose sanctions, and, most important to that

24   inquiry, too, is whether the filings of bankruptcy and that

25   delay incurred caused damage in any respect.  If there was no

1  damage, then, of course, I'm not imposing any sanctions.

2          So those are the questions to be addressed and may

3  help you assess whether you need declarations or live

4  testimony, okay.

5          MR. BECKETT:  Your Honor, this is Tom Beckett

6  again.  May I inquire of the Court?

7          THE COURT:  Certainly, please.

8          MR. BECKETT:  Thank you, sir, and I appreciate

9  your comments.

10          We are filing this afternoon -- the other two groups

11  of respondents to the sanction motions have already filed.  We

12  are filing this afternoon our response, and at this point it

13  looks like it's going to be a little over your page limit.

14          My understanding is that I will file a motion for

15  leave to file over-length brief and attach to that the

16  objection.  Is that consistent with what your Honor would

17  like?

18          THE COURT:  The local rule does require a

19  30-page limit and a motion and approval if you're going to

20  exceed that limit, and, of course, you can follow that

21  procedure.

22          My much stronger recommendation is that you try to

23  put as much information into declarations, for example, which

24  are not subject to that 30-page limit, and then you can

25  shorten your actual briefs with referential statements to

1    declarations and such and including the argument.

2                So that's my recommendation to you is that you try

3    to stay within the 30-page limit and simply get your

4    evidentiary matter into separate declarations that you can

5    make reference to.

6                But if you can't do that, then, of course, just

7    follow the local rule.  You do need a concurrent motion to

8    approve a 30-page, and if it's going to be a 60-page, you'll

9    probably get a denial.  If it's going to be 32, 34 pages, of

10   course, I always grant those.

11               MR. BECKETT:  I appreciate the guidance.  This

12   is Tom Beckett.  Thank you very much for your time.

13               THE COURT:  Okay.  Anything else?

14               MR. MILLIMET:  Your Honor, this is Rob Millimet

15   of Bickel & Brewer.

16               I just wanted to alert the Court, you had mentioned

17   earlier that the next time that we're going to be together,

18   absent an emergency, is the April 8th hearing.

19               I just wanted to note for the Court that the Court

20   yesterday issued a minute order in the 892 District Court case

21   setting a pretrial conference on April 5th, which is a Monday,

22   because there currently is a Monday, April 12 trial setting.

23               And I didn't know -- and I know we can't resolve

24   this on the phone because some of the parties are not here,

25   but wanted to know if the Court wanted us to push that

22

1    pretrial conference to April 8th as well, or still hold it on

2    April 5th.

3                    THE COURT:  That's a calendar call at 8:30,

4    correct?

5                    MR. MILLIMET:  Correct.

6                    THE COURT:  Well, is everybody in accord that

7    we're not going to go forward with trial in April such that we

8    should push it over to the April 8th, or do we have dispute

9    about that and some parties want us to hold the trial in April

10   pursuant to this calendar call, in which case I do need to

11   insist that you do appear for the calendar call.

12                   MR. HILL:  Your Honor, this is Jim Hill for the

13   trustee.

14                   To the extent that the trustee is a participant and

15   is a party, we will be asking that your Honor not set the

16   trial at the present time but revisit that issue at a later

17   time.

18                   THE COURT:  Is everybody on the phone right now

19   willing to set the calendar call itself over from Monday, the

20   5th, at 8:30, to the nine o'clock hearing date on the 8th?

21                   MR. MILLIMET:  This is Rob Millimet.

22                   We are, your Honor, on behalf of certain direct

23   lenders and plaintiffs.

24                   MR. HILL:  Jim Hill for the trustee.  We

25   certainly are, yes.

23

1      THE COURT:  Okay.  Now, we don't have everybody

2 on the phone so I assume what you're suggesting is we would

3 have to issue a new minute order saying that the calendar call

4 has been reset to Thursday, the 8th, at nine o'clock.

5      MR. MILLIMET:  Sorry.  This is Rob Millimet.

6      Correct, your Honor.  Even though Silar and Compass

7 are not on the phone, we, as counsel for the plaintiffs, can't

8 foresee wasting the Court's resources to have a trial just as

9 to Silar if Asset Resolution is not also part of that trial.

10      THE COURT:  Why don't you call them, then, and

11 tell them that the Court is anticipating sending out a

12 corrected notice of the calendar call date, and make sure they

13 don't have any objection to that so that we're not doing

14 something without their presence.

15      And I'll ask Madam Clerk to issue a new minute order

16 correcting that date to the 8th at 9:00 a.m.

17      MR. MILLIMET:  I will do that.

18      This is Rob Millimet.  Thank you.

19      THE COURT:  All right.  Thank you very much,

20 counsel.  Thank you for your appearance today by telephone.

21                          -o0o-

22      I certify that the foregoing is a correct
       transcript from the record of proceedings
23     in the above-entitled matter.

24     /s/Margaret E. Griener          03/31/2010
       Margaret E. Griener, CCR #3, RDR
25     Official Reporter