1  SULLIVAN, HILL, LEWIN, REZ, & ENGEL,
   A Professional Law Corporation
2    James P. Hill, CA SBN 90478 (Pro Hac
     Vice)
3    Jonathan S. Dabbieri, CA SBN 91963 (Pro
     Hac Vice)
4    Elizabeth E. Stephens, NV SBN 5788
   228 South Fourth Street, First Floor
   Las Vegas, NV 89101
5  Telephone: (702) 382-6440
   Fax Number: (702) 384-9102
6
   Attorneys for Chapter 7 Trustee,  William A.
7  Leonard, Jr.

THE MAJORIE FIRM LTD.
Francis B. Majorie
*Pro Hac Vice* (Per BK Dkt. 1915 ¶ 153)
3514 Cedar Springs Road
Dallas, TX 75219
Telephone:  (214) 522-7400
Fax Number: (214) 522-7911
Attorneys For Donna M. Cangelosi,  Solely In
Her Capacity As "TDI Representative" For
The Margarita Direct Lenders  Under The
Court's May 3, 2012 Order [Doc. 1774]

8              UNITED STATES BANKRUPTCY COURT
                    DISTRICT OF NEVADA

9  In re                                    )   Case No. BK-S-09-32824-RCJ (Lead Case)
                                            )
10 ASSET RESOLUTION, LLC,                   )   Jointly Administered with Case Nos.:
                                            )   BK-S-09-32831-RCJ; BK-S-09-32839-RCJ;
11            Debtor.                        )   BK-S-09-32843-RCJ; BK-S-09-32844-RCJ;
                                            )   BK-S-09-32846-RCJ; BK-S-09-32849-RCJ;
12                                          )   BK-S-09-32851-RCJ; BK-S-09-32853-RCJ;
   Affects:                                 )   BK-S-09-32868-RCJ; BK-S-09-32873-RCJ;
13  ☐ All Debtors                           )   BK-S-09-32875-RCJ; BK-S-09-32878-RCJ;
   ☒ Asset Resolution, LLC, 09-32824       )   BK-S-09-32880-RCJ; BK-S-09-32882-RCJ
14  ☐ Bundy 2.5 Million SPE, LLC, 09-32831 )
   ☐ Bundy Five Million SPE, LLC, 09-32839 )
15  ☐ CFP Anchor B SPE, LLC, 09-32843      )   Chapter 7
   ☐ CFP Cornman Toltec SPE, LLC, 09-32844 )
    ☐ CFP Gess SPE LLC, 09-32846           )   **EX PARTE APPLICATION BY**
16  ☐ CFP Gramercy SPE, LLC, 09-32849      )   **TRUSTEE WILLIAM A. LEONARD AND**
   ☐ Fiesta Stoneridge, LLC, 09-32851     )   **TDI REPRESENTATIVE DONNA M.**
17  ☐ Fox Hills SPE, LLC, 09-32853         )   **CANGELOSI FOR AN ORDER**
   ☐ HFAH Monaco SPE LLC, 09-32868        )   **AUTHORIZING A SALE  OF THE**
18  ☐ Huntsville SPE LLC, 09-32873         )   **MARGARITA ANNEX PROPERTY**
   ☐ Lake Helen Partners SPE LLC, 09-32875 )   **FREE AND CLEAR OF LIENS, CLAIMS,**
19  ☐ Ocean Atlantic SPE LLC, 09-32878     )   **AND ENCUMBRANCES AND FOR**
   ☐ Shamrock SPE LLC, 09-32880           )   **OTHER RELIEF**
20  ☐ 10-90 SPE, LLC, 09-32882             )
                                            )   Ctrm:  RCJ – Courtroom 6
21                                          )       Bruce R. Thompson Federal Building
                                            )       400 S. Virginia Street
22                                          )       Reno, NV 89501
                                            )   Judge: Hon. Robert C. Jones
23 ─────────────────────────────────────── )

24

                              - 1 -

***EXPEDITED RELIEF IS REQUESTED BECAUSE THE APPLICATION***
***RELATES TO AN AGREED TRANSACTION IN WHICH TIME IS OF THE ESSENCE***

