THE MAJORIE FIRM LTD.
Francis B. Majorie
*Pro Hac Vice* (Per BK Dkt. 1915  ¶ 153)
1450 Cottonwood Valley Court
Irving, Texas 75038
Telephone:  (214) 306-8107
Fax Number: (214) 522-7911

*Counsel for Claims Recovery Trust*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| | |
|---|---|
| In re | ) Case No.: BK-S-09-32824-RCJ (Lead Case) |
| ASSET RESOLUTION, LLC, | ) Chapter 7 |
| Debtor. | ) |
| Jointly Administered with Case Nos.: BK-S-09-32831-RCJ; BK-S-09-32839-RCJ; BK-S-09-32843-RCJ; BK-S-09-32844-RCJ; BK-S-09-32846-RCJ; BK-S-09-32849-RCJ; BK-S-09-32851-RCJ; BK-S-09-32853-RCJ; BK-S-09-32868-RCJ; BK-S-09-32873-RCJ; BK-S-09-32875-RCJ; BK-S-09-32878-RCJ; BK-S-09-32880-RCJ; BK-S-09-32882-RCJ | ) **DECLARATION OF KEVIN OLSEN  IN OPPOSITION TO MOTION OF COMMERCAL MORTGAGE MANAGERS FOR RELIEF FROM STAY PURSUANT TO 11 U.S.C. 362 TO PROCEED IN NON-BANKRUPTCY FORUM [Dkt Nos. 3306 & 3308]** |
| | ) Courtroom 4B |
| | ) Lloyd D. George Federal Courthouse |
| | ) 333 Las Vegas Blvd., South |
| | ) Las Vegas, Nevada 89101 |
| | ) Judge Robert C. Jones |
| **Affects this Debtor Only** | ) Hearing:  Monday, May 14, 2018 at 10am |

I, KEVIN OLSEN, hereby declare as follows:

1.     My name is Kevin M. Olsen, I am over 18 years of age and reside in Encinitas, California. The statements in this declaration are true. In my capacity as General Manager of Universal Management, Inc., a Nevada Corporation, I invested $60,000.00 in a $30 million fractional trust deed through USA Capital in Marlton Square. I have requested that The Claims Recovery Trust represent Universal Management, Inc. in connection with the pending motion to lift the automatic stay filed by Commercial Mortgage Managers, Inc. ("CMM").

2.     Marlton Square is multiple parcels of land in the City of Los Angeles available for development. Since this was one of the last multiple parcels of land in Los Angeles, it was

considered a great investment and eventually USA Capital acquired fractional interests totaling $30 million from 272 investors (the "DLs" or "Direct Lenders").

3.    USA Capital went into bankruptcy protection in 2006 and saving the Direct Lenders' investment became an issue for all 272 investors. Direct lenders organized themselves in 2007 and I was appointed as Loan Captain over Marlton Square. As a loan captain, my job was to find and organize the direct lenders, keep them informed on what was happening, and lead the protection of those in Marlton against anyone trying to take advantage of us.

4.    Between 2007 and 2010, a company by the name of Platinum bought many of the Marlton direct lender positions at a deeply discounted rate. I subsequently found out that these fractional interests, comprising approximately 25% of the Marlton Square loan, were actually owned by David Rentz of CMM. In my initial conversation with Rentz he insisted that his company CMM be named as asset manager over the Marlton Square loan. It was estimated that, given the large position that Rentz held, it would be difficult to attain 51% of a DL vote to elect a different servicer. CMM also promised to use its own money to settle back taxes and other expenses associated with the loan.

5.    After giving direct lenders copies of the proposed operating agreement and loan servicing agreement with CMM, I conducted a vote of the 272 known direct lenders from March through May 2010. On June 24, 2010, I was able to make a declaration to the court that we had received 107 ballots representing 52.87% of the direct lenders approving CMM as the asset manager, including the Rentz positions. On August 4, 2010 Judge Jones signed the order making CMM asset manager. CMM then formed Marlton Recovery Partners, LLC in California and foreclosed on the parcels securing the DLs' loans on December 29, 2010.

6.    I continued in my position as loan captain, working with Donna Cangelosi and Carol Kesler to maintain all direct lender contact changes and coordinating with David Rentz and

his associate, Mike Mollo, at CMM. Rentz came to rely on me to communicate with all the Marlton direct lenders and we had many phone calls and communications through the year. I was the point man for CMM and the direct lender came to rely on me as the go-to person for questions, communication and concerns. Prior to the first of two sales of the real estate, I coordinated multiple telephone conference calls between CMM and the direct lenders.

7.     Before the first sale to Kaiser Permanente, there was a conference call between CMM and Direct Lenders resulting in the lenders endorsing the sale to Kaiser for $15 million (which closed on May 29, 2012). About twenty percent of the Direct Lenders' initial principal investment—or about $6 million—was to be distributed.

8.     During this time, I shared with Rentz and Mollo the master Excel spreadsheet that I used for Marlton Square. Also, at the time of the first and only distribution, I made CMM aware of which DLs were Bickel & Brewer clients, who voted for CMM, and who did not. I made him aware that through the services of directlender22@gmail.com that he had access to all direct lender contact information, mailing addresses, etc. that he needed. He ignored my offer and I was not consulted in any manner on the only distribution Rentz made.

9.     After the sale to Kaiser Permanente, communication breakdown occurred between Rentz and me, leaving me to talk with Mike Mollo most of the time. I suspect it was because I was starting to ask Rentz for a detailed accounting of income and expenses of CMM.

10.     On February 8, 2013, I formally asked David Rentz when he was going to provide us an accounting by email (attached as Exhibit 1 to this declaration). The fact that we had only received $6 Million from a $15 million sale called for a full accounting. In addition, I was receiving complaints from certain DLs that they never received a distribution and were getting no response from CMM, Rentz or Mollo. Repeated requests and repeated promises were made, but no accounting was provided. In fact, CMM effectively shut communication down with me and the

Direct Lenders.

11.    In 2016, we discovered that CMM sold the remainder of the real estate to the City of Los Angeles for $8 million, with a close of escrow on February 2, 2016. In a post-closing call with Rentz, I asked him why he closed before talking with Direct Lenders (or receiving their approval) and he said that the operating agreement allowed him to do so.

12.    After that, I stepped up my requests for an accounting. Attached as Exhibit 2 to this Declaration are e-mails from me to CMM and Rentz from 1/25/2016 to 2/13/2017 asking for a financial accounting. I also sought the help of Donna Cangelosi in her capacity as Direct Lender Representative of The Claims Recovery Trust. She wrote to Rentz requesting he provide an accounting.

13.    On June 24, 2016, CMM finally produced some records which appeared to be a recreation of bank records and not a true financial accounting.  I requested the QuickBook records and was ignored.

14.    On September 20 and 21, 2016, Donna Cangelosi and I were permitted to review "financial records" under close scrutiny at Rentz's attorney's office. During the entire time, we were under the watchful eye of and supervised by a paralegal who made notes on what Donna and I discussed. We examined checks, with little or no supporting documentation. There were no records of any competitive bids for any of the work charged against the DL recovery that was performed by Rentz or alias companies he set up to perform the work. There were many inconsistencies. For example, we had been told that the real estate was used as a set to film a Hollywood movie, but there was no revenue shown from that activity.

15.    After we reviewed the accounting, I continued to request information from CMM. On February 13, 2017, Rentz sent me a detailed e-mail which continued not to be nonresponsive to my requests.

16.     To date, the Direct Lenders have not received a full and complete accounting of the $23,518,405 or more in cash from sales, rents, and tax refunds collected by CMM since CMM assumed management.

17.     The limited information we have been provided and the information we were NOT being provided raise significant concerns about how that cash has been handled.

18.     The more salient examples are: (1) the bank balances appeared to show that DL money and operating money was comingled and DL money was used by CMM; (2) at the time of our review, no bank registers were provided from February 2016 forward; (3) there was a $120,000 hold back on the Kaiser sale escrow, but no disclosure concerning the status of this escrow holdback; (4) approximately $800,000 of monies from the first sale were earmarked for direct lenders but was never distributed to them (and there does not appear to be an escrow account holding the monies); (5) servicing fees, management fees, property management fees, creating erroneous payables, and real estate commissions show as a closing statement distribution to CMM and affiliates, netted from sale proceeds and many of these fees are again withdrawn from the bank account (raising questions of double-payment); (6) CMM entered into a separate property management agreement with a Rentz specifically created affiliate to pay a 1.5% fee (why?); (7) still more Rentz affiliates, La Sierra Construction and Signature Advisors Construction, charged $1.9 million to demolish the shopping center when Platinum Properties had received an earlier bid from a third party for $375,000).

19.     Attached as Exhibits 5 and 5A to this Declaration are charts which compare charges taken from CMM "financial statements" and escrow closing statements, and comparing them to the actual terms of the operating agreement. As those charts show, it appears that CMM took for itself, and the affiliates it created, $5.4 million in fees and unsubstantiated expenses, much of which in direct contradiction to the agreements it now asks this Court to enforce.

20.     In short, Cangelosi and I have given Rentz data showing the errors in the first distribution and how to correct them on the final payment and accounting. However, rather than addressing our concerns, Rentz attacked Cangelosi and me and then filed the arbitration proceeding to run roughshod over the DLs.

21.     Attached as Exhibits 6, 3, and 4 to this Declaration are an initial AAA submission letter and two letters from CMM to the DLs telling them that they can avoid a "long, expensive, and drawn out arbitration process" if they simply agree not to participate and accept the results of the arbitration, whatever those results may be. CMM's communications are also a not-so-subtle effort to prevent any DLs from participating, by suggesting that only DLs who object will be subject to having to pay the costs of the proceedings.

22.     As the loan captain, I ask that this Court refuse to lift the automatic stay and instead direct CMM to render a full and complete accounting to this Court which can be fully vetted by counsel for the Estate, the CRT, and any DLs who wish to do so on their own.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

Executed this 30th day of April, 2018.

KEVIN M. OLSEN

# EXHIBIT 1

2/8/2013

Kevin:

Kevin:

We are awaiting the K-1s and accounting from the independent CPA. We too want to get this done and off our plate.  The accounting has all revenues and expenses. The next payment will be in over 6 months. We have a contact on the retail part, however, the buyer must work with the city for entitlements, a typical provision in a retail center  contract.

We sued the County of LA for back taxes. This will move forward in the normal course of litigation.  We have also timely protested other taxes and are working through them.

As far as a Web Site we have no need. We have one last property to sale, it is under contract, and after it is closed we will close the partnership.

We are going to send a comprehensive update with the accounting.

Best wishes,

David Rentz


**From:** Kevin M. Olsen [mailto:kevinolsen50@gmail.com]
**Sent:** Monday, February 04, 2013 9:52 AM
**To:** sfg.rentz@sbcglobal.net; mp.mollo@verizon.net
**Subject:** Marlton Square Accounting

Good Morning David and Mike,

I am getting some e-mails from Marlton Square Direct Lenders (DL) asking for an accounting to back up the first distribution of $6 million.  I know you're probably working on something, but I wanted to remind you that it appears the 3 priorities of the DL's are:
   1.  When will I get my next payment?
   2.  Can I seen an accounting of expenses?
   3.  Will I be receiving a K1 this year?

I don't know if an e-mail will help, conducting another conference call, or establishing a web site (if that's not too hard for you) where all information can be placed for DL review.

What are you guys thinking about all this?

Thanks,
Kevin
702-822-0964

# EXHIBIT 2

**1/25/2016**

Kevin:

I will be in the office late Tuesday afternoon. I just found out that Mike and the accountant were locked out of the accounting because I had changed the password months ago. The accountant will not be back until next week. We need to change the dates for the conference call so we can get all the information together. Mike said he can do both the 8th and the 11th. Can you do those dates?


