## **DECLARATION OF LISA RASMUSSEN**

I, LISA RASMUSSEN, hereby declare, under penalty of perjury of the laws of the state of Nevada, as follows:

1. I am an attorney licensed to practice law in the state of Nevada and all courts herein.

2. I have been involved in various aspects of the litigation stemming from the USA Commercial Mortgage debacle since 2008.

3. I currently represent the board of the Castaic Investors, LLC, and a majority of the direct lenders therein, as well as the board of the Qualified Settlement Trust (QST).

4. As attorney for the QST, I am familiar with the assets that have been resolved, negotiated and liquidated. Specifically, I am familiar with Ms. Cangelosi's efforts on those assets, all of which have benefitted the direct lenders. I make these representations based on the knowledge I have accumulated during my years of experience with the litigation in this case and the statements made herein are made to the best of my knowledge and may not be a complete list of all of all relevant matters because there is so much work that has been completed.

5. Here is a list of settlements Ms. Cangelosi has accomplished, all to the benefit of the direct lenders:

   a. The Global Settlement Agreement, effected 2012
   b. The Hansen Settlement
   c. The Sheppard Mullin Settlement
   d. The Diversified Settlement
   e. The Gess Hurricane Claim Settlement

  f. The compass Settlement, including a compromise of legal fees assessed to the DL's

  g. Fox Hills Settlement

  h. Marlton Settlement (Kevin Olson did this with Ms. Cangelosi)

6. Here is a list of collections that Ms. Cangelosi effected, all of which benefitted the members of the Qualified Settlement Trust (QST):

  a. ARC $4.5 million

  b. Purchase of Diversified Assets for a 5X return

  c. ARC $1.5 million from ARC assets

7. Here is a list of Assets that have been resolved to the benefit of both ARC and the QST:

  a. 10-90

  b. HFA Clearlake

  c. Margarita Annex

  d. Gess Partners

8. Here is a list of assets currently under resolution which will benefit ARC and the QST:

  a. HFA Monaco

  b. Mountain House

  c. Corman Toltec

9. Throughout all of these resolutions, Ms. Cangelosi has produced, with accuracy and transparency all distribution spreadsheets without a single objection, save the repetitive objections now made by Daniel Newman.

10. Ms. Cangelosi has worked with William Leonard, the Trustee to the ARC estate, and has coordinated all accountings and holdbacks necessary for the ARC estate.

11. This Court authorized fees payable to me totaling approximately $87,000 following the December 2010 trial in this matter.

12. The direct lenders were sent an email on December 5, 2012 that asked them to authorize the settlement <u>and</u> the distribution of funds to legal counsel and to others who had advanced legal fees years earlier for the benefit of the direct lenders. This email included fees paid to Fullbright and Jaworski and to my law firm, and it also addressed fees still due and owing.

13. Daniel Newman's ongoing complaints were largely addressed in the most recent response to his motion where he complained that he was terminated because he asked to see accountings. There, we explained that the payments to Ms. Cangelosi were authorized, that the payments to me were authorized, and that Ms. Cangelosi is in fact still owed $50,000 of the $100,000 that she personally advanced to Fullbright and Jaworski. See ECF 3457.

14. The instant motion to remove Cangelosi, Coulson and Olson makes the same complaint.

15. Mr. Newman's allegations of improper payments, which are the basis of the instant motion, are not substantiated. All payments have been approved by either the court or the direct lenders.

16. Mr. Newman is the only person who has complained about Ms. Cangelosi, Mr. Coulson or Mr. Olson's work, and/or payment authorizations as members of the Trust Advisory Committee (TAC).

17. Mr. Coulson is a CPA licensed in the state of Nevada.

18. Ms. Cangelosi produces accurate spreadsheets that William Leonard relies upon to conduct his business as the Trustee of the Asset Resolution estate.

19. Mr. Newman complains that Carol St. John is a "lifelong friend" of Ms. Cangelosi and that she cuts checks, but he does not specify how or why Ms. St. John's work is problematic.

20. Mr. Newman used to assist Ms. St. John in keeping certain data bases.

21. Ms. St. John later learned that the data maintained by Mr. Newman was not accurate and required substantial work to correct.

22. Mr. Newman was previously a member of the Castaic Investors, LLC Board. When his role on that board was terminated, by vote of those direct lenders, the remaining and newly configured Castaic Investors Board were not able to get any documents or data from Mr. Newman. He refused to provide the documents for the LLC. Once the current board members began working with an accountant, it was discovered that there were numerous anomalies, all of which had to be corrected.

23. Mr. Newman's attacks on me have cost both the QST and Castaic Investors, LLC money to defend those attacks. The cost to the Castaic Investors alone cost over $25,000. Unfortunately, this renewed 2019 version of Mr. Newman's attacks is now costing the QST and its beneficiaries more money, once again.

. . .

. . .

. . .

24.     Removing Ms. Cangelosi, Mr. Coulson and Mr. Olson would cost the QST not less than $500,000 because anyone who replaced them would have to get up to speed on the issues that remain to be resolved and that requires a working knowledge of this case.  This is not in the best interest of any direct lender or QST beneficiary.  Not a single one.

Executed this 14th day of October, 2019 in Las Vegas, Nevada.

*/S/ Lisa A. Rasmussen*
_____
LISA A. RASMUSSEN