LOUIS M. BUBALA III
Nevada State Bar No. 8974
KAEMPFER CROWELL
50 W. Liberty Street, Suite 700
Reno, Nevada 89501
Telephone: (775) 852-3900
Fax: (775) 327-2011
Email: lbubala@kcnvlaw.com

LISA A. RASMUSSEN
Nevada State Bar No. 7491
LAW OFFICES OF KRISTINA
WILDEVELD & ASSOCIATES
550 E. Charleston Blvd., Suite A
Las Vegas, Nevada 89104
Telephone: (702) 222-0007
Fax: (702) 222-0001
Email: lisa@veldlaw.com

Attorneys for
B&B DL SETTLEMENT TRUST

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>ASSET RESOLUTION, LLC,<br><br>        Debtor | Case No. BK-S-09-32824-RCJ<br><br>**EX PARTE EMERGENCY MOTION FOR A DETERMINATION THAT THE AUTOMATIC STAY APPLIES OR TEMPORARY RESTRAINING ORDER TO DELAY DISTRIBUTION OF PROCEEDS BY CLARK COUNTY, NEVADA**<br><br>Judge: Hon. Robert C. Jones |

B&B DL Settlement Trust, individually and derivatively on behalf of the bankruptcy estate, bring this motion to delay a distribution of $1.6 million in funds from a tax foreclosure of one of the estate's development projects. A lack of notice has limited the investigation, but it appears the estate has a direct claim for payment from the funds under state law. The estate also has a contractual claim for payment of the distribution owed to the former majority owner, BMR Funding, LLC. Similarly, the Trust may be a former owner with a direct claim for the funds, and at least three of its beneficiaries also are former owners with direct claims for the excess money.

This request is made on an urgent basis as the deadline to submit a claim for funds from Clark County is on or before Thursday, June 2, 2022. The Trust only recently learned about the

potential recovery, and the trustee's counsel has a conflict of interest with BMR's affiliates that prevents it from representing the trustee on this matter. As a result, the bankruptcy trustee has signed a declaration supporting the Trust's emergency motion.

The Trust contacted Clark County treasurer's office about the claim approximately two weeks ago but was told the county would not talk to it because it is not a former owner. The Trust called and emailed both the Clark County manager's office and BMR, on Thursday, May 27, 2022, and Friday, May 28, 2022. The Trust does not know if BMR filed a claim with the county for its ownership share, or for the other former owners (as BMR or its affiliate had a servicing relationship with the other owners). BMR and its affiliate also the only owners designated for notice under the loan and ownership documents recorded with Clark County. The Trust did not receive any prior communication from BMR about this claim, but independently discovered it.

The Trust requests the Court determine that because of the bankruptcy estate's interest in the funds held by Clark County, those funds are property of the bankruptcy estate, are subject to the bankruptcy automatic stay, and may not be distributed without further order of this court. The Trust believes this is necessary and appropriate in order to provide the parties time to reach a resolution on their rights to the funds, both as former owners and under their contractual agreements. If the distribution is not stayed, and the funds are distributed to BMR, the recovery will be that much harder. BMR is incorporated in Delaware and based in Connecticut. It is not registered in Nevada.

Alternatively, the Trust requests the Court enter a temporary restraining order delaying the distribution. It is impossible in this limited time to resolve competing rights, relevant documents and payment calculations under those agreements. The Trust is pursuing this information, but it requires the additional time with a TRO and, if necessary, a preliminary injunction.

This motion is supported by the contemporaneously filed declarations of Chapter 7 Trustee William Leonard; Donna Cangelosi, chair of the Trust Advisory Committee for the B&B DL Settlement Trust; and counsel Louis M. Bubala III, regarding attempts to reach out to BMR and Clark County and informal notice of this filing.

## FACTUAL HISTORY

In 2006, Copper Sage Commerce Center, Inc., acquired two parcels at 2550 North Lamb Boulevard in northeast Las Vegas (APNs 140-17-401-001, -002). The purchase was financing with a $3.5-million note and deed of trust from 51 direct lenders arranged by USA Commercial Mortgage (itself a direct lender and the loan servicer). As the Court may recall, USA Commercial Mortgage filed for bankruptcy that year, and its rights were transferred to Compass USA SPE LLC.