William A. Leonard, Jr. ("Trustee"), the chapter 7 trustee for the bankruptcy estate of Asset Resolution, LLC (the "Estate") and the above-captioned jointly administered bankruptcy cases (the "Bankruptcy Cases") and Donna M. Cangelosi ("Cangelosi"), in her capacity as the TDI Representative for the Margarita Annex loan under this Court's May 3, 2012 order (the "Margarita TDI-PAL Order")[AR Bk Doc. 1774], jointly move for an order approving a sale of real property generally known as "Margarita Annex" (the "Property"), as follows:

## I.

## <u>REQUESTED RELIEF</u>

1.      This *ex parte* application  (the "Application") relates to an approximately 98-acre parcel of real property (the "Property") located in San Luis Obispo County in California, which is owned by the Estate as a tenant in common with approximately 106 other direct lenders (the "Direct Lenders") represented by Plaintiff Cangelosi as "TDI Representative" pursuant to the Margarita TDI-PAL Order.

2.      On October 7, 2013, the Estate and the Direct Lenders (through their nominee, TDI Representative Cangelosi) received a foreclosure trustee's Deed of Sale which transferred tenant-in-common title to the Property: (a) to the Estate (for its 24.42 percent interest in the loan); and (b) to Cangelosi in  her capacity as TDI Representative (holding title for the benefit of the other Direct Lenders' 75.58 interest, according to their proportionate  beneficial "direct lender" interests in the Margarita Annex loan). The foreclosure trustee's Deed of Sale for the Property is was recorded on October 7, 2013 in the county records of San Luis Obispo as Doc.

1  No. 2013056944. The Margarita TDI-PAL Order and lien against the Property established

2  therein (the "PAL Lien") was recorded immediately thereafter as Doc. No. 2013056945.

3       3.    The foreclosure took place under a deed of trust (the "Deed of Trust") securing a

4  loan (the "DL-King Loan") in the original principal amount of $10.6 million and increased to

5  $12 million between the Estate and the other Direct Lenders and their borrower, John King

6  ("King"). The Deed of Trust was recorded on July 30, 2004 as Document No. 2004068161 in the

7  official records in the Office of the Recorder of San Luis Obispo County, California.

8       4.    From the time of the USACM bankruptcy in 2006 through the foreclosure in

9  October 2013, the Estate and the Direct Lenders (jointly and severally, the "Margarita DLs" or

10  "Movants") have not received a penny of payments on their $12 million loan. The Margarita DLs

11  now, finally, have an opportunity to recoup almost their entire lost principal by selling the

12  Property for cash.

13       5.    By this *ex parte* application (the "Sale Motion"), the Trustee and TDI

14  Representative Cangelosi seek the entry of an order (the "Sale Order") authorizing a sale of the

15  "Margarita Annex" property (the "Property") to either: (a) Midland Pacific Construction

16  Company ("Midland"), pursuant to the contract  (the "Midland Contract') attached as Exhibit A

17  to the Declaration of Donna M. Cangelosi filed concurrently herewith (the "Cangelosi

18  Declaration."); or (b) IPDC Construction, Inc. ("IPDC"), pursuant to the contract (the "IPDC

19  Contract") attached to the Cangelosi Declaration as Exhibit B.

20       6.    The Midland Contract provides for a complete resolution of all disputes with

21  Midland involving the Property and provides Midland the right to purchase the Property for

22  $13.5 million of cash (plus customary pro-rations) no later than fifteen days from the date the

23  Court enters an order approving the sale. If Midland either opts-out of its right to purchase or

24

fails to timely close the purchase, the Property will be sold to IPDC under the IPDC Contract for $13.5 million cash plus 1.5 percent of gross sale proceeds received from a development of the Property after the sale. Both contracts were obtained at arm's length, after diligent efforts by Cangelosi to obtain the highest and best price for the Property from various possible purchasers. [*See* AR Bk Doc. 2228 (Order) at 9, ¶ 31]

7.    The net effect of the Midland Contract and the IPDC Contract is that the Property will be sold within a few weeks of this Court's entry of the requested Sale Order, for cash, in an amount that will yield net payments to the Estate and its fellow Direct Lenders equal to an approximately 95 percent return of their principal investments in the Margarita Annex loan.

8.    **Direct Lenders holding more than fifty-one percent of the beneficial "direct lender" interests in the loan have approved the proposed sales to either Midland or IPDC as described more fully herein (the "Transaction").** [*See* Cangelosi Declaration; Declaration of Carol Kesler (filed concurrently herewith)].