David Rentz
2601 Airport Dr. #290
Torrance, CA  90505
O – 310-325-1409


**From:** Kevin M. Olsen [mailto:kevinolsen50@gmail.com]
**Sent:** Monday, January 18, 2016 03:58 PM
**To:** sfg.rentz@sbcglobal.net; mp.mollo@verizon.net
**Subject:** Marlton Square Accounting and Conference Call

Hello David and Mike,

This e-mail is a follow-up to our telephone call of today on how to proceed with Marlton Square.  As a coordinator for the direct lenders I would like to acquire their confirmation on the proposal to sell the balance of the asset to the City of Los Angeles for $8 million.  To that end I would like to e-mail a CMM detailed accounting report to DL's prior to the conference call so they are informed on what CMM is proposing.  Tentatively, we can plan on two conference calls:  Thursday, January 28th at 10 a.m. Pacific, and Friday, January 29th at 4 p.m. Pacific.  After that meeting we'll do an e-mail vote which will take care of anyone's concern about getting a majority.

In particular I suggest the following be included in the e-mail report:
- A complete accounting from the beginning of CMM's management on all revenues, expenses, hold backs, management fees, legal fees, etc.
- How the Kaiser net proceeds were distributed and the amount of that distribution.
- Are there any reserves CMM or the title company are holding and if so what are they?
- What are the terms and conditions for the sale to the City of Los Angeles?  Why does this sale make sense to DL's?
- What is the net proceeds DL's should anticipate after all closing and fees are paid?  Please identify all anticipated expenses.  I'm suggesting a pro-forma statement for up-coming revenues/expenses.
- Should we be continuing to legally pursue the property tax issue and why?
- How long will it take to do all of this?  What is the end game plan for this asset?

Of course, if you have other information to include please do so.

Thanks,

Kevin
(702) 822-0964

3/9/2016

Kevin:

Thanks for the email. I had an email for our CPA this morning. She said she hopes to have Marlton done by this weekend.

We are in the process of writing a letter to be distributed to all LLC members of Marlton Recovery Partners, LLC.  After the letter is distributed we will available for a conference call with the LLC members. We are trying to get K-1s done for other projects which is taking up much of our time. We will keep your updated as we get closer to a date.


Thanks for your help.


David Rentz
2601 Airport Dr. #290
Torrance, CA  90505
O – 310-325-1409


**From:** Kevin M. Olsen [mailto:kevinolsen50@gmail.com]
**Sent:** Wednesday, March 9, 2016 09:31 AM
**To:** 'David Rentz' <Drentz@Private-Lender.net>; 'Mike Mollo' <mp.mollo@verizon.net>
**Cc:** 'David Rentz' <sfg.rentz@sbcglobal.net>
**Subject:** Marlton Square

Good Morning David and Mike,

I am getting a lot of e-mails from Marlton Square Direct Lenders on K-1's.  I was copied by Mike on a forward e-mail I sent to him from a DL last week that CMM plans to get the K-1's out within the next 10 days.

As I previously wrote to you, I think we need an up-date conference call to review the sales option given to the City of Los Angeles.  While I am sure the DL's will concur with CMM's decision, it would be great to up-date them on why this is the best option and then we can get a concurring vote from the DL's. Also, this would be a good time to give a more detailed accounting of expenses CMM has had so far with this asset and what the potential return would be to the DL's if the City goes ahead with the purchase.

Regards,
Kevin
702-822-0964

**3/31/2016**

Kevin:

A CPA did the last financial statement which included absolutely all financial information and was mailed to all LLC members. We again will hire the CPA to do financial statements for the 1st quarter of 2016 and year end 2016 plus  the tax returns and K-1s in 2017. Of course we have given the LLC members financial statements. They received them when they signed the esstopple agreements before the last distribution.

We too are receiving calls from LLC members and they tell us this investment has turned out better than any other USA Capital loan they have invested in.

We have spoken to the CPA. She tells us she will have time to start working on our F S  after April 18 (tax season). Between now and then there is not much we can do.  I do not want to get upset when you tell me that CMM should be transparent. We have been extremely transparent and, as in our last financial statement, we will do as we have always done, have a third party CPA prepare the statements.

David Rentz
2601 Airport Dr. #290
Torrance, CA  90505
O – 310-325-1409


**From:** Kevin M. Olsen [mailto:kevinolsen50@gmail.com]
**Sent:** Thursday, March 31, 2016 10:57 AM
**To:** 'David Rentz' <sfg.rentz@sbcglobal.net>
**Subject:** RE: Marlton Square

David,

Now that CMM is focusing on ending the Marlton project is even more the reason to give the direct lenders a complete financial disclosure of expenses to date, which I believe the DL's have not received yet.  Also, if there is a purchase option agreement with the City of Los Angeles that agreement should be shared with the DL's in an up-date report making them aware of why CMM has made this offer.  A full up-date report to the DL's including a current financial expense disclosure is, in my opinion, long overdue.  I am receiving constant e-mails from DL's on a status up-date and I am sure they are contacting you as well.  I still am not certain the operating agreement gives CMM unilateral rights to sell the property, regardless that does not mean the CMM should not be transparent to the DL's and giving them full financial disclosures of expenses and plans for the final disposition of the asset, including any options given to potential buyers.

Regards,
Kevin

**From:** David Rentz [mailto:sfg.rentz@sbcglobal.net]
**Sent:** Thursday, March 31, 2016 9:43 AM
**To:** 'Kevin M. Olsen'
**Subject:** RE: Marlton Square

Kevin:

We are now focusing on ending the Marlton project.  We have several other of our own business that we are working on K-1s, however, that should not slow us down.  Just so we are all tectonically correct, there are no DL's in the Marlton project. Marlton is owned by Marlton Recovery Partners, LLC and the owners of MRP are LLC members. The LLC operating agreement controls the business of Marlton.  We are the general partners of MRP.

Look forward to bringing this LLC to an end. Thanks for all you do!


David Rentz
2601 Airport Dr. #290
Torrance, CA  90505
O – 310-325-1409


**From:** Kevin M. Olsen [mailto:kevinolsen50@gmail.com]
**Sent:** Thursday, March 31, 2016 08:57 AM
**To:** 'David Rentz' <sfg.rentz@sbcglobal.net>; 'Mike Mollo' <mp.mollo@verizon.net>
**Cc:** 'David Rentz' <Drentz@Private-Lender.net>
**Subject:** Marlton Square

David and Mike,

Now that the K-1's are out let's focus on setting up a report and then conference call with the Marlton Square Direct Lenders (DL's) within the next few weeks.  I suggest CMM prepare a report that includes a financial report of expenditures to date, problems, what has been proposed to the City, what kind of percentage return DL's can expect, and anticipated resolution of the asset.  After DL's have a chance to read that I would then suggest a conference call to clarify any questions from the report.

As I recall CMM has negotiated an purchase option agreement with the City.  We should  have a discussion on this and have a vote of DL's to back you up on your direction.

Regards,
Kevin
702-822-0964

**6/1/2016**

Kevin:

Attached please find the updated equity accounts that will be used to make distributions and complete the accounting. If you see any errors, please let us know. We will start sending checks and the accounting next week. We have received most of the estoppable letters. For those few we are not received, we are going to reach out to them, but it will not hold up the distributions or accounting any longer.

Thanks.

David Rentz
2601 Airport Dr. #290
Torrance, CA  90505
O – 310-325-1409



Marlton Equity
Accounts Updated Mas

---

6/7/2016

Kevin:

Have you seen the reports we filed with the bankruptcy court?  If not please let me know so I can also send those to you. I also like the idea of meeting.  Let's start working on dates.

David Rentz
2601 Airport Dr. #290
Torrance, CA  90505
O – 310-325-1409

**From:** Kevin M. Olsen [mailto:kevinolsen50@gmail.com]
**Sent:** Monday, June 6, 2016 11:55 AM
**To:** 'David Rentz' <sfg.rentz@sbcglobal.net>
**Cc:** 'Donna Cangelosi' <dcangelosi@gmail.com>
**Subject:** RE: MARLTON

Good Morning David,

As a direct lender in Marlton Square who has been assisting CMM in coordinating and communicating with the direct lenders, I have some questions from the reply e-mail you sent Donna Cangelosi below. You stated that CMM has filed quarterly detailed financial reports with the federal court, but we as direct lenders have not seen this accounting.  We as direct lenders have relied on CMM as our fiduciary to keep an accounting, however the only reports I have seen as a direct lender were the yearly K-1's from CMM.  I have reviewed all e-mails I have sent out with CMM's coordination and in none of them

are there financial reports or accounting up-dates.  This is a concern to me as a direct lender.  If you have these past accounting reports could you please forward them to me and Donna?

I am happy to read in your response to Donna that the CPA assigned to this account will finish her work this week.  As soon as it is available I request an advance copy.  I assume this will be a detailed accounting of Marlton Square during the entire 4 + years of CMM's management of the asset along with a break-down of the anticipated distribution to direct lenders.  Again, I request these reports BEFORE a distribution is made.  As Donna suggested both she and I are willing to come to CMM offices to review the CPA's accounting.  This will allow all parties to review the financials and have any issues and/or questions resolved prior to a direct lender distribution.

David, I as a direct lender have not seen the financial reporting transparency which I am now requesting before final disposition of the asset is made.  If I am in error, please clarify by copying me with the past financial reporting CMM has made.

Regards,
Kevin
702-822-0964

**From:** David Rentz [mailto:sfg.rentz@sbcglobal.net]
**Sent:** Thursday, June 02, 2016 1:00 PM
**To:** dcangelosi@gmail.com
**Cc:** 'Cc: Frank Majorie'; 'Janet Chubb'; 'Jonathan Dabbieri'; 'Michael Coulson'; 'Kevin Olsen'; 'Rob Millimet'
**Subject:** FW: MARLTON


Donna:

It was nice to hear from you. As we explained to Kevin, we are going through the same process as we did last time in January of 2013, before we make a final distribution.  This includes us confirming that no interests in the LLC have been sold or transferred.  Because this is the final accounting, it is essential that we take every precaution to ensure that there are no mistakes. It is much more difficult  to have money returned if a mistake is made.

In regard to your statement that there has not been "one bit of accounting," that simply is incorrect.  Please check the routine reports that we filed with the Court each quarter, as required.

We look forward to making the final distribution and closing the LLC within the next 30 days.  However, as I told Kevin, the independent CPA will have her work completed next week.  We explained to Kevin that the CPA could not get to Marlton until after tax season (April 18th).  Since then she has been working with us to prepare a final accounting. We directed the CPA to include all LLC members with financial statements which would include all items in 2016 and not just 12/31/2015 ending statements. We are not her only client and must work with her schedule and she has been very good to accommodate us.

We would enjoy you coming to our office. However, you should have the final accounting in hand so you will have a base-line to work from. As soon as you get the accounting let's make arrangements for a time and we will accommodate your visit.

When we did the last distribution we paid B&B and the trustee directly. You mentioned the "many hats" you wear in the USACM matters. In that regard, please provide us a letter from B&B that they want their upcoming check sent to a third party. We will do whatever they want, however, it is a change from what was required last time.

Lastly, we do not take your threat of litigation lightly, and would prefer to expedite the distribution process.  We are a California LLC and are governed by California law and our LLC agreement. We have done much more than would have ever been expected of us to maximize the return to the investors. The largest expense to the LLC has been property taxes that were not challenged before we became the loan servicer. Working with our consultants on this matter and title issues has, in fact, pulled this loan out of a complete failure. Furthermore, as you, Kevin and I have discussed, the past unpaid property taxes and failure of past servicers to timely dispute the taxes have cost millions. And it was our consultants and our efforts that did, in fact, result in the return of a small portion of property taxes. I feel badly for the LLC members that more money may be spent on additional attorneys with nothing to be gained. Our accounting at all levels will prove to be clean and now there is yet another delay in bringing this loan to an end.