In 2007, Compass assigned its DL rights in Copper Sage to Asset Resolution, LLC, the debtor in this case. **Exhibit 1**, 2/15/07 Assignment (recorded 3/3/09). In 2009, after Compass's lender[1] foreclosed its collateral including the DL and servicing rights, the lender assigned servicing rights for Copper Sage to SPCP Group LLC.[2] **Exhibit 2**, 1/16/09 Ltr. Agrmt. The assignment express excluded ARC's DL rights in Copper Sage. *Id.* at 1.

SPCP agreed to pay for the assignment from the proceeds of the liquidation of the Copper Sage real property. *Id.* at 2. SPCP agreed to pay ARC $154,216 for servicing fees; $14,848 for servicing advances; and an amount determined later based on multiple factors. *Id.*

In October 2009, ARC filed its own bankruptcy petition. Chapter 7 Trustee William Leonard recorded a notice of bankruptcy and asserted an undivided beneficial interest in the real property by virtue of its interest in the note and deed of trust. **Exhibit 3**, 4/8/10 Notice at ¶2.

In 2010, SPCP (as majority direct lender and servicer) foreclosed on Copper Sage, and the DLs became the owners. **Exhibit 4**, 6/22/10 Notice of Default; **Exhibit 5**, 9/23/10 Notice of Sale. During the foreclosure, SPCP transferred its DL interests to an affiliate, BMR Funding, LLC. **Exhibit 6**, 10/1/10 Assignment. The new deed reflects 15 direct lenders who became owners of the property. **Exhibit 7**, 11/17/10 Trustee's Deed.[3] The direct lenders also include three beneficiaries of

---

[1] Silar Advisors, through its affiliate, Asset Recovery LLC, which, upon information and belief, became part the ARC bankruptcy case.

[2] SPCP is effectively short for its affiliate, Silver Point Capital, L.P.

[3] The Trustee's deed states Compass USA SPE, LLC owns 1.83%. *Id.* The basis of this statement is unclear since two prior documents show Compass transferred its DL interest to ARC. If the interest belongs to ARC, then the ARC trustee is a former owner entitled to make a direct claim for the excess funds held by the county. But if the 2010 deed is correct that Compass retained an interest as an owner, as discussed below, then Compass transferred that interest to the Trust as part of a settlement approved by this Court. The Trust has not resolved this distinction.

the Trust: The Falke Living Trust; the Al-Aware Living Trust; and the Raker Living Trust.

In 2017, Clark County foreclosed on the real property for $15,000 in unpaid property taxes. *See* **Exhibit 8**, 6/23/17 Tax Trustee Deed for Parcel 001. The recorded deed lists an address for "BMR Funding LLC et al." to its corporate address in Connecticut. *Id.*

In 2018, this Court approved an agreed settlement order between the direct lenders and the Compass Defendants in related litigation. **Exhibit 9**, Order, Dkt. 275, *Adams v. Compass Partners*, No. 3:11-cv-00210-RCJ-VPC (D. Nev. filed July 24, 2018)). The order states that Compass shall automatically transfer its DL interests to the Trust. *Id.* at 8, § VI.

On June 2, 2021, Clark County sold both parcels to a third party. *See* **Exhibit 10**, 6/2/21 Treasurer Quitclaim Deed for Parcel 001. The sale of the two parcels generated approximately $1.63 million. **Exhibit 11**, Clark County Treasurer summary of proceeds from tax sales. As discussed below, since those funds exceed the $15,000 in unpaid taxes, virtually all of those funds are to be distributed pursuant to state law to claimants or the county.

As detailed in the contemporaneously filed declarations, Ms. Cangelosi (on behalf of the Trust) learned about the tax sale and excess proceeds approximately a month ago. Based on her experience valuing the assets in this case for the past ten years, she believes the claims of the bankruptcy estate and the Trust are worth approximately $500,000. Ms. Cangelosi has spoken with the trustee and his counsel, but his counsel is unable to act on this due to a conflict in prior representations with the SPCP-BMR affiliates. The Trustee supports the Trust's action with this motion and others to recover funds for the benefit of the bankruptcy estate. Finally, Ms. Cangelosi attempted to learn more information about the excess funds and claims against them, but the Clark County treasurer's staff declined to speak with her on the ground that she is not a former owner. Additionally phone calls and emails in the last two days to both Clark County and SPCP-BMR have not resulted in any response. The Clark County manager's office declined to discuss the matter without an email, which was promptly sent. SPCP-BMR did not immediately respond to an email, and a phone call resulted in a message left with their receptionist.