9.     In light of this Court's rulings interpreting NRS 645B.340, related statutes, and the regulations promulgated thereunder and the right of the holders of 51% or more of the beneficial interest in the unpaid principal balance of a loan to make decisions with respect to the loan/property (the "Fifty-One Percent Rule"), the Trustee understands that, upon being informed that a transaction has been approved by the requisite 51% or more, he is to facilitate the transaction, including but not limited to seeking any necessary authorization of this Court.

10.    This Application therefore seeks: (a) approval of a sale of the Property to either Midland or IPDC pursuant to the Fifty-One Percent Rule and section 363(h) of the Bankruptcy Code; (b) free and clear of all senior liens and encumbrances under section 363(f) of the

Bankruptcy Code; and (c) findings and conclusions that afford the buyer the protections of a good faith purchaser under section 363(m) of the Bankruptcy Code and other applicable law.

11.    This Application also seeks a partial lifting of the automatic stay so that Midland may pursue damages claims against John King in the case pending in California Superior Court while it goes forward with the possible purchase (or not) of the Property under the Midland Contract.

12.    Finally, this Application requests that the Court grant the Movants such other relief to which they prove entitled, including issuance of any supplemental orders that may be required by a title company for implementation of the sale.

## II.

## NEED FOR EXPEDITED CONSIDERATION

13.    As set forth in Cangelosi's declaration: (a) the timing of the closing is tied to entry of the Sale Order approving the Transaction (the "Sale Order"); and (b) a delay in the closing  beyond January 2, 2014 will result in either: (1) a termination of the IPDC Contract by IPDC; or (2) an obligation to pay IPDC a $500,000 "break-up" fee if IPDC does not terminate and the Property is sold to someone other than IPDC.

14.    The relief requested in the Application also does not negatively impact any creditors of parties-in-interest in the Estate. The Estate must follow the directions of its fellow Direct Lenders under the Fifty-One Percent Rule, the sale to either Midland or IPDC as discussed herein have been approved overwhelmingly by the Direct Lenders in the Margarita Loan, and the sale will yield about 95 recovery of the principal investment in the loan.

15.     Thus, to allow the sale to go forward immediately, Movants request that the Court consider this Application as promptly as possible and that the Sale Order be effective upon

entry (*i.e.,* that the order waive the time for effectiveness of orders under Rules 4001(a)(3) and 6004(h) of the Federal Rules of Bankruptcy Procedure ("FRBP")).

### III.

### JURISDICTION AND VENUE

**A.    The Asset Resolution Bankruptcy Cases**

16.    On October 14, 2009, Asset Resolution, LLC and related debtors commenced the Bankruptcy Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York.  Venue of the Bankruptcy Cases was subsequently transferred to the U.S. Bankruptcy Court for the District of Nevada on November 24, 2009 and, shortly thereafter, to this Court (as a result of an order withdrawing the automatic reference). The Asset Resolution Bankruptcy Cases and related proceedings are therefore now pending in this Article III Court (Jones, C.J).

17.    On or about January 29, 2010, this Court entered its order, *nunc pro tunc*, converting the chapter 11 cases to cases under chapter 7 and appointing Plaintiff Leonard as the trustee. The Ninth Circuit Court of Appeals has affirmed that conversion. Plaintiff Leonard is therefore the duly qualified and acting chapter 7 trustee of the estates in the Asset Resolution Bankruptcy Cases (the "Estate"), administering the Estates for the benefit of creditors and equity holders.

**B.    The Margarita TDI-PAL Order**

18.    On May 3, 2012, the Court entered the Margarita TDI-PAL Order which, among other things: (a) authorized a still-outstanding secured, earmarked $1,132,150 protective advance loan for the benefit of the Estate and its fellow Direct Lenders in the Margarita Loan; and (b)

confirmed the appointment of Cangelosi as a "TDI Representative" for the Direct Lenders based on their consent under the Fifty-One Percent Rule.  [*See* AR Bk Doc. 1774].

**C.**   **Subject Matter Jurisdiction**

19.    This Court has jurisdiction over this Application and its subject matter under, among other authorities, 28 U.S.C. §§ 157 and 1334, 11 U.S.C § 363(f) and (h) and FRBP 7001(2), (3) and (9).