We look forward to seeing you in the near future.


David Rentz
## For: Marlton Recovery Partners, LLC
2601 Airport Dr. #290
Torrance, CA  90505
O – 310-325-1409


**From:** Donna Cangelosi [mailto:dcangelosi@gmail.com]
**Sent:** Wednesday, June 1, 2016 08:02 PM
**To:** David Rentz <sfg.rentz@sbcglobal.net>
**Cc:** Frank Majorie <fbmajorie@themajoriefirm.com>; Janet Chubb <JChubb@kcnvlaw.com>; Jonathan Dabbieri <dabbieri@sullivanhill.com>; Michael Coulson <michael@coulsoncpa.com>; Kevin Olsen <kevinolsen50@gmail.com>; Rob Millimet <rrm@bickelbrewer.com>
**Subject:** Re: MARLTON

Hello David

I hope this communication finds you well.

I have been appraised of the emails going back and forth between you and Kevin.  .   As you may know, I do wear many hats in the USACM  matters which include representative  of the equity interest holders (the BB DL Settlement Trust) of the ARC estate,  the primary contact with the Trustee and Counsel of the ARC estate concerning the assets and financial matters of the estate (and I might say it is a very functional relationship),  a director of the Claims Recovery Trust which is tasked with bringing claims forward of those who have are  deemed to have harmed the DLs,    and  the primary Bickel & Brewer liaison. I have also either directly resolved numerous of the USACM assets or been closely involved in

their resolution.  In addition to those various roles, I have been directing distributions to all BB DLs  since 2012 as well as all DLs involved in certain assets.  Complete transparency is essential in these matters.

Since 2012 Kevin Olsen has patiently and repeatedly asked you for a complete and transparent accounting.  Many millions of dollars have been withheld from sales proceeds and there has not been one bit of accounting.   Most recently, Kevin has been asking you for this accounting since prior to April 15th, and there has always been  excuses, unkept promises and missed dates.  So David, what should one assume?

Kevin and I would like to come to your office for a complete review of  the expenses charged against Marlton within the next two weeks.  Please tell us which dates work for you.   We would like to review all invoices, agreements, bank statements, expense registers and any other pertinent documents.

If you cannot accommodate us, we plan to seek a court order compelling this review.

Also, please send the Marlton funds you plan to distribute to the BB DLs to the Qualified Settlement Trust for distribution.  My team will do that distribution and assure that all  funds are received  by each of the BB DLs.

Thank you and I look forward to hearing from you with some dates.


On Wed, Jun 1, 2016 at 2:55 PM, Kevin M. Olsen <kevinolsen50@gmail.com> wrote:

Hello David,

This is nice to know, however direct lenders and the ARC Estate need an advanced accounting BEFORE the distribution of checks.  All parties need to see expenses before distribution should there be issues regarding accounting.  By doing this CMM can avoid making an error in the anticipated distribution.
  Could you please send me the final expense report for the project along with the anticipated distribution amount to the DL's as soon as you can?



Also, if you need help contacting DL's who haven't responded please let me know and I will use our resources to attempt to locate them.



Thanks,

Kevin

702-822-0964

**From:** David Rentz [mailto:sfg.rentz@sbcglobal.net]
**Sent:** Wednesday, June 01, 2016 2:09 PM
**To:** 'Kevin M. Olsen'
**Cc:** 'Mike Mollo'
**Subject:** MARLTON

Kevin:

 Attached please find the updated equity accounts that will be used to make distributions and complete the accounting. If you see any errors, please let us know. We will start sending checks and the accounting next week. We have received most of the estoppable letters. For those few we are not received, we are going to reach out to them, but it will not hold up the distributions or accounting any longer.

Thanks.

David Rentz

2601 Airport Dr. #290

Torrance, CA  90505

O – 310-325-1409

 --

Donna Cangelosi

The contents of this electronic mail message and any attachments are confidential, possible privileged and intended for the address(s) only. Only the addressee(s) may read, disseminate, retain or otherwise use this message. If received in error, please immediately inform the sender and then delete this message without disclosing its contents to anyone.

---

6/9/2016

Donna & Kevin:

We are working with the CPA to complete a final accounting. In regard to your statement that the direct lenders should not have to go to court to get the information concerning their asset. As we have repeatedly  represented to Kevin and you, the CPA is completing the financial accounting for Marlton Recovery Partners, LLC. We will not distribute incomplete or incorrect statements. We said in our court report that we would wrap everything up within 90 days. We are going to meet or come very close to

that goal.  As I told Kevin, the CPA is not an employee of ours. They have offices in Los Angeles and San Francisco. I feel they are doing a great job.

For six years (starting April 2010)  we have been filing reports with the court. For six years we have filed tax returns and supplied the returns to the LLC Members along with K-1s and other information. The CPA was in our office for two hours yesterday. She pointed out a tax problem that occurred in 2015. She is now in the process of amending that item which will require redoing almost 200 LLC member's capital accounts. I cannot force her to move any faster.

I don't know how I can make it more clear. The CPA is very near to completing the accounting. She is on vacation until next Thursday. She told me her office is working and she should have everything completed on Friday when she returns.

I look forward to seeing you and Kevin in Los Angeles.


David Rentz
2601 Airport Dr. #290
Torrance, CA  90505
O – 310-325-1409


**From:** Donna Cangelosi [mailto:dcangelosi@gmail.com]
**Sent:** Thursday, June 9, 2016 09:23 AM
**To:** David Rentz <sfg.rentz@sbcglobal.net>
**Cc:** Cc: Frank Majorie <fbmajorie@themajoriefirm.com>; Janet Chubb <JChubb@kcnvlaw.com>; Jonathan Dabbieri <dabbieri@sullivanhill.com>; Michael Coulson <michael@coulsoncpa.com>; Kevin Olsen <kevinolsen50@gmail.com>; Rob Millimet <rrm@bickelbrewer.com>
**Subject:** Re: FW: MARLTON

Hello David

Thanks for the reply.

I agree with many of the statements you made.

1.  Yes, distribution of money must be made very carefully to assure it gets in the correct hands.   I and my team have distributed over 30 million dollar and am proud to say without an error.   We are very cautious and spend an extraordinary amount of time maintaining accurate records for all the dls, tracking divorces, gifting and legacy, moves, etc to assure there are no errors.   I would advise you to compare your records with ours as we have found the status of  every single DL so far to assure accurate distributions.

2.  David, I most whole*heartedly* agree that you have advanced the funds necessary to resolve the assets and have zealously pursued a recovery.  I wish Duncan had done the job he promised to do - which is what you have done.  I do know these assets are difficult to resolve with  what should be  criminal underwriting  issues and state/county/city difficulties.

What I cannot agree to is that  accounting has been presented to either the court or the direct lenders. I looked through your reports to the court and found discussion of the problems, but no accounting.   In your April 15, 2016 report, you do report that a final accounting would be made available in 90 days.  If my counting is correct, that is next week.   However, I am aware that Kevin has asked over and over for this information throughout this process and it has not been forthcoming but has had many missed promises.

The Direct Lenders should not have to go to the court to review  information concerning their asset. They are frustrated that they have had no say at all.  The information should be forthcoming from you. In fact, no DL was included in your certificate of service so you can see they have been in the dark.   They are frustrated by the lack of accounting information which is turning a good event into a frustration and seeking help from the Claims Recovery Trust to acquire the accounting which they claim they have been asking for years.

It is in all's best interest if a complete accounting  is made available for anyone who wishes to conduct a review.  I assume your agreement grants the DLs  the right to have access to this information, without having to go through your attorney or accountant - which incurs extra expense.  It should be made available by you in your office.

My email is a call to help avoid any extra expense and ask your cooperation for something that has been requested since the first distribution in 2012.

Thank you.


On Thu, Jun 2, 2016 at 1:00 PM, David Rentz <sfg.rentz@sbcglobal.net> wrote:

Donna:

It was nice to hear from you. As we explained to Kevin, we are going through the same process as we did last time in January of 2013, before we make a final distribution.  This includes us confirming that no interests in the LLC have been sold or transferred.  Because this is the final accounting, it is essential that we take every precaution to ensure that there are no mistakes. It is much more difficult  to have money returned if a mistake is made.

In regard to your statement that there has not been "one bit of accounting," that simply is incorrect. Please check the routine reports that we filed with the Court each quarter, as required.

We look forward to making the final distribution and closing the LLC within the next 30 days.  However, as I told Kevin, the independent CPA will have her work completed next week.  We explained to Kevin that the CPA could not get to Marlton until after tax season (April 18th).  Since then she has been working with us to prepare a final accounting. We directed the CPA to include all LLC members with financial statements which would include all items in 2016 and not just 12/31/2015 ending statements. We are not her only client and must work with her schedule and she has been very good to accommodate us.

We would enjoy you coming to our office. However, you should have the final accounting in hand so you will have a base-line to work from. As soon as you get the accounting let's make arrangements for a time and we will accommodate your visit.

When we did the last distribution we paid B&B and the trustee directly. You mentioned the "many hats" you wear in the USACM matters. In that regard, please provide us a letter from B&B that they want their upcoming check sent to a third party. We will do whatever they want, however, it is a change from what was required last time.

Lastly, we do not take your threat of litigation lightly, and would prefer to expedite the distribution process.  We are a California LLC and are governed by California law and our LLC agreement. We have done much more than would have ever been expected of us to maximize the return to the investors. The largest expense to the LLC has been property taxes that were not challenged before we became the loan servicer. Working with our consultants on this matter and title issues has, in fact, pulled this loan out of a complete failure. Furthermore, as you, Kevin and I have discussed, the past unpaid property taxes and failure of past servicers to timely dispute the taxes have cost millions. And it was our consultants and our efforts that did, in fact, result in the return of a small portion of property taxes. I feel badly for the LLC members that more money may be spent on additional attorneys with nothing to be gained. Our accounting at all levels will prove to be clean and now there is yet another delay in bringing this loan to an end.

We look forward to seeing you in the near future.

David Rentz

## For: Marlton Recovery Partners, LLC

2601 Airport Dr. #290

Torrance, CA  90505

O – 310-325-1409

**From:** Donna Cangelosi [mailto:dcangelosi@gmail.com]
**Sent:** Wednesday, June 1, 2016 08:02 PM
**To:** David Rentz <sfg.rentz@sbcglobal.net>
**Cc:** Frank Majorie <fbmajorie@themajoriefirm.com>; Janet Chubb <JChubb@kcnvlaw.com>; Jonathan Dabbieri <dabbieri@sullivanhill.com>; Michael Coulson <michael@coulsoncpa.com>; Kevin Olsen <kevinolsen50@gmail.com>; Rob Millimet <rrm@bickelbrewer.com>
**Subject:** Re: MARLTON

Hello David

I hope this communication finds you well.

I have been appraised of the emails going back and forth between you and Kevin.  .   As you may know, I do wear many hats in the USACM  matters which include representative  of the equity interest holders (the BB DL Settlement Trust) of the ARC estate,  the primary contact with the Trustee and Counsel of the ARC estate concerning the assets and financial matters of the estate (and I might say it is a very functional relationship),  a director of the Claims Recovery Trust which is tasked with bringing claims forward of those who have are  deemed to have harmed the DLs,    and  the primary Bickel & Brewer liaison. I have also either directly resolved numerous of the USACM assets or been closely involved in their resolution. In addition to those various roles, I have been directing distributions to all BB DLs  since 2012 as well as all DLs involved in certain assets.  Complete transparency is essential in these matters.

Since 2012 Kevin Olsen has patiently and repeatedly asked you for a complete and transparent accounting.  Many millions of dollars have been withheld from sales proceeds and there has not been one bit of accounting.   Most recently, Kevin has been asking you for this accounting since prior to April 15th, and there has always been  excuses, unkept promises and missed dates.  So David, what should one assume?