## LEGAL ARGUMENT

**1. Standing**

Creditor derivative standing has been recognized by the Bankruptcy Appellate Panel and courts within the circuit. The concept is discussed and approved in *Liberty Mutual Ins. Co. v. Official Unsecured Creditors' Cte. (In re Spaulding Composites Co.)*, 207 B.R. 899 (BAP 9th Cir. 1997) (D. Russell, opinion; R.C. Jones, on panel).

*Spaulding* involved an action brought by a committee, with the debtor in possession stipulating to the committee's representation. In approving the representation, the Panel recognized that "It is well settled that **in appropriate situations the bankruptcy court may allow a party other than the trustee** or debtor-in-possession **to pursue the estate's litigation.**" *Id.* at 903 (emphasis added). The panel further held that the estate may stipulate to allow the committee to represent the estate's interest. *Id.* at 904. "An unsecured creditors' committee has a close identity of interests with the DIP …. Allowing the DIP to coordinate litigation responsibilities with an unsecured creditors' committee can be an effective method for the DIP to manage its estate and fulfill its duties." *Id.* While the Trust is not a committee formally appointed by the U.S. Trustee, it effectively functions as a committee as Ms. Cangelosi's declaration reiterates ten years for with the trustee to maximize the estate value. It is further clear that the Court can properly manage this situation, given the Trust's and Ms. Cangelosi's long-standing role in the case. "Impartial judicial balancing of the benefits of a committee's representation better serves the bankruptcy estate. So long as the bankruptcy court exercises its judicial oversight and verifies that the litigation is indeed necessary and beneficial, allowing a creditors' committee to represent the estate presents no undue concerns." *Id.*

Even without the Trust's stipulation with the trustee, courts have recognized that they may permit creditors pursue the estate's rights in appropriate situations. As with many derivative claims, the court considers whether a request for action was made to the estate; the estate does not pursue it; a colorable claim for the benefit of the estate exists; and it is would unjustified not to pursue the claim. *In re Yellowstone Mtn. Club, LLC*, No. 08-61570-11, 2009 WL 982207, *6 (Bankr. D. Mont. Jan. 16, 2009). Those appropriate circumstances exist here, with the modification that due to the late discovery of the claim, the trustee does not have counsel who can take action on the claim.

Judge Christopher Klein provided a detailed discussion approving an individual creditor's derivative standing to pursue actions for the benefit of the estate. *In re Godon, Inc.*, 275 B.R. 555, 562-66 (Bankr. E.D. Cal. 2002). Although his decision involved a creditor's ability to recover its fees and expenses from the estate for recovering property of the estate under 11 U.S.C. § 503, his analysis does not require conduct under Section 503. To be sure, Section 503 recognizes that a creditor can take actions for the benefit of the estate, but the subsections elaborate on the creditor's ability to recover from the estate for that conduct. In this case, the Trust is not seeking compensation from the Estate for its work on this motion.

Under all these cases, with the trustee's support, the Trust asserts it may seek this relief both individually as derivatively for trustee of the bankruptcy estate.

2. **State Law Claim**

When the county forecloses on property and subsequently sells it, any funds left over after the payment of outstanding taxes debts are subject to claims from former owners, among others. NRS 361.610(6)(b), incorporating NRS 361.585(4)(b). The claim must be made within one year of recording the county's Treasurer' Quitclaim Deed, and the county shall pay it "if the treasurer is satisfied that the person is entitled to it. NRS 361.610(4)-(5). This requires the trustee and the Trust co complete a claim, with substantial document dating back more than a decade, in less than one week. If no claim is made, the excess funds are paid to the county general fund. NRS 361.610(4).

Both the bankruptcy estate and the Trust believe they have direct ownership claims for payment from the county under NRS 361.610(6)(b). The bankruptcy estate also has a contract claim against BMR under its 2009 agreement (Exhibit 2) that can and should be paid from the excess funds owed to BMR as an owner under NRS 361.610(6)(b). As a result, the Trust requests the Court declare the automatic stay is applicable, such that there is additional time to fully complete any claim forms and to reach a resolution as to where the funds should go, either statutorily or contractually, before the County distributes them under state statute.

3. **Property of Estate & the Automatic Stay**

The bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case"; "proceeds … or profits of or from property of the estate"; and "any

interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(1), (6)-(7).

The filing of a bankruptcy acts an automatic stay of "the commencement or continuation … of a … administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). It also stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." § 362(a)(3).