20.    This is a core proceeding under: (a) 28 U.S.C. §157(b)(2)(A)(matters concerning the administration of the estate); (b) 28 U.S.C. §157(b)(2)(B)(allowance or disallowance of claims against the estate); (c) 28 U.S.C. §157(b)(2)(K)(determinations of the validity, extent, or priority of liens); (d) 28 U.S.C. §157(b)(2)(M)(orders approving the sale or use of property); and/or (e) 28 U.S.C. § 157(b)(2)(O)(other proceedings affecting the liquidation of the assets of the estate).

21.    This Court also possesses supplemental jurisdiction under 28 USC § 1367(a).

22.    The Margarita TDI-PAL Order also provides that the Court will maintain jurisdiction to enforce the terms of that order.  [*See* AR Bk Doc. 1774 ¶¶ 64 & 72]

**D.**   **Venue**

23.    Because this Application arises under title 11 or arises in and/or relates to the Asset Resolution Bankruptcy Cases, venue is proper in this Court pursuant to 28 U.S.C. §1409(a).

///

///

///

///

# IV.

## GROUNDS FOR APPLICATION

### A.    The Sale Is Authorized Under The Fifty-One Percent Rule And 11 U.S.C. § 363(h)

24.    The foreclosure trustee deed granted title to the Property to the Estate (as a 24.42 percent tenant in common) and to TDI Representative Cangelosi (as the 75.58 tenant-in-common nominee for the remaining direct lenders, in proportion to their interests in the loan).

25.    The Fifty-One Percent Rule (codified in NRS 645B.340) provides that "the holders of 51 percent or more of the outstanding principal balance may act on behalf of all the holders of the beneficial interests of record on matters which require the action of the holders of the beneficial interests in the loan, including, without limitation . . . [t]he sale, encumbrance or lease of real property owned by the holders resulting from a foreclosure or the receipt of a deed in lieu of a foreclosure in full satisfaction of a loan."

26.    In an order entered in February 8, 2010, the Court ruled that: "Because the Loans are in default, the direct lenders are responsible for the management and direction of the Loans in accordance with the "51% Rule" under Nevada law. Thus, any direct lender may conduct and supervise the voting process to determine how 51% or more of the direct lenders, calculated by dollar amount in a Loan, intend to proceed with the management and direction of that Loan." [AR Bk Doc. 578-1]. The Court also ruled that, the "Trustee may, but need not, seek the approval of the Court" to implement the transaction pursuant to the Direct Lenders' direction. *Id.*

27.    Paragraph 53 of the September 6, 2012 "global" settlement order also underscored that, subject to the Trustee's right to seek Court guidance as he considers appropriate, the Trustee shall follow the dictates of the Direct Lenders under the Fifty-One Percent Rule and the votes of

the B&B DL Settling Clients as the indirect owners of the equity interests of the Estate. [*See* AR Bk Doc. 1915 at 22-23 ¶ 53].

28.    The Court's orders are further supported by 11 U.S.C. § 363(h), which authorizes the Court to enter an order allowing the Trustee to sell the entire property in which the Estate holds a tenant in common interest when: (1) partition in kind of such property among the estate and such co-owners is impracticable; (2) the sale of the estate's undivided interest in the Property would realize significantly less for the estate than a sale of the Property free and clear of the interest of co-owners; (3) the benefit to the estate of a sale of the Property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and (4) the Property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

29.    The Trustee has in the past chosen to obtain a Court order confirming his authority to provide the deed or other documentation necessary to follow the directions of the Direct Lenders under the Fifty-One Percent Rule.

30.    The Court has in turn authorized the Trustee to execute and deliver a deed or otherwise execute documents to implement a Fifty-One Percent Rule-driven transaction through *ex parte* application or emergency  motion (for example, Fox Hills loan [AR Bk Doc. 1694], Gardens Timeshares loan [AR Bk Doc. 770], Harbor Georgetown loan [AR Bk Doc. 723], Huntsville loan [AR Bk Doc. 726], Grammercy loan [AR Bk Doc. 556], Ocean Atlantic loan [AR Bk Doc. 1624], Bay Pompano loan [AR Bk Doc. 1486]), transfer of servicing to Cross, FLS for Castaic loans [AR Bk Doc. 913], and  transfer of Servicing To Cross for 19 loans [AR Bk. Doc. 989]).)