Kevin and I would like to come to your office for a complete review of  the expenses charged against Marlton within the next two weeks.  Please tell us which dates work for you.   We would like to review all invoices, agreements, bank statements, expense registers and any other pertinent documents.

If you cannot accommodate us, we plan to seek a court order compelling this review.

Also, please send the Marlton funds you plan to distribute to the BB DLs to the Qualified Settlement Trust for distribution.  My team will do that distribution and assure that all  funds are received  by each of the BB DLs.

Thank you and I look forward to hearing from you with some dates.

On Wed, Jun 1, 2016 at 2:55 PM, Kevin M. Olsen <kevinolsen50@gmail.com> wrote:

Hello David,

This is nice to know, however direct lenders and the ARC Estate need an advanced accounting BEFORE the distribution of checks.  All parties need to see expenses before distribution should there be issues regarding accounting.  By doing this CMM can avoid making an error in the anticipated distribution.
  Could you please send me the final expense report for the project along with the anticipated distribution amount to the DL's as soon as you can?

Also, if you need help contacting DL's who haven't responded please let me know and I will use our resources to attempt to locate them.

Thanks,

Kevin

702-822-0964

**From:** David Rentz [mailto:sfg.rentz@sbcglobal.net]
**Sent:** Wednesday, June 01, 2016 2:09 PM
**To:** 'Kevin M. Olsen'
**Cc:** 'Mike Mollo'
**Subject:** MARLTON

Kevin:

Attached please find the updated equity accounts that will be used to make distributions and complete the accounting. If you see any errors, please let us know. We will start sending checks and the accounting next week. We have received most of the estoppable letters. For those few we are not received, we are going to reach out to them, but it will not hold up the distributions or accounting any longer.

 Thanks.

 David Rentz

2601 Airport Dr. #290

Torrance, CA  90505

O – 310-325-1409

 --

Donna Cangelosi

The contents of this electronic mail message and any attachments are confidential, possible privileged and intended for the address(s) only. Only the addressee(s) may read, disseminate, retain or otherwise use this message. If received in error, please immediately inform the sender and then delete this message without disclosing its contents to anyone.

6/20/2016

Kevin:

This all started when you alleged that we have never provided an accounting since the Kaiser sale. You and Donna alleging we have not suppled an accounting since 2012. If I cannot produce absolute evidence that an accounting was provided, then you are right. If I can, then you are wrong.

David Rentz

2601 Airport Dr. #290
Torrance, CA  90505
O – 310-325-1409

**From:** Kevin M. Olsen [mailto:kevinolsen50@gmail.com]
**Sent:** Monday, June 20, 2016 11:56 AM
**To:** 'David Rentz' <sfg.rentz@sbcglobal.net>
**Subject:** RE: Marlton

David,

Thank you for the e-mail.  It's not an allegation that CMM has not provided financial statements, it's a reality.  In all my e-mails asking for financial statements over the last three months you never provided any of those statements as an attachment.  So I'm irritated at CMM.  A fiduciary provides an on-going accounting, and all our other developers/asset managers are providing an accounting (I even gave you an example of how DACA accounts for the Castaic investment).

Yes, Ms Cangelosi and I will be reviewing CMM financial statements and invoices related to Marlton Square, and I request CMM withhold the final distribution to direct lenders until a complete verified accounting is made.  I appreciate your giving me your schedule.  Once Ms Cangelosi and I have time to coordinate we will get back to arrange a time for physical inspection of records and accounting.

Regards,
Kevin M. Olsen
Former Loan Captain and investor
Marlton Square
702-822-0964

**From:** David Rentz [mailto:sfg.rentz@sbcglobal.net]
**Sent:** Monday, June 20, 2016 11:37 AM
**To:** 'Kevin M. Olsen'; 'Mike Mollo'
**Cc:** 'Mike Mollo'
**Subject:** Marlton

Kevin:

I spoke with the CPA first thing morning.  She tells me she is finished and will bring the accounting by the office.

Ever since you alleged  we have never provided an accounting, it has really irritated me.  Although Marlton is a California Limited Liability Company, governed by the MRP LLC Agreement, we went beyond what was required of us under the agreement to keep everyone fully informed.  We continued to make court filing, although we had no obligation to do so.  Also, we provided a detailed accounting after the Kaiser transaction was completed.

As I told you, all of our files had been scanned by an outside vendor and saved in PDF.  I was having a very difficult time finding the PDF files.  Well, as luck would have it, the Marlton documents were sent back to us from the scanning company.  As I thought, not only did we find we sent a complete accounting to all LLC members, we sent at least one mailing in certified, return receipt envelopes.  In fact, we still have a few envelops that were returned as non-deliverable and have never been opened.  It turns out, the package that was sent to you was not sent back.  That package was almost 20 pages and included a complete accounting. To send emails and copy attorneys alleging we never provide an accounting is untrue and unjustified.
We will again provide a detailed accounting to all LLC members.

As for you coming to LA, which we welcome, my schedule is as follows:  This week is blown.  My daughter graduates from high school this week.  I will be in San Diego Tuesday, graduation on Wednesday, depositions on Thursday, and out of the office all day Friday.  Next week I will be in Hawaii.  On the 4th of July, I fly to Florida.  However, so you do not have to wait, we are getting all the documents you want to our attorney and you can go by his office and do your examination.  Just let us know your dates so we can make sure it is a smooth task for all.

Thanks

David Rentz
2601 Airport Dr. #290
Torrance, CA  90505
O – 310-325-1409

---

**7/28/2016**

Kevin:

The title company is sending you the final. It is the same as the one we enclosed.

David Rentz

**From:** Kevin M. Olsen [mailto:kevinolsen50@gmail.com]
**Sent:** Thursday, July 28, 2016 1:43 PM
**To:** 'David Rentz' <sfg.rentz@sbcglobal.net>
**Subject:** RE: Marlton

David,

The recent package you sent did not include the final settlement statement, it was only the "Estimated" closing (see attached where both pages have "Estimated" at the top).  Yes, I did get the package but was disappointed that many of the Quick Book sheet information pages was cut off so that a thorough review was not possible.  Since I am a Quick Book 2016 user myself it would be great to have the entire file from the beginning of CMM's management sent to me so I could review it.

You are wrong, I have not accused CMM of not sending a package after the Kaiser sale, however I have accused CMM of not submitting on-going accounting of expenses associated with the project.  CMM's quarterly reports to the federal court did not include the detail P & L that other developers have made (and that I sent an example to you last month).

Yes, I would appreciate it if you can have Fidelity Title, which did the Kaiser closing, to send me directly the final settlement just to make sure we have the final settlement from them.

Thank you,

Kevin
760-334-3950

**From:** David Rentz [mailto:sfg.rentz@sbcglobal.net]
**Sent:** Thursday, July 28, 2016 1:06 PM
**To:** kevinolsen50@gmail.com
**Subject:** Marlton

Kevin:

In the recent package we sent to all LLC members we included a closing statement from the title company. Did you get your package? Was the closing statement missing from your package?

You accused us of not sending a package after the Kaiser sale in 2012, which we addressed with you. In that package we also included the closing statement on the Kaiser transaction. If you need anything from us, please let us know.

Thank you.

David Rentz
2601 Airport Dr. #290
Torrance, CA  90505

O – 310-325-1409
C – 858-395-1517

___

**2/7/2017**

Kevin:

It has come to our attention that you may be communicating directly to the Marlton Recovery Partners, LLC members. If that is true, I want to remind you that you have an obligation to be truthful and fully disclose all information provided to you. Furthermore, we discussed with you the information we provided after you made the absurd statement to us the property was sold for $23 million and only $7 million was distributed, where did the rest go?

I am out of my office this week, but let me remind you, we told you on more than one occasion, the following numbers (rounded -off because I am doing this from memory until I get back to my office):

1. The property was sold for a "gross amount" of $23 million
2. Nearly $10 million were paid in property tax
3. Legal Fees exceeded $2 million
4. Environmental Remediation $500,000
5. Distributions $7 million, so far

The above numbers do not include real estate commission, demolition, property management, consultants, insurance, real estate appraisals, etc. We believe we did an excellent job for the LLC Members.

Because you control all the LLC Members' email address, you have my permission to share this email with them, as I am sure you will do to comply with your obligation of full disclosure.

Thank you,

David Rentz

---

**2/13/2017**

Dear Mr. Olsen:

I have received a copy of your most recent correspondence to the Marlton Direct Lenders.  You have apparently anointed yourself to be some sort of self-pro-claimed  "team leader" and have leveled very serious accusations against CMM.  Your remarks are patently incorrect and do not even come close to serving as an accurate description of the loan history, the underlying books and records , financial transactions, and detailed accountings already provided to you and as well as each of the Direct Lenders.  CMM has given very precise accountings to all and the documents furnished to each Direct Lender  demonstrates that was/is the case.

Simply stated, your remarks and charges against CMM are defamatory.  Moreover, they make no sense.  If CMM truly engaged in misconduct, then it would presumably be the last entity to be asking an arbitrator to determine what the final distributions should be and to adjudicate whether or not CMM somehow did not perform its role properly.  Seeking arbitral review is not "bullying", no matter how you slice the pie.  Neither CMM nor I agree with any of your remarks.  That said, I will address several in more detail below.

First, CMM did not distribute checks to the B&B Direct Lenders when the first distribution, was made.  Instead, counsel for the B&B Direct Lenders demanded that CMM send one check directly to them, which they would then distribute to B&B Direct Lenders.  That is exactly what happened and we have the paper trail showing this was the case.  Equally important, it was B&B and their folks, working with counsel, that developed the distribution list.  Indeed, it was not until plans for final distributions were  being made, that it was finally  disclosed to CMM, that you and perhaps others had received funds as both a B&B client and as a non-B&B client.  In other words, you were overpaid.  It is not bullying to ask that you return any such overpayments.

Second, your innuendo about the reason CMM engaged counsel is likewise completely untrue.  Legal counsel was required in light of your failure to provide an updated distribution list to CMM for the final distribution, let alone the demand made on your behalf and apparently a small group of others that final distributions not be made.   In fact, if CMM now had the list we could complete a final closing statement and accounting.  CMM has always been willing to work with B&B to make sure that if any adjustments need to be made, including you getting paid two times in round one, they could properly be adjusted in the final distribution.

CMM wants to be very clear for the record. CMM wants to work with everyone to resolve these matters. CMM does not want to engage in what is expensive and drawn out arbitration. Nor did CMM engage attorneys to "bully" anyone.  Unfortunately, you left us with no other choice for the reasons set forth above and more.  Of course, CMM continues to reserve all of its rights, including any lawful action that may be appropriate to vindicate its reputation.

Sincerely,

David Rentz
2601 Airport Dr. #290
Torrance, CA  90505
O – 310-325-1409

# EXHIBIT 3

**Commercial Mortgage Managers, Inc.**

February 2, 2017

Dear LLC Member:

A number of Marlton Recovery Partners, LLC (MRP) Members told us they want MRP's business closed, and distributions made. They have no interest in participating as an "objecting member" in what could be a long, expensive, and drawn out arbitration process.

For those who have not formally responded to the Arbitration Petition that has been filed and/or are otherwise not represented by counsel, but who would like to stipulate to being a "non-objecting member" instead of being automatically deemed to be in opposition to the relief sought in the Arbitration Petition, we have enclosed a Stipulation for you to complete and mail back to us.  Please read it carefully and feel free to discuss the Stipulation with your own attorney if you so desire.  If you have any questions please call Mike Mollo or David Rentz at 310-325-1409. It would be best if you email us at mp.mollo@verizon.net or sfg.rentz@sbcglobal.net and provide us the best phone number and time to contact you. We anticipate being on the phone answering questions and want to make sure we have the correct phone number to return your call.