Under these fundamental statutory provisions, the bankruptcy estate is broadly defined. It includes a claim for and resulting excess funds from the county's tax sale, originally arising from the estate's direct ownership interest in the property (obtained after the direct lenders foreclosed on Copper Sage's collateral real property). The Trust also believes it includes is contractual right to payment from BMR due under the 2009 letter agreement for the servicing rights, which are to be paid from the proceeds of the liquidation of the Copper Sage collateral.

Given that the claims to the funds constitute property of the estate, the Trust requests that it declare the automatic stay applies so that the parties have additional time to complete and calculate their claims and prevent the county's distribution until there is a resolution of those points.

**4. TRO/Preliminary Injunction**

Finally, as to the Trust, and/or as an alternative relief sought derivatively for the bankruptcy estate, the Trust requests the court enter an ex parte, emergency TRO and, if necessary, a preliminary injunction upon further hearing.

The court has inherent injunctive powers under 11 U.S.C. § 105(a) to preserve property of the estate as part of a bankruptcy case. *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 93 (2d Cir. 1988). The procedural requirements are articulated under Federal Rule of Bankruptcy Procedure 65 (which adopts Federal Rule of Civil Procedure 65 in adversary proceedings) and as a matter of case law in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)

The Supreme Court requires the movant to establish that 1) it is likely to succeed on the merits; 2) that it is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in its favor; and 4) that an injunction is in the public interest.

The Trustee believe it and the trustee will prevail on the merits of their claim for funds. Their claims, as former owners at the time of the tax foreclosure, is provided for by Nevada statutory law. The recorded documents also reflect that they were the owners, and any discrepancies can be resolved either for the benefit of the bankruptcy estate or the Trust. As to the estate's contractual claims, the initial question about BMR's payment obligation was the trigger, that is, the proceeds from the liquidation of the collateral real property. That has come about. The contract provides for two set amounts to be paid to the bankruptcy estate. The third amount, although unliquidated at this time, can be calculated and does not alter the bankruptcy estate's success on its claim.

The parties also risk an irreparable injury. Because of a lack of notice or communication about the excess funds from the resulting tax sales, the Trust only recently learned that the bankruptcy estate and it have direct statutory claims for the funds held by the County. Without the stay, and the potential distribution of the funds to BMR, the estate and Trust potential lose their right recover that statutory claim. Furthermore, as BMR has no presence in Nevada, the funds will be removed from the District of Nevada, paid out to a party in Delaware or Connecticut. The costs and difficulty of the estate and Trust potentially prosecuting claims across the country impose an unnecessary expense. The funds are in Nevada; they are derived from the sale of land in Nevada; and they should be adjudicated in Nevada, rather than turning it in to a more complex situation on the other side of the country.

The balance of equites also tip in favor of the estate and the Trustee. The Copper Sage property was lost at tax foreclosure when BMR, with a supermajority ownership interest, failed to pay $15,000 in property taxes. The estate and the Trust, as well as its beneficiaries, all have limited interests that did not control the rights of the parties once they became joint owners. All parties are fortunate the subsequent sale generated excess funds to make significant payments to all the owners. But the parties find themselves in this conundrum because the property was effectively abandoned;

and this last-minute motion is due to a lack of notice or communication from BMR. The fact this may delay any payment to BMR is a minimal consideration in these circumstances.

Finally, public policy supports the stay by a Nevada court to address the payment of Nevada entities (the estate and the Trust) from the sale of real property in Nevada, from a county treasurer in Nevada. This is a Nevada issue, and public policy favors resolution of the issues within this jurisdiction.

## **CONCLUSION**

The Trust, on its own and on behalf of the bankruptcy estate, seeks to stay the process for the distribution of excess proceeds following the state of property to pay property taxes. Given a record that reflects the bankruptcy estate's direct statutory claim for funds, as well as a contractual claim for the funds that otherwise would be distributed to BMR, the funds in the county's hands are property of the estate and subject to the bankruptcy automatic stay. Additionally, the circumstances warrant a temporary restraining order and, if necessary, a preliminary injunction. The issues at hand that affect the distribution of funds can and should be resolved for the proper distribution. But given the lack of notification provided to the trustee and the Trust, and the impending deadline for claims with the county, a stay is warranted.

DATED this 27th day of May, 2022.

KAEMPFER CROWELL
*/s/ Louis M. Bubala III*
Louis M. Bubala III
Attorneys for B&B DL Settlement Trust