31.    The present Application follows this procedure.

32.     As established in the declarations of Donna Cangelosi and Carol Kesler submitted with this Application, as of December 3, 2013, seventy-four ballots from the holders of 77.79 percent (or $9,338,000) of the beneficial "direct lender" interests in the Margarita Annex Loan have approved a sale of the Property to either Midland or to IPDC under the Midland Contract and the IPDC Contract, and as requested in this Application (the "Transactions").

33.     The Court should follow its earlier practice, accept the direct lender consents, apply the Fifty-One Percent Rule, and enter the proposed sale order approving the Transactions.

**B.      The Sale Is Authorized By Section 363 Of The Bankruptcy Code**

34.     Section 363 of the Bankruptcy Code authorizes the sale of property of the Estate if a valid business reason exists to sell the property.

35.     The standard for approval of a sale of property of the estate under section 363 is whether there exists some articulated business justification for the proposed transaction, and whether the sale is in the best interests of the debtor, creditors and equity holders. *See Walter v. Sunwest Bank (In re Walter),* 83 B.R. 14, 19 (9th Cir. BAP 1988) (quoting *Institutional Creditors of Continental Airlines, Inc. (In re Continental Airlines, Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986).

36.     In making such a determination, courts look to numerous factors: (a) whether a sound business purpose justifies the sale; (b) whether the sale has been proposed in good faith; (c) whether the purchase price is fair and reasonable; (d) whether the assets are increasing or decreasing in value; (e) whether the assets have been given adequate marketing; and (f) whether adequate and reasonable notice of the sale was given. *See In re Work Recovery*, 202 B.R. 301, 303-04 (Bankr. D. Ariz. 1996); *In re Wilde Horse Enterprises, Inc*., 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); *In re WBQ Partnership*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995).

37.     FRBP 6004(f) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction."

38.     A trustee is entitled to broad discretion in determining the manner of a sale, including whether to sell property by public or private sale. *In re Frezzo*, 217 B.R. 985, 989 (Bankr. M.D. Pa. 1988) (citing *In re Canyon Partnership*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985)).

39.     Here, the proposed private sale Transaction meets the elements of the valid business sale under section 363:

**1.     <u>Sound Business Purpose/Decreases In Value/Marketing</u>**

40.     The Transactions proposed in this Application are justified by sound business purposes, for several reasons.

41.     First, the Property is raw land that requires completion of entitlements and other development "hurdles" to be ready for development. Efforts by the Direct Lenders to address those matters will require them to draw still more from the PAL Loan without obtaining any assurances that the costs will be offset by a higher purchase price. On the other hand, both Midland and IPDC are willing to buy the Property "as is."

42.     Second, the proceeds from a $13.5 million sale will enable the Direct Lenders to pay off the PAL Loan and various costs, and still provide them with a recovery of almost all of the principal balance of their original investment. The amount to be received by the Estate exceeds $ 2.5 million.

43.     Third, the Court is familiar with the extensive litigation with Midland about its claims to a superior right to purchase the Property or obtain a vendee's lien against it. The Court's lift stay rulings are presently on appeal to the Ninth Circuit. Litigation of Midland's

claims against the Property is also the subject of a recently filed adversary proceeding in this Court (Adversary Case No. 13-01208-RCJ; *see* AR Bk Doc.2328 (Amended Complaint)). Such litigation will be time-consuming and expensive. The litigation could result in a lifting of the stay through the appeal and/or a purchase price for the Property of $10 million or less (if Midland proved to be successful on its claims). Moreover, if the litigation is not resolved by January 2, 2014, IPDC will have the option of either terminating its obligation to buy the Property or requiring the Direct Lenders to keep IPDC as a back-up contract by paying a $500,000 break-up fee out of an ultimate sale of the Property (unless the Property is ultimately sold to IPDC).  In short, litigation is costly and risky. The proposed Transaction resolves all of those claims upon the entry of an order by this Court approving this Application.

44.     Fourth, if the Transaction is approved, all litigation will cease and there will be a sale within weeks of entry of the Court's order. The Midland Contract provides Midland a right to buy the Property for $13.5 million cash within fifteen days from entry of the order approving this Application.  If Midland fails to deposit the $13.5 million cash with the title company within seven days from the date this Court approves the Application, Midland's right to deposit terminates and IPDC can purchase the Property. If Midland opts out of the right to purchase the Property by December 12, 2013,  it will release its Lis Pendens upon receipt of $1.7 million (essentially liquidating its vendee's lien claim), which will be paid out of the sale proceeds to be received from IPDC. Thus, the Property will either be sold to Midland or it will be sold to IPDC (for the same amount of cash as Midland has agreed to pay plus additional payments of 1.5 percent of gross sales proceeds of lot sales as the Property is developed).