If you plan to return the stipulation, please make sure you complete all blank lines in the Stipulation (page 2 and signature page). Respondent in the agreement is the name you hold your interest in MRP. Complete the Stipulation in full, make sure the signature page is signed, and return it to:

Commercial Mortgage Managers, Inc.
2601 Airport Dr. #290
Torrance, CA 90505.

We look forward to talking with you. Thank you.

//Signature on File//

David Rentz

1   Robert M. Waxman (SBN 89754)
       rwaxman@ecjlaw.com
2   John W. Shenk (SBN 261573)
       jshenk@ecjlaw.com
3   **ERVIN COHEN & JESSUP LLP**
    9401 Wilshire Boulevard, Ninth Floor
4   Beverly Hills, California 90212-2974
    Telephone  (310) 273-6333
5   Facsimile  (310) 859-2325

6   Attorneys for Commercial Mortgage Managers, Inc.

7

8                  **AMERICAN ARBITRATION ASSOCIATION**

9                                  **NEVADA**

10

11  Commercial Mortgage Managers, Inc. a          AAA Case No. 01-16-0005-5042
    California corporation, and Marlton Recovery
12  Partners, LLC, solely as a nominal party,

13                  Claimant,                     **STIPULATION OF NON-OBJECTING**
                                                  **MEMBER, _____**
14          v.

15  All Members of Marlton Recovery Partners,
    LLC, as shown on Appendix of Respondents
16  hereto,

17                  Respondents.

18

19

20

21

22

23

24

25

26

27

28

15811.1:2876682.1

1

STIPULATION OF NON-OBJECTING MEMBER

Claimant, COMMERCIAL MORTGAGE MANAGERS, INC., a California corporation ("Claimant"), and Respondent, _____ ("Respondent"), either on their own behalf or by and through their respective attorneys or authorized representatives, hereby stipulate and agree, as follows:

## RECITALS

**WHEREAS**, Claimant is the Manager of Nominal Claimant, Marlton Recovery Partners, LLC ("MRP") and Respondent is a Member of MRP;

**WHEREAS**, Claimant initiated the above-captioned arbitration with the American Arbitration Association ("AAA") by way of the Claimant's Demand for Arbitration ("Petition") and pursuant to the terms of MRP's Operating Agreement ("Agreement") as a result of a dispute between Claimant and certain other members of MRP with respect to the management of MRP and the distribution of funds to be made by MRP to its Members;

**WHEREAS**, the Petition alleges, in essence or pertinent part, that among other things:

(a)    On or about October 13, 2011, MRP entered into an agreement to convey approximately 8.647 acres of the Marlton Property to Kaiser Foundation Health Plan, Inc. ("Kaiser").

(b)    On or about May 29, 2012, Claimant caused MRP to convey 8.647 acres of the Marlton Property to Kaiser for a purchase price of $15,065,320.00 ("the Kaiser sale"). The immediate net proceeds from the Kaiser sale totaled $4,754,369.64. Substantial sums from the Kaiser sale were ultimately forwarded by Claimant to the Los Angeles County Taxing Authority for payment of past due property taxes on the Marlton Property.

(c)    In or about April 2013, Claimant provided extensive documentation to the Members of MRP following the Kaiser sale, including a complete accounting of MRP's activity up to that point.

(d)    On or about February 2, 2016, Claimant caused MRP to sell the remaining 5.5 acres of the Marlton Property—which was its last remaining real property asset—to the City of Los Angeles for a purchase price of $8,000,000 ("the LA City sale"). The net proceeds of the LA City sale to MRP were approximately $3,200,000.

(e)    In or about June, 2016, Claimant once again provided extensive documentation to the Members of MRP following the LA City sale, including a complete accounting of MRP's activity up to that point.

(f)    Subsequent to the LA City sale, Claimant began the process of winding up MRP. This is consistent with Section 9.1 of the Agreement, which states in pertinent part that "[MRP] shall be dissolved on the … (c) sale or disposition of substantially all of [MRP's] assets," as well as the directive in Section 9.2 of the Agreement requiring that "on the dissolution of [MRP it] shall engage in no further business other than as necessary to wind up the business of [MRP]."

(g)    Prior to the filing of the Petition, MRP, at the instruction of Claimant, caused each of the obligations listed on MRP's financial statements to be paid and provided copies of those financial statements to the Members of MRP. Each such payment was made pursuant to the authority vested in Claimant under Article V of the Agreement, entitled "Management" [and that] "Manager shall have the authority to do all things necessary to hold and liquidate [MRP's] assets, including, but not limited to . . . (c) making arrangements for maintenance, repair, leasing, construction completion and other property related expenses, and (d) any and all other things necessary for ownership and liquidation of the assets of [MRP]."

(h)    In accordance with the terms of Section 5.1 of the Agreement, each of the expenditures set forth on the financial statements was made by MRP and at the direction of Claimant in order to "maintain, repair, lease or complete construction" of the Marlton Property and/or for "other property related expenses," or which were otherwise "necessary for the ownership and liquidation of [MRP's] assets." In addition, to the extent that any such payments were paid to related parties, they were at or below market rates of compensation in accord with Section 5.1 of the Agreement, which permits the use of related parties to perform those services as long as they are at or below "market rates of compensation."

(i)    The Agreement also provides in Section 5.4 that "Manager shall be compensated for its services in managing [MRP] in the same manner as Manager was compensated as the loan servicer of the applicable loan." To the extent that Claimant was paid by MRP, such payments were strictly in accordance with those agreements and in accord with these compensation terms.

ERVIN COHEN & JESSUP LLP

1      (j)     Section 5.7 of the Agreement provides that "the Members shall hold the Manager

2 harmless from any losses that occur notwithstanding the exercise of good business judgment by

3 the Manager." It also requires that "[MRP] shall indemnity and defend the Manager for any

4 actions brought against the Manager unless the same are the result of negligence or willful

5 misconduct by the Manager."

6      **WHEREAS**, Claimant seeks the following relief in its Petition:

7      (a)     an order setting the amount of funds to be distributed to each of the Members as

8             and for their final distribution;

9      (b)     a declaration that any sums paid to date for services rendered to or on behalf of

10             MRP by any person or entity was made at the direction of Claimant and in

11             accordance with the terms of the Operating Agreement;

12      (c)     a declaration that Claimant has complied with its obligations and duties under and

13             in accordance with the terms of the Operating Agreement and as Manager of MRP;

14      (d)     a declaration that the Members are required to hold Claimant harmless for any

15             losses that occur notwithstanding the exercise of good business judgment by

16             Claimant and, therefore, reimburse MRP for any attorney fees advanced by it and

17             paid or to be paid by Claimant relating to the within arbitration proceeding;

18      (e)     an order shifting the burden for reimbursement of Claimant's attorney fees incurred

19             in the within arbitration proceeding from all Members of MRP to only those

20             Members who oppose the relief requested by Claimant therein; and

21      (f)     costs of suit herein incurred and attorney fees according to proof.

22      **WHEREAS**, Respondent acknowledges that Claimant has fully complied with its

23 obligations and duties under and in accordance with the terms of the Agreement.

24      **WHEREAS**, Respondent also acknowledges that any sums paid to date for services

25 rendered to or on behalf of MRP by any person or entity was made at the direction of Claimant

26 and in accordance with the terms of the Operating Agreement.

27      **WHEREAS**, Respondent acknowledges that there should now be a final distribution of the

28 assets of MRP, but subject to a reserve of $250,000 to pay any remaining obligations or liabilities

ERVIN COHEN & JESSUP LLP

1  of MRP and to complete its winding up; and first adjusted appropriately to the extent necessary, if

2  at all, in order to take into account amounts, if any, previously distributed to particular Member

3  payees that were allegedly greater than the sums to which he, she, it, or they, were entitled.

4       **WHEREAS**, Respondent acknowledges that the Agreement requires (a) [MRP] to

5  indemnity and defend Claimant for any actions brought against Claimant unless same are the

6  result of negligence or willful misconduct by Claimant, and (b) the Members of MRP to in any

7  event hold Claimant harmless from any losses that occur notwithstanding the exercise of good

8  business judgment by Claimant.

9       **WHEREAS**, Respondent joins in the Petition and all of the relief requested therein by

10  Claimant, with the sole exception being that Respondent objects only to that portion of any award

11  which might otherwise assesses attorney fees against Respondent, directly.  Respondent

12  nevertheless acknowledges that in any event:  (a) pursuant to the indemnity, defense and hold-

13  harmless provisions of the Agreement, MRP can and should advance or pay any or all of

14  Claimant's attorneys' fees that are related in any way to the within arbitration proceeding, and (b)

15  joins in the request that an order be entered shifting the burden for reimbursement of any such

16  attorneys' fees from all Members of MRP to only those Members who oppose the relief requested

17  in the Petition.

18       **WHEREAS**, Claimant reaffirms the Petition in its entirety.

19       **<u>STIPULATION</u>**

20       **NOW THEREFORE**, in consideration of the foregoing, Claimant and Respondent

21  stipulate as follows:

22       1.     Respondent consents and agrees to the entry of an order and/or arbitration award by

23  AAA setting the amount of funds to be distributed by MRP to each of the Members as and for

24  their final distribution, without objection, in the discretion of AAA;

25       2.     Respondent consents and agrees to the entry of an order, declaration, and/or

26  arbitration award by AAA finding that any sums paid to date for services rendered to or on behalf

27  of MRP by any person or entity was made at the direction of Claimant and in accordance with the

28  terms of the governing Operating Agreement;

ERVIN COHEN & JESSUP LLP

15811.1:2876682.1

5

STIPULATION OF NON-OBJECTING MEMBER

3.      Respondent consents and agrees to the entry of an order, declaration, and/or arbitration award by AAA that Claimant has fully complied fully with its obligations and duties under and in accordance with the terms of the Operating Agreement and as Manager of MRP;

4.      Respondent consents and agrees to the entry of an order, declaration, and/or arbitration award by AAA that: (a) MRP advance and pay Claimant's attorney fees that are related in any way to the within arbitration proceeding, and/or (b) shifting the burden for reimbursement of any such attorney fees from all Members of MRP to only those Members who oppose the relief requested in the Petition;

5.      Respondent reserves its rights to dispute any request by Claimant for an order, declaration, and/or arbitration award by AAA that Respondent be directly required to pay any attorney fees of Claimant or MRP that are related in any way to the within arbitration proceeding;

6.      Claimant and Respondent agree that Respondent need not respond to the Arbitration Demand filed by CMM or otherwise participate in the above-captioned arbitration except to the extent Claimant seeks discovery from Respondent and, further, that Respondent's failure to respond to the Arbitration Demand or otherwise engage in the arbitration will not in any way prejudice Respondent's standing or ability to dispute any request that an award of attorney fees or costs associated with the within action be assessed against Respondent, directly.

**SO STIPULATED.**

DATED: February 2, 2017

By: _____

ERVIN COHEN & JESSUP LLP

15811.1:2876682.1

6

STIPULATION OF NON-OBJECTING MEMBER

DATED: February 2, 2017

ERVIN COHEN & JESSUP LLP
Robert M. Waxman
John W. Shenk


By: _____
    Robert M. Waxman
    Attorneys for Claimant Commercial Mortgage
    Managers, Inc.

ERVIN COHEN & JESSUP LLP

15811.1:2876682.1

7

# EXHIBIT 4

**Commercial Mortgage Managers, Inc.**

July 31, 2017

### Re: Arbitration Update – Please Reply

Dear LLC Member:

We want to inform you that the Marlton Recovery Partners LLC (MRP) arbitration is going to move forward in full litigation mode. We see no other way to wind-down and close the MRP Limited Liability Company. Only in arbitration are we going to get the information we need to wind down and close MRP.