///

///

**2.    Good Faith/Diligence**

45.    The Transaction is being proposed in good faith.

46.    Since the USACM bankruptcy in 2006 to the foreclosure in October 2013, the Estate and its fellow Direct Lenders have not received a penny of payments on their $12 million loan to King.

47.    The TDI Representatives have worked diligently to utilize the PAL Loan proceeds to stave off property tax foreclosures, work on the various impediments to development, soliciting bids, and negotiating and obtaining the Midland and IPDC agreements which will yield a robust liquidity event by year end.

48.    In addition, the Transaction has been approved overwhelmingly by the Direct Lenders under the Fifty-One Percent Rule.

**3.    Adequate Notice**

49.    Adequate and reasonable notice of the sale has been provided to interested parties.

50.    The only real parties in interest with respect to the Transaction are the Margarita Direct Lenders, because the Estate is required by the Fifty-One Percent Rule and this Court's earlier orders to abide by the "whole loan" decisions of the Direct Lenders.

51.    The Direct Lenders have received notice of the proposed Transaction in connection with the receipt of consents under the Fifty-One Percent Rule.

52.    Notice of this Application will be also served on all the Margarita Direct Lenders via the email procedure authorized by this Court in the "global settlement" order entered on September 6, 2012. [AR Bk Doc. 1915 at 22-23 ¶ 53].

- 13 -

53.     Finally, electronic notice will also be given to all persons on the Court's ECF list for the Bankruptcy Cases, the special notice list, Midland Pacific, IPDC, Silar Advisors, LP (PAL lender), and the United States Trustee.

**4.     Purchase Price Is Fair And Reasonable**

54.      The purchase price is fair and reasonable.

55.      The TDI Representatives undertook extensive marketing efforts, received various bids for the Property, and obtained the IPDC Contract as a result.

56.     The Midland Contract is also the result of extensive litigation and negotiations over the past year.

57.     As explained above, the Transaction resulting from the combination of these contracts: (a) is at a high  purchase price; (b) minimizes  the risk, costs, and delays of litigation; and (c) will yield an almost-total recovery of principal on a ten year old loan  secured by raw land.

58.     In short, the proposed Transaction is justified by sound business reasons and the sale should be approved under section 363 of the Bankruptcy Code.

**B.     The Entire Property May Be Sold Free And Clear Of Any Liens, Claims, Or Encumbrances, And Other Interests Under Section 363(f) Of The Bankruptcy Code**

59.     Section 363 (f)(2) and (3) of the Bankruptcy Code permits the sale of  property free and clear of any interest in the property if such entity consents or such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property. A "free and clear" sale of the Property to Midland or IPDC is authorized by these sections (among others).

60.    First, the Property may be sold "free and clear of any interest in such property of an entity … if such entity consents." 11 U.S.C. § 363(f)(2). Midland has consented to the sale to IPDC upon the terms set forth in the Midland Contract. IPDC has consented to the sale to Midland under the terms set forth in the IPDC Contract. The Direct Lenders have consented (or are deemed to have consented) to the sale under the Fifty One Percent Rule.

61.    Second, the aggregate value of all liens against the Property—that would be the Margarita PAL Loan and, if timely exercised, the Midland Buy-Out Payment—is far less than the $13.5 million sales price.[1]

62.    The sales proceeds will be applied at the closing to protect these interests. The sales proceeds will be applied to pay the Midland Buy-Out (if any), the PAL lien, the costs of sale (including attorney's fees, consulting fees, and taxes), and then to each of the Estate and tis fellow Direct Lenders in proportion to their direct lender interests in the loan.

63.    The Trustee anticipates that the payment to be received by the Estate for its direct lender interest will be at least $2.5 million, which will then be available to pay the costs of administering the Estate and/or for the payment of valid claims against the estate pursuant to the priorities set forth in 11 U.S.C. § 726.

64.    For this reason, the sale is in the best interest of the debtor, the Estate, creditors, and other parties in interest and should be approved.