As you know, we named each and every LLC member as a defendant in the arbitration. This was done based on advice from our attorneys. However, many of the LLC members were complaining that the arbitration sought to assess all legal fees and cost against the defendants (You). Furthermore, many LLC Member said they are exhausted from the entire USA Capital bankruptcy, its constant, almost non-ending, ongoing saga, and they want MRP closed now.

Some LLC members voiced their extreme frustration that they were named in the arbitration. Especially given the fact that we asked that the cost of the arbitration be paid by the losing party, putting the LLC members and us in a financial risk position. Some LLC Members wanted nothing to do with the arbitration. Therefore, our attorneys prepared a form that would allow each LLC member to opt out of the arbitration, but be bound by the results. Signing the form did two things:

1. It eliminated the possibility of any arbitration cost being assessed against those that opted out;

2. It lowers the overall cost of the arbitration.

Several people called us and discussed this option. Some have already signed the form and returned it to the attorneys. We want to talk to each of you regarding this matter. If you will complete the enclosed card and return it to us, in the self-addressed stamped envelope, we will be governed by you instructions.

We feel it is very important to discuss this matter with you, so please, return the form.

Thank you,

//David Rentz//

//Mike Mollo//

2601 Airport Drive, Suite 290 • Torrance, California 90505 • Ph: 310.325.2132 • Fax: 310.626.6278

Dear Mr. Rentz and Mr. Mollo:

[ ]      Please call me on my phone #

_____ (include

area code) The best time   to call is

_____ (time of

day).

[ ]      I have already sent in the document and

require no call.

[ ]      Do not call.


Name: _____ (please print)



Commercial Mortgage Managers, Inc.
2601 Airport Dr. #290
Torrance, CA  90505

2601 Airport Drive #290
Torrance, CA 90505

# EXHIBIT 5

| | | | | | | |
|---|---|---|---|---|---|---|
| Marlton Square Financial Analysis and Reconstruction | | | | | | |
| Profit and Loss Statement from January 2011 to February 2016 | | | | | | |
| 2/23/2017 | | | What CMM | CMM | | |
| | Per | CMM P& L data | Should have | Over | | Reference |
| | Operating | Jan 2011 to | Charged | Charge | | Documents |
| | Agreement | Feb 2016 | | | | |
| INCOME | | | | | | |
| Net on Sale to Kaiser Foundation | | $ 4,754,369.64 | | | A | |
| Seller Holdback on Kaiser Sale | | $ 2,020,000.00 | | | B | |
| Releases to Marlton Recovery Partners | | $ 350,000.00 | | | C | |
| Net on Sale to City of LA | | $ 3,457,872.99 | | | D | |
| Early Release of Funds to MRP | | $ 500,000.00 | | | E | |
| Demolition Credit | | $ 576,000.00 | | | F | |
| Easement | | $ 85,000.00 | | | F | |
| Property Tax Credit | | $ 392,405.01 | | | F | |
| Rental Income | | $ 42,000.00 | | | F | |
| Tax Refund | | $ 2,497.22 | | | F | |
| | | | | | | |
| TOTAL NET INCOME | | $ 12,180,144.86 | | | | |
| EXPENSES: | | | | | | |
| Accounting | | $ 48,540.12 | $ 48,540.12 | $ - | | |
| Appraisal Fee | $ 12,000.00 | $ 34,600.00 | $ 34,600.00 | $ - | | |
| Architect | | $ 2,800.00 | $ 2,800.00 | $ - | | |
| Business License & Permits | | $ 5,530.42 | $ 5,530.42 | $ - | | |
| Civil Engineering | | $ 29,208.36 | $ 29,208.36 | $ - | | |
| Commission | | $ 1,351,995.98 | $ - | $ 1,351,995.98 | 1 | |
| Consulting | $ 150,000.00 | $ 5,711.88 | $ 150,000.00 | $ (144,288.12) | 2 | |
| Court Fees | | $ 7,477.09 | $ 7,477.09 | $ - | | |
| Demolition | | $ 1,892,292.04 | $ 500,000.00 | $ 1,392,292.04 | 3 | |
| Environ Remediation | | $ 500,000.00 | $ 500,000.00 | $ - | | |
| Equipment Rental | | $ 22,087.00 | $ 22,087.00 | $ - | | |
| Escrow Fee | $ 50,000.00 | $ 13,157.50 | $ - | $ 13,157.50 | 4 | |
| Filing Fees | | $ 1,468.00 | $ 1,468.00 | $ - | | |
| Foreclosure | | $ 66,165.58 | $ 66,165.58 | $ - | | |
| Inspection | | $ 14,095.00 | $ 14,095.00 | $ - | | |
| Insurance | $ 5,000.00 | $ 29,985.94 | $ 29,985.94 | $ - | | |
| Interest Expense | | $ 31,208.65 | $ 31,208.65 | $ - | | |
| Legal | $ 50,000.00 | $ 1,141,920.00 | $ 800,000.00 | $ 341,920.00 | 5 | |
| Maintenance | $ 25,000.00 | $ 39,481.84 | $ 39,481.84 | $ - | | |
| Misc | | $ 7,217.79 | $ 7,217.79 | $ - | | |
| Office Supplies | | $ 517.78 | $ 517.78 | $ - | | |
| Parking | | $ 42.00 | $ 42.00 | $ - | | |
| Postage & Delivery | | $ 4,349.51 | $ 4,349.51 | $ - | | |
| Printing & Reproduction | | $ 1,217.52 | $ 1,217.52 | $ - | | |
| Professional Fees | | $ 68,500.00 | $ 50,000.00 | $ 18,500.00 | 6 | |
| Property Management | | $ 106,734.00 | $ - | $ 106,734.00 | 7 | |
| Samuel McIntosh | | $ 1,000.00 | $ - | $ 1,000.00 | 8 | |
| Security Service | | $ 27,257.75 | $ 27,257.75 | $ - | | |
| Servicer Fees | $ 1,150,000.00 | $ 1,374,766.00 | $ 1,150,000.00 | $ 224,766.00 | 9 | |
| Servicer Fees | $ 75,000.00 | $ 10,000.00 | $ 75,000.00 | $ (65,000.00) | 9 | |
| Supplies | | $ 2,753.84 | $ 2,753.84 | $ - | | |
| Property Tax | | $ 7,576,073.85 | $ - | $ 7,576,073.85 | 10 | |
| Taxes | | $ 9,670.30 | $ 9,670.30 | $ - | | |
| Title Services | | $ 103,081.18 | $ 103,081.18 | $ - | | |
| Title Consulting | | $ 457,260.73 | $ - | $ 457,260.73 | 11 | |
| Trustee Servicer Claim | | $ 228,193.97 | $ 228,193.97 | $ - | | |
| Utilites | | $ 565.00 | $ 565.00 | $ - | | |
| | | | | | | |
| TOTAL EXPENSES | | $ 15,216,926.62 | $ 3,942,514.64 | $ 11,274,411.98 | 12 | |
| | | | | | | |
| NET INCOME | | $ (3,036,781.76) | $ 8,237,630.22 | | 13 | |
| Paid my Marlton Recovery Partners | | | $ 2,847,268.00 | | 14 | |
| to direct lenders per MRP Bank Statements | | | | | | |
| | | | | | | |
| BALANCE TO BE PAID BY MRP TO DIRECT LENDERS | | | $ 5,390,362.22 | | 15 | |

EXPLANATION OF REFERENCE DOCUMENTS

REVENUE EXPLANATIONS:

A: The "Proceeds Due Seller" is taken directly from Fidelity National Title Company closing statement of 5/29/2012

B: "Seller Holdback per Indemnity" on the sale to Kaiser Foundation was $2.02 million.  Since no additional information was
provided by CMM we have to assume this holdback was returned to CMM but not included on their income statement.

C: "Release of Deposit to Marlton Recovery Partners" from Fidelity totalled $350,000, but was not included in the
CMM income statements.

D: The "Proceeds Due Seller" is taken directly from Chicago Title Company closing statement on 2/10/2016

E: "Early Release of Funds" is taken directly from the Chicago Title Company statement.  For some reason CMM failed to
report this as income on their P & L Statement.

F: All these were listed as "other income" by CMM on their profit and loss statements provided to the direct lenders.

EXPENSE EXPLANATIONS:

1. There were two commissionable events:  the sale to Kaiser and the sale to the City of Los Angeles.  In both instances
escrow paid 5% commissions to entitled parties.  Therefore, all other claims to commissions stated by CMM are invalid.

2. A consulting fee of $150,000 was contained in the operating agreement with $5,711.88 spent so CMM is credited $144,288.12.

3. LaSierra Construction, a company owned by David Rentz, in addition to charging the amount shown in the P&L received
$315,089.79 directly from Fidelity National Title on the first escrow.  We acquired competitive bids for the same demolition
job and received estimates of $200,000.  We feel a cap of $500,000 is reasonable here, since vendors were paid by Fidelity
directly and netted out of the final cash proceeds to seller.

4.  Escrow fees were budgeted at $50,000 in the Operating Agreement but the two escrows came up to be $168,886.
CMM showed only $13,157.50, however this is removed since all escrow fees were taken by the two escrow companies.

5. Legal fees were budgeted at $50,000 in the Operating Agreement but CMM showed $1,141,920.  We found some of these fees
were for The Gardens, another project CMM is working on.  In addition to what CMM showed on its statement, attorneys
were directly paid from the first escrow.  Many of these attorney fees were to challenge back taxes and penalities.
However, it was well known that such challenges would never prevail.  Therefore, a cap of $800,000 for attorney fees
is appropriate since legal counsels were also paid by escrow.

6. CMM had a category "Professional Fees" with no real explanation for what it was for.  We placed a cap of $50,000 on this
category resulting in a $18,500 overcharge.

7. CMM had a category "Property Management" where they entered into a property management agreement with themselves.
This was not authorized in the Operating Agreement.  CMM was authorized a Servicer Fee of 5% of the gross sales price and
therefore this is not an expense that can be charged back to the direct lenders.

8. Samuel McIntosh, a friend and business partner of David Rentz, was paid $106,734 for unknown and undocumented services.

9. Service fees was to be 5% of the gross sales price.   5% times $23 million sales price equals a servicer fee of $1.150 million.
To that we agree to an additional $75,000 in operating fees to CMM.

10. As per the Operating Agreement CMM was to advance its funds to pay property taxes and avoid further penalities and late
charges.  It appears CMM failed to do so.  Property taxes, penalities and late fees were paid by the two escrows and we see no
evidence that CMM paid any property taxes.  Since these were paid through escrow, CMM cannot claim these as expenses.

11. CMM charges $457,260.73 for "Title Consulting."  This fee they paid to themselves.  "Title Consulting" would fall under
consulting which was limited to a cap of $150,000 in the Operating Agreement and credited back to CMM (see #2 above).
This consulting is part of the service fees and is inappropriate as an add on charge.  This work falls under the normal work of a
servicer and part of the Servicer Fees (see #9 above).