///

---

[1] Silar advanced the entire $1,132,150 of the Margarita PAL loan as earmarked funds to the Estate to be held in escrow for Silar for further disbursement by the Trustee pursuant to the terms of the Margarita TDI-PAL Order. Because not all of the $1,132,150 has been disbursed by the Trustee, "re-payment" to Silar will entail a combination of returning the non-disbursed earmarked, escrowed funds and paying the balance due on what had been disbursed through draw requests out of the sales proceeds at closing.

**C.    The Court Should Grant Protection Under Section 363(m) And FRBP 6004(h)**

65.    Bankruptcy Code Section 363(m) provides that "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."

66.    Rule 6004(h) of the Federal Rules of Bankruptcy Procedure in turn provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

67.    Section 363(m) "fosters the 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'" *In re Abbotts Dairies of Penn., Inc*., 788 F.2d 143, 147 (3d Cir. 1986).

68.    A good faith purchaser is a purchaser who buys "in good faith" and "for value." *In re M Capital Corp*., 290 B.R. 743, 746 (B.A.P. 9th Cir. 2003).

69.    The Court's order granting the Application should provide the protections afforded by section 363(m) and the waiver of effectiveness under FRBP 6004(h).

70.    The Transactions are the result of arm's length, good-faith negotiations with Midland and IPDC, and is not the product of fraud or collusion.

71.    To the best of the Trustee's knowledge, neither Midland nor IPDC is an insider of the Debtor nor has an affiliation or is in any way associated with the Debtor or the Trustee.

72.    The Transaction is also for fair value.

73.     Providing the protections under section 363(m) and a waiver of the time period under FRBP 6004(h) will allow the buyers to obtain title insurance and promote a prompt closing of the sale.

**D.      The Court Should Partially Lift The Automatic Stay**

74.     The Court has ruled that Midland is barred by the automatic stay from pursuing claims against the Property in Midland's case against King in the California Superior Court.

75.     Under the Midland Contract, if the Court grants this Motion, the parties have agreed that Midland's exclusive remedy towards the Property is to either buy it or obtain a buy-out, as overseen by this Court. Midland should be free to pursue its damages claims against King

76.     Movants therefore request that, as part of the relief granting this Application, the Court order that the automatic stay is partially lifted to allow Midland to pursue King for damages in California court.

**V.**

**PRAYER FOR RELIEF**

77.     Based on the foregoing, the Trustee and TDI Representative Cangelosi request that the Court enter an order:

(a)     Granting the Application;

(b)     Declaring that notice of the Application has been properly served on all necessary and appropriate parties under the facts and circumstances of the matter and applicable law;

(c)     Approving a sale of the entire Property under either the Midland Contract or the IPDC Contract, free and clear of all liens, claims, encumbrances, and other interests under section 363 of the Bankruptcy Code;

(d)     Finding the buyer "in good faith" within the meaning of section 363(m), entitled to all the protections encompassed therein;

(e)   Authorizing the Movants to direct the escrow agent to pay directly from sale proceeds the PAL Loan, any sums due to Midland or IPDC, fees and other costs of sale, and distributions of net proceeds to the Estate and its fellow Direct Lenders in proportion to their direct lender interests;

(f)   Waiving the provisions of Rules 4001(a)(3) and 6004(h) of the Federal Rules of Bankruptcy Procedure and providing that the order is effective immediately upon entry;

(g)   Partially lifting the automatic stay so that Midland may pursue King for damages in state court; and

(h)   Declaring that the Court maintains exclusive jurisdiction to enforce the terms of the Midland Agreement and the Court shall enforce that agreement (without a jury or discovery, except such discovery as the Court may order) upon motion by a Party on no less than three Calendar Days' notice; and

(i)   Granting such other and further relief as the Court may find just and proper.

A proposed agreed order will be submitted promptly.

Dated: December 5, 2013

SULLIVAN, HILL, LEWIN, REZ & ENGEL
A Professional Law Corporation


By:___/s/ Jonathan S. Dabbieri_____
          James P. Hill
          Jonathan S. Dabbieri
          Elizabeth E. Stephens

Attorneys for Chapter 7 Trustee,
William A. Leonard, Jr.

THE MAJORIE FIRM LTD.

By:___/s/ Francis B. Majorie_____
          Francis B. Majorie

Attorneys For TDI Representative,
Donna M. Cangelosi