12. CMM's P&L shows expenses of $15,216,926.62 from January 2011 to February 2016.  This represents more than the net
income from the sale of the asset.  We have to credit this to accounting errors on the part of CMM.  Our adjusted expenses
shows CMM expenses are $3,942.514.64

13. CMM's accounting would show they had expenses $3,886,781.76 more than what was collected again due to the error in
their financial accounting.  Our adjusted net income shows $8,237,630.22

14. A review of CMM/Marlton Recovery Partners bank statements showed they only distributed $2,847,268 on the only
distribution they made (see Attachment 1).   CMM made many errors in that distribution overpaying some direct lenders,
underpaying others, and not paying some direct lenders at all.

| 15. There is $5,390,362.22 that should be in CMM/MRP bank account to pay directly to direct lenders.  Since it has been over one year since the final sale of the asset, CMM/MRP does not need to hold back any money.  All potential claimants would have come forward by this time, plus each escrow had title insurance to protect all parties.  This money needs immediate distribution. | | | | | | | |

# EXHIBIT 5A

Marlton Recovery Partners, LLC
Profit and Loss
According to CMM records

| Category | Jan-Dec 11 | Jan - Dec 12 | Jan - Dec 13 | Jan - Dec 14 | Jan - Dec 15 | Jan - Feb 16 | Totals |
|---|---|---|---|---|---|---|---|
| Accounting | $ 4,497.50 | $ 15,434.68 | $ 10,091.56 | $ 10,433.88 | $ 8,082.50 | | $ 48,540.12 |
| Appraisal Fee | $ 19,600.00 | | | $ 15,000.00 | | | $ 34,600.00 |
| Architect | | $ 2,800.00 | | | | | $ 2,800.00 |
| Business License & Permits | $ 4,554.42 | $ 956.00 | | $ 20.00 | | | $ 5,530.42 |
| Civil Engineering | $ 6,072.00 | $ 22,936.36 | | $ 200.00 | | | $ 29,208.36 |
| Commission | | $ 526,995.98 | $ 125,000.00 | $ 75,000.00 | $ 225,000.00 | $ 400,000.00 | $ 1,351,995.98 |
| Consulting | | | | | $ 5,711.88 | | $ 5,711.88 |
| Court Fees | | | | | $ 7,477.09 | | $ 7,477.09 |
| Demolition | $ 30,610.00 | $ 1,440,399.23 | $ 329,228.59 | $ 65,479.22 | $ 26,575.00 | | $ 1,892,292.04 |
| Environ. Remediation | | $ 500,000.00 | | | | | $ 500,000.00 |
| Equipment Rental | | $ 22,087.00 | | | | | $ 22,087.00 |
| Escrow Fee | | $ 2,587.50 | | | | $ 10,570.00 | $ 13,157.50 |
| Filing Fees/Bank Charge | $ 70.00 | $ 158.00 | | $ 1,240.00 | | | $ 1,468.00 |
| Foreclosure | $ 66,165.58 | | | | | | $ 66,165.58 |
| Inspection | | $ 14,095.00 | | | | | $ 14,095.00 |
| Insurance | $ 4,829.16 | $ 19,322.84 | $ 3,235.94 | $ 1,299.00 | $ 1,299.00 | | $ 29,985.94 |
| Interest Expense | $ 27,106.23 | $ 4,102.42 | | | | | $ 31,208.65 |
| Legal | $ 61,443.89 | $ 481,475.53 | $ 77,552.87 | $ 297,565.69 | $ 223,882.02 | | $ 1,141,920.00 |
| Maintenance | $ 150.00 | | $ 26,413.05 | $ 9,918.79 | $ 3,000.00 | | $ 39,481.84 |
| Misc | $ 28.00 | | | $ 7,189.79 | | | $ 7,217.79 |
| Office Supplies | $ 269.80 | | $ 24.53 | | $ 223.45 | | $ 517.78 |
| Parking | | | $ 42.00 | | | | $ 42.00 |
| Postage & Delivery | $ 196.22 | $ 719.66 | $ 2,490.97 | $ 776.20 | $ 166.46 | | $ 4,349.51 |
| Printing & Reproduction | | | | | $ 1,217.52 | | $ 1,217.52 |
| Professional Fees | | | $ 45,000.00 | $ 23,500.00 | | | $ 68,500.00 |
| Property Management | | | $ 16,734.00 | $ 50,000.00 | $ 40,000.00 | | $ 106,734.00 |
| Samuel McIntosh | | | | | $ 1,000.00 | | $ 1,000.00 |
| Security Service | | $ 27,257.75 | | | | | $ 27,257.75 |
| Servicer Fees | $ 6,000.00 | $ 773,766.00 | | | $ 195,000.00 | $ 400,000.00 | $ 1,374,766.00 |
| Servicer Fees | | | | | $ 10,000.00 | | $ 10,000.00 |
| Supplies | $ 759.71 | $ 1,994.13 | | | | | $ 2,753.84 |
| Property Tax | | $ 3,944,616.84 | | | | $ 3,631,457.01 | $ 7,576,073.85 |
| Taxes | | $ 949.24 | $ 7,121.06 | $ 800.00 | $ 800.00 | | $ 9,670.30 |
| Title Services | $ 8,081.18 | $ 69,000.00 | | $ 26,000.00 | | | $ 103,081.18 |
| Title Consulting | $ 41,780.73 | $ 145,480.00 | | | $ 270,000.00 | | $ 457,260.73 |
| Trustee Servicer Claim | | $ 228,193.97 | | | | | $ 228,193.97 |
| Utilities | | $ 565.00 | | | | | $ 565.00 |
| | | | | | | | |
| Total | $ 282,214.42 | $ 8,245,893.13 | $ 642,934.57 | $ 584,422.57 | $ 1,019,434.92 | $ 4,442,027.01 | $ 15,216,926.62 |
| | | | | | | | |
| Other Income | | | | | | | |
| Demolition Credit | | $ (576,000.00) | | | | | $ (576,000.00) |
| Easement | $ (85,000.00) | | | | | | $ (85,000.00) |
| Property Tax Credit | | $ (392,405.01) | | | | | $ (392,405.01) |
| Rental Income | $ (41,000.00) | | | $ (1,000.00) | | | $ (42,000.00) |
| Tax Refund | | | | $ (2,497.22) | | | $ (2,497.22) |
| Total | | | | $ (3,497.22) | | | $ (1,097,902.23) |
| | | | | | | | |
| Total | $ 156,214.42 | $ 7,277,488.12 | $ 642,934.57 | $ 580,925.35 | $ 1,019,434.92 | $ 4,442,027.01 | $ 14,119,024.39 |

# EXHIBIT 6



Lance Tanaka
Vice President
1400 16th Street, Suite 400
Denver, CO 80202
Telephone: (303) 831-0823
Fax: (646) 640-1840

December 23, 2016

Robert M. Waxman, Esq.
Ervin Cohen & Jessup, LLP
9401 Wilshire Boulevard, 9th Floor
Beverly Hills, CA 90212
Via Email to: rwaxman@ecjlaw.com

Robert M. Millimet, Esq.
Brewer Attorneys & Counselors
1717 Main Street, Suite 5900
Dallas, TX 75201
Via Email to: rrm@brewerattorneys.com

John Bauer
40808 North River Bend Road
Anthem, AZ 85086
Via Mail

Belmonte Family Trust
3 Deerwood East
Irvine, CA 92604
Via Mail

John & April Blevins
704 Fife Street
Henderson, NV 89015
Via Mail

Patricia  Boschetto
41 South 330 West
Ivins , UT 84738
Via Mail

John S. Broders
1372 Puente Street
San Dimas, CA 91773
Via Mail

Kevin Olsen
8080 Harbor View Road Space H4
Blaine, WA 98230
Via Mail

Shelley W. Cranley Trust
3801 Maurice Court
Las Vegas, NV 89108
Via Mail

Wen Dai Chen
14840 Redmond Drive
Reno, NV 89511
Via Mail

Steffi Fontana
8645 Battle Circle, 601-C
Huntington Beach, CA 92646
Via Mail

Christian Hansen
1466 Westwind Road
Las Vegas , NV 89146
Via Mail

David & Jonnie Hays
361 East Delamar Drive
Henderson, NV 89015
Via Mail

Homefeild II
2515 North Atlantic Boulevard
Ft. Lauderdale, FL 33305
Via Mail

Gary Kantor
2816 Vista del Sol Avenue
Las Vegas, NV 89120
Via Mail

Kantor Nephrology
1750 East Deser Inn , Suite 200
Las Vegas, NV 89169
Via Mail

Edwin Isenberg
952 Las Lomas Avenue
Pacific Palisades, CA 90272
Via Mail

Harriet Kutzman
2605 East Flamingo
Las Vegas, NV 89121
Via Mail

Stuart Madsen
5843 Valle Vista Court
Granite Bay , CA 95746
Via Mail

Erin E. MacDonald
6817 South Eastern Avenue
Unit 101
Las Vegas, NV 89119
Via Mail

Lynn Kantor
2816 Vista del Sol Avenue
Las Vegas , NV 89120
Via Mail

The Andrea T. Mancuso Family Partnership
PO Box 17120
Golden, CO 80402
Via Mail

Leo Mantas
1620 Little Raven, Unit 701
Denver, CO 80202
Via Mail

Gilles Marchand
512 Summer Mesa Drive
Las Vegas, NV 89144
Via Mail

Dale McMullan
3813 Latrobe Street
Los Angeles, CA 90031
Via Mail

Mohammad Memon
7210 Native Dancer Drive
Reno, NV 89502
Via Mail

Frieda Moon
2504 Camita Court
Las Vegas, NV 89102
Via Mail

Patrick J. Murphy
20 La Crosse Court
Henderson, NV 89052
Via Mail

NBNA Unique Properties, LLC
2967 Michelson Drive, G527
Irvine, CA 92612

Via Mail

Karen Petersen
1012 Greystoke Acres Street
Las Vegas, NV 89145
Via Mail

Robert Rains
PO Box 778027
Henderson, NV 89077
Via Mail

Michael R. Riley
Carol Riley Trust
2025 Hot Oak Ridge Street
Las Vegas, NV 89134
Via Mail

Santoro Family Trust
2312 Pearl Crest Street
Las Vegas, NV 89134
Via Mail

Citizen Printing Company
1309 Webster Avenue
Ft. Collins, CO 80524
Via Mail

Bartolo F. Simari
17650 Peacock Lane
Tineky Park, IL 60487
Via Mail

Larry Simon
Simon Family Trust 1991
9201 Spectrum Center Boulevard
San Diego, CA 92123
Via Mail

Sheldon & Annette Sinett
239 Harbor View Drive
Port Washington, NY 11050
Via Mail

Joseph F. Sparks
716 Peachy Canyon Circle, Unit 204
Las Vegas, NV 89144-0892
Via Mail

Naomi Stearns
Robert Samuel Stearns Trust
4 Ridgeland Drive
Stuart, IL 34996
Via Mail

Sharon D. Tarpinian
327 Jacaranda Drive
Danville, CA 94506
Via Mail

Annabelle Taylor
654 Rolling Green Drive
Las Vegas, NV 89169
Via Mail

Shauna & Gregory Walch
344 Doe Run Circle
Henderson, NV 89012
Via Mail

Linda Waterhouse
2000 Whiskey Springs Road
Reno, NV 89510
Via Mail

Richard G. Worthern
125 Worthern Circle
Las Vegas, NV 89145
Via Mail

Osvaldo Zunino Living Trust
3575 Tioga Way
Las Vegas, NV 89169
Via Mail

Claude M. Penchina
22 Mount Pleasant
Amherst, MA 01002
Via Mail

Claude M. Penchina
1 Battery Park Plaza, 31st Floor
New York, NY 10001
Via Mail

Jor Leona Law
5196 Parkway Calabasas
Calabasas, CA 91302
Via Mail

JWB Investments, Inc.
2333 Dolphin Court
Henderson, NV 89074
Via Mail

Richard S. Worthen Family Trust
117 Worthen Circle
Las Vegas, NV 89145
Via Mail

Erven & Frankie Nelson
10401 West Charleston Boulevard, #D107
Las Vegas, NV 89135
Via Mail

USA Capital First Trust
3333 Allen Parkway
Houston, TX 77019
Via Mail

Barton Wilkinson
USA Capital Mortgage
141 Sonny Lane
Kooskia, ID 83539
Via Mail

Malden Ventures, Ltd.
400 Dorla Court, Suite 173
PMP 10162
Zephyr Cove, NV 89448
Via Mail

William Bullard
Fertitta Enterprises
Box 379045
Las Vegas, NV 89137
Via Mail

James & Reba Jo Cardwell
8175 Arville Street, #30
Las Vegas, NV 89139
Via Mail

Juanita Carter
4442 Valmonte Drive
Sacramento, CA 95864
Via Mail

Dennis Duesing
4750 Pardiso Place
Pahrump, NV 89061
Via Mail

John & Gina Fanelli
27 Larch Street
Fitchburg, MA 01420-2009
Via Mail

Maurice Fink Trustee
837 Highland Place
Highland Park, IL 60035
Via Mail

Shimon Peress
8109 Sapphire Bay Circle
Sacramento, CA 89128
Via Mail

Ali & Anisha Pirani
11453 North 128th Place
Scottsdale, AZ 85259
Via Mail

Steven Portnoff
Portnoff Building
1335 Radwick Drive
Las Vegas, NV 89110
Via Mail

Taylor Family Trust
8604 Soneto Lane
Las Vegas, NV 89117
Via Mail

Cal-Mark Beverage
440 Corte Sur, Suite 200
Novato, CA 94949
Via Mail

Stephen and Paulette Lima
Platinum Properties
2801 Fairview Pace Street
Greenwood, IN 46142
Via Mail

Dianna Wilkinson
141 Sonny Drive
Kooskia, ID 83534
Via Mail

Alta Bates Summit
2450 Ashby Avenue
Berkeley, CA 94705
Via Mail

Private Lenders III, LLC
2601 Airport Drive, Suite 290
Torrence, CA 90505
Via Mail

Melvin Wright
3983 West McCarron Road, PMB 204
Reno, NV 89502
Via Mail

## Case Number: 01-16-0005-5042

Commercial Mortgage Managers, Inc. a
California corporation, and
Marlton Recovery Partners, LLC, soley a
nominal Party
-vs-
Wen Dai Chen
-vs-
Steffi Fontana
-vs-
Christian Hansen
-vs-
David R. & Jonnie S. Hays
-vs-
Homefeild II
-vs-
Gary L. Kantor
-vs-
Kantor Nephrology
-vs-
Edwin Isenberg
-vs-
Harriet S. Kutzman
-vs-
Stuart J. Madsen
-vs-

Wendell Andersen, Charles Anderson,
Lynda G. Anderson, Rita P. Anderson,
Albert D. Andrade Jr., Larry G. Apigian,
Leona Apigian, Joan M. Arends, Sigfried Baker,
Robert & Michelle Bennett, Jerry L. Blackman,
Paul Bloch, Suzanne Brehmer, Howard D. Brooks
John W. Brouwers SEP, John P. Brouwers,
Lee R. Bryant, Lawrence A & Mary L. Bush,
J. Laurel Bushman, Keith J. Cale,
Peter W. & Deidre D. Capone, et al
-vs-
Erin E. MacDonald
-vs-
Lynn Kantor
-vs-
The Andrea T. Mancuso Family Partnership
-vs-
Leo Mantas
-vs-
Gilles Marchand
-vs-
Dale McMullan
-vs-
Mohammad I. Memon
-vs-

Frieda Moon
-vs-
Patrick J. Murphy
-vs-
NBNA Unique Properties, LLC
-vs-
John Bauer IRA
-vs-
Karen Petersen
-vs-
Robert O. Rains
-vs-
Michael R. Riley & Carol Riley Trust
-vs-
Santoro Family Trust
-vs-
Citizen Printing Company
-vs-
Bartolo F. Simari
-vs-
Larry Simon of Simon Family Trust
-vs-
Sheldon & Annette Sinett
-vs-
Joseph F. Sparks
-vs-
Naomi Stearns of Robert Samuel Stearns Trust
-vs-
Belmonte Family Trust
-vs-
Sharon Tarpinian
-vs-
Annabelle Taylor
-vs-
Shauna M. & Gregory J. Walch
-vs-
Linda Waterhouse
-vs-
Richard G. Worthern
-vs-
Osvaldo Zunino Living Trust
-vs-
Claude M. Penchina
-vs-
Claude M. Penchina
-vs-
Jor Leona Law
-vs-
JWB Investments, Inc.
-vs-
John & April Blevins

-vs-
Richard S. Worthen Family Trust
-vs-
Erven & Frankie Nelson
-vs-
USA Capital First Trust
-vs-
USA Capital Mortgage
-vs-
Malden Ventures, Ltd.
-vs-
Fertitta Enterprises
-vs-
James B. & Reba Jo Cardwell
-vs-
Juanita Carter
-vs-
Dennis Duesing
-vs-
John J. & Gina A. Fanelli
-vs-
Patricia A. Boschetto
-vs-
Maurice Fink Trustee
-vs-
Shimon Peress
-vs-
Ali & Anisha Pirani
-vs-
Portnoff Building and Steven Portnoff
-vs-
Taylor Family Trust (LYLA)
-vs-
Cal-Mark Beverage
-vs-
Platinum Properties and Stephen & Paulette Lima
-vs-
Dianna Wilkinson
-vs-
Alta Bates Summit
-vs-
Private Lenders III, LLC
-vs-
John S. Broders
-vs-
Melvin Wright
-vs-
Kevin Olsen
-vs-
Shelley W. Cranley Trust

Dear Parties:

Thank you for choosing the American Arbitration Association (AAA) to assist you in resolving your dispute. The AAA is committed to providing you with the highest level of service in order to facilitate the resolution of your dispute. This letter, along with the included Arbitration Information Sheet, will serve to provide you with some basic information about the AAA's arbitration process.

I will be your primary contact for this matter and am here to serve as your resource during the administration of your case. There may be times when you are contacted, on my behalf, by a member of my staff. Please do not hesitate to contact me directly with any questions, issues, or concerns.

This will acknowledge receipt on December 16, 2016 of a Demand for Arbitration, of a controversy arising out of a contract between the above-captioned parties, containing a clause providing for administration by the AAA. We understand a copy has been provided to Respondent, a copy has been enclosed for your convenience. A copy of our Commercial Arbitration Rules may be obtained from our website at www.adr.org.

We note the parties' contract states a hearing locale of Nevada. Claimant has requested that the hearing be held in Nevada. Please review the Rules and the Arbitration Information Sheet regarding the locale of hearings.

A Respondent may file an answering statement with the AAA within 14 days after confirmation of notice of filing of the demand is sent by the AAA. Pursuant to the Rules, if no answering statement is filed within the stated time, Respondent will be deemed to deny the claim. If Respondent wishes to counterclaim, please file directly to the undersigned with the appropriate administrative fee. A copy should also be directly sent to Claimant.

We invite the parties to consider mediation, at this early stage in the arbitration process, in an effort to resolve your dispute more quickly and economically. If you are interested in Mediation at this time, please contact me at your earliest opportunity.

Finally, in order to assist the AAA in providing you with arbitrators free from conflicts, a Checklist for Conflicts must be completed to list those witnesses you expect to present, as well as any persons or entities with an interest in these proceedings. This document should not be shared between the parties. The Checklist for Conflicts is due within fourteen days from the date of this letter. Please complete your Checklist for Conflicts online via AAA Webfile. The AAA will receive notice of your online submission. You are also able to update your Checklist for Conflicts at any time.

If you have a Webfile account, you should see this case listed when you log in. If you do not see the case number when you login, please contact the undersigned. If you do not have a Webfile account, please email a request for a registration code to: customerservice@adr.org and they will send you an email with the code and instructions for registering for immediate case access.
Please feel free to call if you have any questions. I look forward to assisting you in this matter.

Sincerely,

/s/
Lance K Tanaka
Vice President
Direct Dial: (303) 831-0824
Email: LanceTanaka@adr.org
LT/ns

Enclosure

cc:    Lisa Smith; John W. Shenk, Esq.

**Arbitration Information Sheet**

This document provides information about your upcoming arbitration and the expectations concerning each party's conduct throughout the process. Please save this information sheet so that you may refer to it throughout the arbitration.

**Exchange of Correspondence and Documents**

It is also important to note that the parties must exchange copies of all correspondence during the course of the arbitration. The two exceptions are the Checklist for Conflicts mentioned above and the party's arbitrator ranking list, which you will receive further information on during the course of the arbitrator appointment process. The parties only need to send copies of documents, such as discovery, to the AAA if the document is to be transmitted to the arbitrator for a determination.

**Communications with Arbitrator**

It is very important that parties do not engage in any ex-parte communications with the arbitrator. So as to minimize the potential of such communications, this case will be administered by facilitating the exchange of appropriate written documents through the AAA. To ensure the proper handling of all case-related documents, the parties are asked not to submit correspondence directly to the arbitrator.

Correspondence should be submitted to your primary contact for transmittal to the arbitrator, copying the other party.

**Timeliness of Filings**

Please pay particular attention to response dates included on any correspondence sent to you by the AAA. Untimely filings or responses will not be considered by the AAA. Therefore, if you need an extension to any deadline, please contact the other party to reach an agreement. In the event you are unable to agree, the AAA or the arbitrator will determine if an extension will be granted.

**International Arbitrations**

If either party believes a matter involves an arbitration agreement between parties from different countries or otherwise has an international nexus that may give rise to unique issues, please let the AAA know within fifteen days. The International Centre for Dispute Resolution (ICDR, www.ICDR.org ) is a Division of the AAA that administers international arbitrations worldwide, including in the US. The ICDR is available for assistance in any arbitration handled by the AAA, or, alternatively, can administer the case, if both parties agree. The AAA can also apply its Supplementary Procedures for International Arbitration under any of its Rules. The Supplementary Procedures are available on either www.ADR.org or www.ICDR.org.

**Locale of the Arbitration**

The parties may agree to a locale for the arbitration. This agreement can be made in the parties' agreement or contract, or when the arbitration is submitted to the AAA. The AAA will place the arbitration within the agreed upon locale.

If the parties' contract or agreement does not specify a locale and the parties cannot agree on a locale, the AAA's Rules empower the AAA to determine the final locale. In these circumstances, the Claimant will generally request that the hearing be held in a specific locale. If the Respondent fails to file an objection to the locale requested by the Claimant within 14 calendar days after the notice of the request has been sent to the Respondent by the AAA, the AAA will confirm the locale requested by the Claimant is agreeable.

When a locale objection is filed, each party is requested to submit written statements regarding its reasons for preferring a specific locale. In preparing their written statements, the parties are asked by the administrator to address the following issues:

- Location of parties & attorneys;
- Location of witness and documents;
- Location of records;
- If construction, location of site, place or materials and the necessity of an on-site inspection;
- Consideration of relative difficulty in traveling and cost to the parties;
- Place of performance of contract;
- Place of previous court actions;
- Location of most appropriate panel;
- Any other reasonable arguments that might affect the locale determination.

## AAA WebFile

We encourage the parties to visit our website to learn more about how to file and manage your cases online. As part of our administrative service, AAA's WebFile allows parties to perform a variety of case related activities, including:

- File additional claims;
- Complete and update the Checklist for Conflicts form;
- View invoices and submit payment;
- Merge forms that auto-populate with case and party information;
- Share and manage documents;
- Strike and rank listed neutrals;
- Review case status or hearing dates and times.

AAA WebFile provides flexibility because it allows you to work online as your schedule permits - day or night. Cases originally filed in the traditional offline manner can also be viewed and managed online. If the case does not show up when you log in, you may request access to the case through WebFile. Your request will be processed within 24 hours after review.

## Refund Schedule

The AAA has a refund schedule in the administrative fee section of the Rules. After 60 days of the AAA's receipt of the Demand or the appointment of the arbitrator the filing fees are non-refundable. The AAA will only refund filing fees as outlined in the Rules and does not refund neutral costs incurred when parties settle their dispute or withdraw their claims. Case service Final fees are fully refundable if the parties provide at least 24 hours' notice prior to the hearing.

*Revised October 2016*